UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MELISSA WHEELER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | **CIVIL ACTION NO.** 4:22-cv-370 |
| **AMAZON WEB SERVICES, INC.** | § | |
| | § | |
| **Defendant.** | § | |
| | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Melissa Wheeler ("Plaintiff" or "Ms. Wheeler"), by and through undersigned counsel, and files this Original Complaint against Defendant Amazon Web Services, Inc. ("Defendant" or "Amazon") alleging violations under the Texas Commission on Human Rights Act ("THCRA"), 42 U.S.C. § 1981, Age Discrimination Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII") for Defendant's unlawful employment practices based on race, age, national origin and retaliation and, in support thereof, states as follows:

I.
**PARTIES AND PERSONAL JURISDICTION**

1. Plaintiff Melissa Wheeler is an individual who is a citizen of the State of Texas, residing at 508 Leanna Oak Loop, Manchaca, TX 78652.

2. Defendant Amazon Web Services, Inc. ("Amazon") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Amazon regularly conducts business within the State of Texas and employed Plaintiff to work within the State of Texas. Defendant is an employer within the meaning of the applicable statutes and employee more than fifteen (15) regular employees. Defendant may be served with process through its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## II. SUBJECT MATTER JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights and 42 U.S.C. § 1981 *et seq.*, as amended.

4. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)-(d) because the unlawful employment practices alleged by Plaintiff occurred in the State of Texas and Defendant maintains offices, conducts business and resides in this District.

6. Venue is proper by virtue of 29 U.S.C § 2617(a)(2) which provides concurrent jurisdiction of actions arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination Employment Act, and 42 U.S.C. § 1981.

III.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") which was dual filed with the Texas Workforce Commission ("TWC") pursuant to those agencies' work sharing agreement. After Plaintiff received notice of right to sue, Plaintiffs brought this action within the requisite number of days required by law.

IV.
## FACTUAL BACKGROUND

8. Plaintiff, a Hispanic and Latina woman, began her employment with Defendant as a Senior Client Lead Recruiter on or around April 11, 2016.

9. As part of her job duties, Plaintiff recruited, hired and employees for Defendant's Human Resources ("HR") Department. Plaintiff was the client lead and had a team of recruiting sources who reported directly to her.

10. Throughout her employment with Defendant, Plaintiff had a good rapport with colleagues and had no performance or disciplinary issues.

11.     Indeed, in or around November of 2019, Plaintiff's immediate manager, Patricia Elkon ("Ms. Elkon"), recommended Plaintiff for a project manager position outside of the team on which she had been working based on the contributions Plaintiff had made to the HR Department.

12.     From November 2019 through July 2020, Plaintiff continued to receive constant praise from Ms. Elkon and other employees about her work. Specifically, Plaintiff received emails from Ms. Elkon and other employees stating that Plaintiff "continu[ed] to raise the bar…" and "is phenomenal."

13.     On or around March 2, 2020, Plaintiff fixed a problem created by Ms. Elkon when developing a plan for another employee, Michelle Vaz. As a result, on or around March 5, 2020, Plaintiff's performance was again praised by Ms. Elkon.

14.     On or around March 20, 2020, Plaintiff received a discriminatory email from her skip-level supervisor, Kevin Knapp ("Mr. Knapp"), a white male to whom Ms. Elkon reported. In particular, Mr. Knapp circulated an email to various employees of Defendant, including Plaintiff, making disparaging comments about a Hispanic client named Rafael Visconti. Specifically, Mr. Knapp stated that "Rafa has the **stereotypical Latin fire** as I have seen it a number of times over the last couple of years in working with him." (emphasis added).

15.     Plaintiff's direct supervisor, Ms. Elkon, a white female, and Billy Widner ("Mr. Widner), a white male, responded to Mr. Knapp's message, agreeing with his comments.

16.     At the time of Mr. Knapp's email, Plaintiff was the only Hispanic and/or Latin person in her department.

17. That same day, on or around March 20, 2020, Mr. Knapp sent an internal team messaging board communication called a "chime communication" to a number of other employees stating that "all older people are stubborn because they just don't get COVID." In response, one of the other team members agreed.

18. Offended by Mr. Knapp's discriminatory comments, Plaintiff went directly to Mr. Knapp to have a conversation with him about the statements that he had made. In response, Mr. Knapp became angry and unwilling to listen to what Plaintiff had to say regarding his comments.

19. In particular, on or around March 22, 2020, during a closing meeting with Mr. Knapp and other lead recruiters, Plaintiff brought up the email communication and recommended that a different approach be taken when responding to clients. Mr. Knapp responded firmly and aggressively that Plaintiff should not compromise and give in to clients and did not address the disparaging comments he made about Latin people generally.

20. Based on the disparaging comments Mr. Knapp made, and his response to Plaintiff's attempt to address the comments with him directly, on or around March 23, 2020, Plaintiff contacted her HR representative, Laura MacDonald ("Ms. MacDonald") via phone. Plaintiff also followed up with Ms. MacDonald via email regarding Mr. Knapp's conduct.

21. Plaintiff informed Ms. MacDonald about Mr. Knapp's statement regarding the Hispanic client. Plaintiff also reported that she was concerned about her own career because she is Latina and that she took offense to Mr. Knapp's statement. Plaintiff also told

HR that she was concerned that Mr. Knapp's views, which were shared by her immediate manager, Ms. Elkon, would make it impossible for Plaintiff to grow in her career.

22. In her complaint to HR, Plaintiff also included a report about Mr. Knapp's "chime communication" where he stated that "all older people are stubborn."

23. After Mr. Knapp made the discriminating remarks, Plaintiff, who had previously reported to Mr. Knapp in October of 2019 about concerns she had with Ms. Elkon, was no longer comfortable that Mr. Knapp or Ms. Elkon could manager her without bias.

24. HR was also made aware that Plaintiff was "dealing with disparaging questions" from her manager, Ms. Elkon, and that Ms. Elkon was intentionally excluding Plaintiff from communications with her other team members.

25. Ms. Elkon and other members of Amazon management were intentionally isolating Plaintiff, unnecessarily questioning Plaintiff's actions, and unjustifiably causing Plaintiff to face challenges with day-to-day communications with her team and supervisors.

26. On or around April 2, 2020, HR made a report to Ivre Kladik ("Ms. Kladik") in the legal department about Plaintiff's complaints.

27. On or around April 8, 2020, Ms. Kladik informed Plaintiff via email that she "spoke with pertinent parties and reviewed relevant documentation, and through a thorough investigation found a violation of Amazon policy or standard of conduct."

28. Just five days later, on or around April 13, 2020, Ms. Elkon called Plaintiff and, for the first time, informed Plaintiff that she had some concerns about Plaintiff's performance. Following that discussion, on or around April 16, 2020, Plaintiff was again con-

cerned about her future with Amazon and reached out to her team director, Anthony Palumbo ("Mr. Palumbo"), who was also Mr. Knapp's manager.

29. Plaintiff informed Mr. Palumbo about the discriminatory and retaliatory behavior she had been experiencing and also told him about Ms. Elkon's sudden concern with Plaintiff's performance, stating "I feel like this might be retaliation."

30. Six days later, on or around April 22, 2020, Defendant placed Plaintiff on a "Pivot." The Pivot gave Plaintiff two options: she could either (1) take a payout and leave the company or (2) improve her performance subject to performance evaluations by Ms. Elkon. Plaintiff did not leave and continued to work for Defendant pursuant to the Pivot. Ms. Elkon did not communicate with Plaintiff about what Plaintiff needed to do to improve her performance.

31. As part of Plaintiff's Pivot, Ms. Elkon did create new expectations for additional reporting by Plaintiff. However, Plaintiff was not provided access to the tools or training required to meet the new reporting requirements.

32. On or around April 27, 2020, Plaintiff sent an email to HR and the legal department requesting an investigation. In her request, Plaintiff asked for examples of her poor performance and provided responses to Defendant refuting in detail, each of the alleged performance issues including in the Pivot. Plaintiff also provided documents to show that her performance was not and had not been an issue throughout her employment, and that Plaintiff was known among her co-workers to be helpful, competent and a mentor.

33. A little over two weeks later, on or around May 14, 2020, Ms. Elkon called Plaintiff into an impromptu meeting with HR Representative Haisel to discuss questions Plain-

tiff had about the Pivot. In that meeting, Plaintiff requested a status update from Haisel on the investigation into Plaintiff's complaints of discriminatory and retaliatory behavior from Amazon management. In response to Plaintiff's request for a status update on the HR investigation and without explanation, Haisel simply said "Oh yeah, we're moving forward with your Pivot."

34. On or around June 24, 2020, Ms. Elkon, again without explanation, decided that Plaintiff had failed to improve in accordance with her Pivot. Plaintiff was given three days to either appeal this decision or take a payout and leave the company.

35. On or around June 29, 2020, Plaintiff decided to appeal Ms. Elkon's decision, with the understanding that if her appeal was unsuccessful, she would be forced to leave with nothing. Plaintiff's appeal was supposed to include summarizing improvements she had made during the Pivot and presenting those improvements to a panel of four employees. Ms. Elkon also had the opportunity to present a summary of Plaintiff's performance.

36. On July 10, 2020, Plaintiff presented to a panel via a live video call. However, throughout her presentation, Amanda Hataway Smith ("Ms. Smith"), who upon information and belief is a white woman and Career Ambassador for Defendant, continuously spoke over Plaintiff and did not allow her to share the discrimination and retaliation she experienced, which Plaintiff understood to be the real reason for the Pivot.

37. On July 10, 2020, Ms. Smith informed Plaintiff that her appeal was unsuccessful and that her last day with Amazon would be July 14, 2020.

38. Although Amazon asserted that Plaintiff was terminated because she had not improved in her performance while on the Pivot, it failed to explain the ways in which

Plaintiff needed or failed to improve. The only exception was Plaintiff's failure to meet the new reporting requirements implemented by Ms. Elkon as part of the Pivot. Again, Plaintiff was not given access to the tools and training necessary to meet such reporting requirements. Following Plaintiff's termination, Plaintiff's replacement, Laura Wilks, was told that these reporting requirements that had been requested of Plaintiff were not needed.

39. Plaintiff was 47 years old at the time of her termination. Upon information and belief, Ms. Elks was approximately 30 years old at the time of Plaintiff's termination.

40. From the beginning of Plaintiff's employment on or around April 11, 2016 until Ms. Elkon's conversation with Plaintiff on April 13, 2020, Defendant raised no issues with Plaintiff about her work performance, and indeed continuously praised her work. The first time that Defendant informed Plaintiff about concerns with her work performance was less than one month after Plaintiff complained to HR about discriminatory comments made, and approved of, by her supervisors and less than one week after Defendant's legal department found that such comments violated Amazon policy. Plaintiff was terminated a mere three months later.

41. The foregoing actions violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as well as 42 U.S.C. § 1981 ("Section 1981"), and Chapter 21 of the Texas Labor Code by engaging in race, national origin and discrimination and retaliation.

V.
### CAUSES OF ACTION

A. **COUNT ONE: RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII**

42. Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

43. Title VII of the Civil Rights Act of 1964, amended by the Civil Rights Act of 1991 protects employees from discrimination based on race and national origin. 42 U.S.C. § 2000e-2(a).

44. Defendant intentionally discriminated against Plaintiff in violation of Title VII. Defendant intentionally engaged in unlawful employment practices involving Plaintiff because of her race and national origin within the meaning of the statute.

45. Defendant, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment in violation of 42 U.S.C. Section 2000e-(2)(a). The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race and national origin.

46. Defendant, by and through Defendant's agents, discriminated against Plaintiff on the basis of race and national origin with malice and/or with reckless indifference to the protected rights of Plaintiff.

47. Defendant, by and through its agents, intentionally deprived Plaintiff of an equal employment opportunity that was provided to non-Hispanic/non-Latin employees similarly situated in violation of Title VII.

48. As a result of the Defendant's violations, as stated herein, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

**B. COUNT TWO: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

49. Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

50. Discrimination against an individual based on race is prohibited pursuant to 42 U.S.C. § 1981.

51. Plaintiff is a Hispanic citizen and is covered under 42 U.S.C. § 1981.

52. At all relevant times, Plaintiff was qualified for the position she held during her employment with Defendant.

53. Defendant, by and through Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff because of her race.

54. Defendant, by and through Defendant's agents, discriminated against Plaintiff with respect to the benefits, privileges, terms, and conditions of her employment in violation of 42 U.S.C. § 1981. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her race.

55. Defendant, by and through Defendant's agents, discriminated against Plaintiff on the basis of race with malice and/or with reckless indifference to the federally protected rights of the Plaintiff.

56. Defendant, by and through Defendant's agents, intentionally deprived Plaintiff of an equal employment opportunity that was provided to other non-Hispanic employees similarly situated in violation of 42 U.S.C. § 1981.

57. As a result of the Defendant's violations, as stated herein, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

C.  COUNT THREE: RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THCRA

58. Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

59. Discrimination against an individual based on race and national origin is prohibited pursuant to TCHRA.

60. At all relevant times, Plaintiff was qualified for the position she held during her employment with Defendant.

61. Defendant, by and through Defendant's agents, discriminated against Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive them of any employment opportunity or adversely affect their status because of Plaintiff's race and national original (Hispanic and Latina) in violation of TCHRA.

62. As a result of the Defendant's violations, as stated herein, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

D.  COUNT FOUR: AGE DISCRIMINATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT AND TCHRA

63. Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

64. Discrimination against an individual based on age (40 and over) is prohibited pursuant to the ADEA.

65. At all relevant times, Plaintiff was qualified for the position she held during her employment with Defendant.

66. Defendant, by and through Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff in connection with the compensation, terms, conditions, and privileges of employment, or limited, segregated, or classified Plaintiff in a manner that would deprive or tend to deprive her of any employment opportunity or adversely affect her status because of Plaintiff's age (47) in violation of the ADEA and TCHRA.

67. As a result of the Defendant's violations, as stated herein, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

E. COUNT FIVE: RETALIATION

68. Title VII, 42 U.S.C. §1981, the ADEA, and the TCHRA, protect employees that engage in a protected activity from retaliation by their employer.

69. Plaintiff engaged in conduct protected under Title VII, 42 U.S.C. §1981, the ADEA, and the TCHRA.

70. Plaintiff was subjected to an adverse employment action at the time, and after, the protected conduct occurred and as a result of such conduct.

71. As a result of the Defendant's violations, as stated herein, Plaintiff suffered injuries, including but not limited to financial harm and emotional distress.

## VI. RESPONDEAT SUPERIOR AND RATIFICATION

72. Whenever in this complaint it is alleged that the Defendant, did any act or thing, it is meant that the Defendant's officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees, or representatives.

## VII. DAMAGES

73. Plaintiff restates and incorporates by reference, all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

74. As a result of Defendant's unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the contract or employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendant's unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

**VIII.**
## ATTORNEY'S FEES AND COSTS

75. Plaintiffs are entitled to an award of attorney's fees and costs under Title VII, 42 U.S.C. § 2000e-5(k) and 42 U.S.C §1988, 29 U.S.C § 2617, and §21.259 of the Texas Labor Code.

**IX.**
## JURY DEMAND

76. Plaintiff hereby demands a trial by jury on all issues so triable.

**X.**
## PRAYER

**WHEREFORE**, Plaintiff prays for judgment against Defendant awarding Plaintiff the following:

(a) Back pay, including but not limited to lost wages, overtime pay, and other employment benefits;

(b) Front pay and benefits in lieu of reinstatement where reinstatement is not feasible;

(c) Actual damages;

(d) Compensatory damages;

(e) Punitive damages;

(f) Attorneys' fees, expert fees, and cost of suit;

(g) Prejudgment and post-judgment interest, in the maximum amount allowed by law; and

(h) Such other and further relief, both general and special, at equity and in law, to which Plaintiff may be justly entitled.

Respectfully submitted this 3rd day of February, 2022.

By: /s/ *Lisa Ventress*
Lisa Ventress
Federal Bar No. 3471199
Texas Bar No. 24076751
lisa@theventressfirm.com
The Ventress Firm, P.C.
1322 Space Park Dr. Ste. C222
Houston, TX 77058
(832) 797-3855

**ATTORNEY FOR PLAINTIFF**