**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| MELISSA WHEELER, | Civ. Action No. 4:22-cv-00370 |
| Plaintiff, | |
| v. | Judge Andrew Hanen |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

**DEFENDANT AMAZON WEB SERVICES, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

Dated:  October 12, 2023

Of Counsel

Morgan, Lewis & Bockius LLP
Tyler J. Hill
TX Bar No. 24130505
Federal ID No. 3815851
tyler.j.hill@morganlewis.com
1717 Main Street, Ste. 3200
Dallas, TX 75201
T: 214.466.4160
F: 214.466.4001

Respectfully submitted,

*/s/ Stefanie R. Moll*
Stefanie R. Moll
Attorney-in-charge
TX Bar No. 24002870
Federal ID No. 22861
stefanie.moll@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: 713.890.5000
F: 713.890.5001

ATTORNEYS FOR AMAZON WEB SERVICES, INC.

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF THE ARGUMENT ................................................................. 1

II.     NATURE AND STAGE OF THE PROCEEDING......................................... 2

III.    STATEMENT OF THE ISSUES................................................................... 2

IV.     BACKGROUND ............................................................................................. 3

    A.  Wheeler's Performance Deficiencies Result in Her Placement in Focus. ............. 3

    B.  Wheeler's New Manager Agrees that Wheeler's Performance is Deficient and Again Places Wheeler in Focus and Assigns Her a Least Effective Rating. ...................................................................................................... 3

    C.  A Third Manager Identifies Wheeler's Performance Issues, Places Her in Focus for a Third Consecutive Year, and Assigns Her Another Least Effective Rating. ....................................................................................... 4

    D.  Elkon Places Wheeler in Pivot.................................................................... 5

    E.  AWS Pauses the Pivot. ............................................................................... 5

    F.  AWS Terminates Wheeler's Employment................................................... 7

V.      SUMMARY JUDGMENT STANDARD ....................................................... 8

VI.     ARGUMENT................................................................................................... 8

    A.  Wheeler's Race and National Origin Discrimination Claims Fail......................... 8

        1.  Wheeler Cannot Establish a Prima Facie Case of Race or National Origin Discrimination. ........................................................... 9

        2.  AWS Terminated Wheeler's Employment for Legitimate, Non-Discriminatory Reasons. ................................................................ 11

        3.  Wheeler Has Not Adduced Any Evidence of Pretext. .......................... 12

    B.  Wheeler's Age Discrimination Claims Fail. ............................................... 15

        1.  Wheeler Cannot Prove A Prima Facie Case of Age Discrimination. ...... 15

        2.  Knapp's "Stubborn Generation" Comment Is A Stray Remark. ............. 15

    C.  Wheeler's Retaliation Claims Fail. ............................................................ 17

        1.  There Is No Causal Link to Support Wheeler's Retaliation Claims........ 17

            a.  Elkon Was the Sole Decisionmaker and She Lacked Any Knowledge Of Wheeler's Protected Activity. ............................. 17

            b.  Wheeler's Disciplinary History Further Precludes a Finding of a Casual Link. ........................................................... 18

        2.  Wheeler Cannot Rebut AWS's Legitimate, Non-retaliatory Reason for Taking an Adverse Employment Action........................................... 20

VII.    CONCLUSION............................................................................................... 20

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agoh v. Hyatt Corp.*,
  992 F. Supp. 2d 722 (S.D. Tex. 2014) ...............................................................13, 15

*Armendariz v. Pinkerton Tobacco Co.*,
  58 F.3d 144 (5th Cir. 1995) ...............................................................17

*Assariathu v. Lone Star Health Mgmt Assocs, L.P.*,
  516 F. App'x. 315 (5th Cir. 2013) ...............................................................12

*Autry v. Fort Bend Indep. Sch. Dist.*,
  704 F.3d 344 (5th Cir. 2013) ...............................................................13

*Barr v. Stripes L.L.C.*,
  No. 21-20278, 2022 WL 1044695 (5th Cir. Apr. 7, 2022) ...............................................................9

*Belton v. GEO Grp., Inc.*,
  No. 21-30144, 2021 WL 5832953 (5th Cir. Dec. 8, 2021) ...............................................................9, 11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................8

*Cephus v. Texas Health and Human Services Comm'n*,
  146 F. Supp. 3d 818 (S.D. Tex. 2015) ...............................................................19, 20

*Cunningham v. Hous. Auth. of City of Opelousas*,
  764 F.2d 1097 (5th Cir. 1985) ...............................................................13

*Dailey v. Shintech, Inc.*,
  629 F. App'x. 638 (5th Cir. 2015) ...............................................................19

*DeHart v. Baker Hughes Oilfield Ops., Inc.*,
  214 F. App'x. 437 (5th Cir. 2007) ...............................................................19, 20

*E.E.O.C. v. Texas Instruments Inc.*,
  100 F.3d 1173 (5th Cir. 1996) ...............................................................17

*Eaglin v. Texas Children's Hosp.*,
  801 F. App'x. 250 (5th Cir. 2020) ...............................................................13

*Foster v. United Rentals (North Amer.), Inc.*,
  No. 2:16–cv–114, 2018 WL 1474186 (S.D. Tex. Mar. 9, 2018) ...............................................................15

*Garza v. Ganz Inc.*,
  No. H-04-3192, 2006 WL 8447665 (S.D. Tex. Sept. 19, 2006)..............................................12

*Hamilton v. Dallas Cnty.*,
  79 F.4th 494 (5th Cir. 2023) ................................................................................................10

*Harris v. Fort Bend ISD*,
  No. H–09–2984, 2011 WL 1100235 (S.D. Tex. Mar. 22, 2011)............................................20

*Harrison v. Formosa Plastics Corp. Texas*,
  776 F. Supp. 2d 433 (S.D. Tex. 2011) ...................................................................................17

*Henson v. Texas Southmost Coll. Dist.*,
  No. 1:18-CV-174, 2020 WL 488991 (S.D. Tex. Jan. 30, 2020).............................................12

*Little v. Republic Refining Co.*,
  Ltd., 924 F.2d 93, 97 (5th Cir. 1991) ....................................................................................12

*Malouse v. Winter*,
  338 F. App'x 356 (5th Cir. 2009) ..........................................................................................14

*Manning v. Chevron Chem. Co., LLC*,
  332 F. 3d 874 (5th Cir. 2003) ...............................................................................................18

*Mississippi River Basin Alliance v. Westphal*,
  230 F.3d 170 (5th Cir. 2000) ..................................................................................................9

*Molnar v. Ebasco Constructors, Inc.*,
  986 F.2d 115 (5th Cir. 1993) ................................................................................................14

*Myers v. Crestone Intern., LLC*,
  121 F. App'x. 25 (5th Cir. 2005) ...........................................................................................20

*Oldenburg v. Univ. of Texas at Austin*,
  860 F. App'x. 922 (5th Cir. 2021) .........................................................................................20

*Owens v. Excel Mgmt. Servs., Inc.*,
  No. 3:02-CV-0835, 2004 WL 358153 (N.D. Tex. Feb. 13, 2004) .........................................17

*Reed v. Neopost USA, Inc.*,
  701 F.3d 434 (5th Cir. 2012) ................................................................................................16

*Reinbolt v. Sutherland Mortg. Servs., Inc.*,
  No. H-18-2104, 2019 WL 13273200 (S.D. Tex. Oct. 17, 2019)............................................18

*Robertson v. Academy Ltd.*,
  No. H-18-2323, 2020 WL 880873 (S.D. Tex. Feb. 21, 2020)................................................18

iii

*Robinson v. I.R.S.*,
    77 F. App'x. 243 (5th Cir. 2003) ...................................................................10, 13

*Sandstad v. CB Richard Ellis, Inc.*,
    309 F.3d 893 (5th Cir. 2002) ................................................................................12

*Shackelford v. Deloitte & Touche, LLP*,
    190 F.3d 398 (5th Cir. 1999) .............................................................................9, 10

*Stewart v. Mississippi Transp. Comm'n*,
    586 F. 3d 321 (5th Cir. 2009) ...............................................................................18

*Strong v. Univ. Healthcare Sys., LLC*,
    482 F.3d 802 (5th Cir. 2007) ................................................................................20

*Waggoner v. City of Garland, Tex.*,
    987 F.2d 1160 (5th Cir. 1993) ..............................................................................13

*Ward v. Bechtel Corp.*,
    102 F.3d 199 (5th Cir. 1997) ................................................................................10

**Statutes**

Title VII of the Civil Rights Act of 1964 ............................................................. *passim*

42 U.S.C. § 1981 ..................................................................................................... *passim*

Texas Commission on Human Rights Act ............................................................ *passim*

Age Discrimination in Employment Act of 1967 ................................................ *passim*

Tex. Lab. Code § 21.202(a) ...............................................................................9

**Rules**

Fed. R. Civ. P. 56(a).............................................................................................8

## APPENDIX OF EXHIBITS

**Exhibit**                                                                                   **Description**

A. ............................................................................ Deposition Transcript of Melissa Wheeler

B. ............................................................................. Deposition Transcript of Patricia Elkon

C. ........................................................................................................Wheeler's 2018 Forte

D. .......................................................................Crystal Serrato's Employee Information Form

E. .............................................................................................Wheeler's 2018 – 2020 Focus

F. .........................................................................................................Wheeler's 2019 Forte

G. ........................................................................................................ Wheeler's OV Ratings

H. .............................................................................................Declaration of Patricia Elkon

I. .................................................................... 3/6/20 Email Exchange Between Elkon and HR

J. ............................................................... Haissel McFarland's Employee Information Form

K. ................................................................................ 3/20/20 Email from Wheeler to MacDonald

L. .................................................................................................3/23/20 Chime Message

M. ..................................................................3/26/20 Email from Laura Macdonald

N. .................................................................................. Deposition of Kevin Knapp

O. ........................................................... Investigation Report for Case No. 20200327-15247

P. ....................................................................................Knapp's Written Warning

Q. ........................................................................................ Wheeler's Pivot Entry Form

R. .................................................................Improve Plan-Manager Assessment Form

S. ..................................................................................................... Pivot Overview

T. ............................................................................................. Wheeler's Pivot Appeal

U. ................................................................... Wheeler's Charge of Discrimination

V. .......................................................................Wheeler's Amended Charge of Discrimination

W. ..................................................................... Wilks's Employee Information Form

X. ................................................................... Wheeler's Amended Initial Disclosures

Y. ...................................................................... 3/23/20 Email from Wheeler to Macdonald

# I.  <u>SUMMARY OF THE ARGUMENT</u>

In Melissa Wheeler's four years of employment as a recruiter for Amazon Web Services, Inc. ("AWS"), she was placed in a performance management program ("Focus") on three separate occasions by three different managers, each of whom documented and coached Wheeler on her performance deficiencies that ranged from preparing work product laced with inaccurate data and misleading information, to failing to "source" the requisite number of job candidates, and then delaying in processing their employment offers.  Wheeler's performance issues resulted in back-to-back ratings of "Least Effective" and then placement in a performance improvement plan ("Pivot").  Wheeler's manager, Patricia Elkon, determined that Wheeler failed to meet the expectations clearly articulated in the Pivot plan.  Wheeler appealed the Pivot outcome to a three-member panel of recruiters, which upheld the Pivot decision.  As a result, Elkon terminated Wheeler's employment.

Rather than accept that AWS terminated her employment due to her chronically deficient performance, Wheeler instead commenced this action, claiming that AWS discriminated against her because she is Latina (even though she was replaced by a Latina employee), was 47 years old at the time of her separation (even though she admits that no one at AWS ever commented on her age), and retaliated against her due to her complaint to human resources about her "skip-level" manager, Kevin Knapp, (even though Wheeler's complaint to human resources occurred *after* Elkon had already decided to place her in Pivot).  Try as she might, Wheeler cannot shrug off years of underperformance with her complaints about what amount to nothing more than stray remarks.

The grounds for summary judgment are ample.  First, Wheeler cannot state a prima facie case of race or national origin discrimination because Amazon replaced her with an employee in her protected class.  Second, Wheeler's race, national origin, and age discrimination claims all fail

as a matter of law because Wheeler admits that she did not suffer an adverse employment action as a result of any alleged discrimination.  Third, Wheeler cannot state a prima facie case of retaliation because Elkon, the sole decisionmaker, drafted the Pivot plan before Wheeler engaged in any protected activity and lacked any knowledge of the basis of Wheeler's complaint to human resources prior to making the termination decision.  Finally, even if Wheeler could articulate a prima face case for any of her claims, they all should nevertheless be dismissed because there is no material issue of fact disputing AWS's legitimate, non-discriminatory, and non-retaliatory basis for terminating Wheeler's employment: three years of poor performance.  This case is ripe for dismissal on summary judgment.

## II.  NATURE AND STAGE OF THE PROCEEDING

Wheeler filed her Complaint against AWS on February 3, 2022, alleging race, national origin, and age discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981 (Section 1981), the Texas Commission on Human Rights Act (TCHRA), and the Age Discrimination in Employment Act of 1967 (ADEA).  Dkt. 1.  The parties conducted written discovery, AWS deposed Wheeler, and Wheeler deposed five AWS witnesses.  Discovery ended on July 11, 2023, and trial is set for February 26, 2024.  Dkt. 21.

## III.  STATEMENT OF THE ISSUES

1.      Whether Wheeler can establish a prima facie case of race, national origin, or age discrimination when she adduced no comparator evidence, suffered no adverse action due to any alleged discrimination, and was replaced by an employee in her protected class.

2.      Whether Wheeler can establish a facie case of retaliation when the decisionmaker prepared the Pivot plan before Wheeler engaged in protected activity and made the decision to terminate Wheeler's employment before knowing the basis of Wheeler's complaints.

3.      Whether there is a genuine issue of material fact disputing that AWS terminated Wheeler's employment due to performance issues that were well documented by three different managers over a three-year period and led to three placements in a performance management program, two consecutive Least Effective ratings, and a failed performance improvement plan.

## IV.  BACKGROUND

**A.     Wheeler's Performance Deficiencies Result in Her Placement in Focus.**

Amazon hired Wheeler as a recruiter in 2016 and, in the Fall of 2017, Wheeler transferred to AWS as a Senior Recruiter.  Deposition Transcript of Melissa Wheeler, attached as Ex. A, at 25:18-26:25, 31:21-32:12.  In that role, Wheeler's duties centered on "sourcing" candidates for open positions, and then "closing" them by preparing offer letters and "seeing the candidates through the finish line once they got the offer."  *Id.* at 54:19-55:2, 100:7-13, 101:12-24.

AWS engages in an annual review process called "Forte."  Deposition Transcript of Patricia Elkon, Ex. B, at 70:25-71:23.  In Wheeler's 2018 Forte, peers observed that Wheeler "is not a good communicator," "is difficult to work with," and "frequently complicates situations and passes off work to sourcers."  2018 Forte attached as Ex. C.  Wheeler's manager at the time, Crystal Serrato – who is also Hispanic – challenged Wheeler to "prevent duplication of efforts and mis-management of resources."  *Id.*; Serrato's Employee Information Form attached as Ex. D.

In addition to the Forte process, AWS's performance management program includes "Focus," a tool that managers use to document performance issues and provide additional coaching to struggling employees.  Ex. B at 85:2-9.  In June 2018, Serrato placed Wheeler in Focus.  Focus attached as Ex. E, (2018 entry) p. 2.  Serrato explained that Wheeler had "low [sourcing] activity" and was improperly "relying on a sourcer to fill her funnel."  *Id.*  Serrato had to remind Wheeler that "as a full life cycle recruiter she [wa]s responsible for sourcing her own candidates," and she provided Wheeler "weekly recruiting metrics and goals to increase her sourced pipeline."  *Id.*

**B.     Wheeler's New Manager Agrees that Wheeler's Performance is Deficient and Again Places Wheeler in Focus and Assigns Her a Least Effective Rating.**

Wheeler transferred to the position of Senior Sourcing Recruiter in October 2018 and began reporting to Melissa Eyeington.  Ex. A at 37:18-21.  In this role, Wheeler supported the HR4HR

team, helping to hire candidates for HR positions. *Id.* at 53:17-22; 55:19-24; 81:16-24. Although Wheeler's team and manager changed, her performance issues did not. In her 2019 Forte, Eyeington cited the need for Wheeler to improve her communication skills and be more responsive to timely address tasks. 2019 Forte attached as Ex. F, p. 2. Specifically, Wheeler was waiting five business days to reply to emails when the expectation was a 24-48 hour turnaround, was taking multiple weeks to process offers that should have been completed within five days, and was letting basic client responsibilities "fall[] through the cracks." Ex. E (2019 entry) at 4. Further, Wheeler was not managing the "normal client lead req load of 50 requisitions," and was failing to support the closing process by omitting "details" and "making offers on the wrong[] reqs[.]" *Id.* Eyeington placed Wheeler in Focus in February 2019 as a result of these serious performance failings. *Id.*

After back-to-back placements in Focus, Eyeington assigned Wheeler an Overall ("OV") rating for 2019 of Least Effective. OV Ratings attached as Ex. G. Least Effective ratings are the lowest rating in the OV rubric and are assigned to the bottom performing 5% of employees. Declaration of Patricia Elkon attached as Ex. H at ¶ 5. Wheeler received a zero percent increase in her compensation due to her OV rating that year. *Id.*

**C.     A Third Manager Identifies Wheeler's Performance Issues, Places Her in Focus for a Third Consecutive Year, and Assigns Her Another Least Effective Rating.**

In Fall of 2019, Wheeler began reporting to Elkon after Eyeington took a leave of absence. Ex. A at 42:7-24; Ex. B at 49:01-18. Under Elkon's supervision, Wheeler's underperformance persisted, drawing complaints from peers and customers, alike. Ex. B at 141:6-21. On February 27, 2020, Elkon placed Wheeler in Focus for a third consecutive year because she was continuing to "deliver below the L6 Recruiter bar … despite ongoing coaching and guidance." Ex. E (2020 entry) at 5. Wheeler's work was riddled with "inaccurate" and "misleading" data, and there was a "lack of accuracy across her work." *Id.* She also struggled to utilize data sources and was

4

"heavily reliant" on others to pull information for her.  *Id*.  The Focus provided examples of these issues, which included sending leaders inaccurate data and transmitting incorrect offer details.  *Id*.

Upon placing Wheeler in Focus, Elkon met weekly with her to coach her on these performance issues.  Ex. B at 107:5-11.  But Wheeler did not improve and, for 2020, she received a Least Effective rating for the second consecutive year and thus again received a zero percent increase in compensation due to her OV rating.  Ex. G; Ex. H at ¶ 5.  Indeed, Elkon testified that Wheeler was the worst performing employee on her team in 2019 and 2020.  Ex. B at 141:6-10.

**D.   Elkon Places Wheeler in Pivot.**

Employees who fail to meet performance expectations are placed in Pivot, AWS's version of a performance improvement plan.  Ex. A at 111:18-112:3, Ex. B at 85:10-14.  On March 6, 2020, Elkon contacted human resources business partner Haissel McFarland (who is also Hispanic) and confirmed the decision to place Wheeler in Pivot given her history of poor job performance. 3/6/20 Email Exchange Between Elkon and HR attached as Ex. I; Haissel McFarland's Employee Information Form attached as Ex. J.   Elkon then prepared the Pivot Entry Form, setting forth three "Expectations" for Wheeler: 1) produce work product with fewer errors; 2) present relevant, accurate, and independently generated data; 3) improve written communications.  Ex. I at 6-8. Elkon sent human resources the completed draft Pivot Entry Form on March **19**, 2020.  *Id.* at 1.

**E.   AWS Pauses the Pivot.**

On March **20**, 2020 – i.e., fourteen days after Elkon decided to place Wheeler in Pivot and a day after Elkon delivered a draft of the Pivot to human resources – Recruiting Manger Kevin Knapp was copied on an email between human resources business leader, Rafael Visconti, and Senior Sourcing Recruiter Billy Widner.   3/20/20 Email from Wheeler to MacDonald attached as Ex. K.  Widner had been asking Visconti for weeks to provide feedback on a candidate who

Visconti interviewed.  *Id*.  Visconti eventually responded: "If I did not yet entered [sic] the
feedback after you follow up almost hourly, is because I am handling much more urgent situations
. . . . This is just another example of the lack of humanity we have in our organization.  I am sorry
for you."  *Id.*  Knapp tried to assist Widner (who reported to Knapp) by emailing Visconti and
explaining that Widner "was simply trying to ensure that we are getting responses back to
candidates in our promised window."  *Id.*  Visconti replied by calling out Widner's "4 email follow
ups [] below" and intimated that Widner was acting inhumanely simply for doing his job.  *Id.* at 2.
Knapp then removed Visconti from the chain, on which Elkon and Wheeler were copied, and wrote
to Widner, to make Widner feel better: "Rafa has the stereotypical Latin fire as I have seen it a
number of times over the last couple of years in working with him."  *Id.* at 1.  None of the emails
within the chain were directed to, or about, Wheeler.  But later that day, Wheeler forwarded
Knapp's email to human resources business partner Laura Macdonald, and asked to "connect."  *Id.*

Three days later, on March 23, 2020, and during the very early days of the global pandemic,
Wheeler sent Macdonald a screenshot of a message Knapp had sent on AWS's messaging platform
(Chime) in which he wrote: "My ageing dad is still a practicing physician and my sisters and I are
doing everything in our powers to discourage him from continuing to go to hospitals right now
and see less critical patients in his offices.  They are a stubborn generation."  3/23/20 Chime
Message, Ex. L.  Like the email three days earlier, this instant message was neither directed at, nor
about, Wheeler.  Nevertheless, Wheeler complained that the Chime message was "an example of
Kevin grouping behaviors into specific categories."  *Id.*

Human resources, in turn, opened an investigation into Wheeler's complaints and paused
Wheeler's Pivot pending the investigation.  3/26/20 Email from Macdonald attached as Ex. M.
The investigators reviewed both Knapp's email to Widner and his Chime message and interviewed

6

Wheeler as well as Knapp, who acknowledged that his "Latin Fire" comment was a poor choice of words.[1]  Investigation Report attached as Ex. O.  The investigators determined that Knapp had violated AWS policy, and Knapp was issued a Written Warning.  Knapp's Written Warning attached as Ex. P.  While human resources informed Elkon that the Pivot would be paused, it did not divulge to Elkon what or who Wheeler's complaint was about, and Elkon did not otherwise have knowledge of the complaint.  Ex. H at ¶ 15.

**F.    AWS Terminates Wheeler's Employment.**

The investigation closed on April 7, 2020.  Ex. Q at p. 1.  On April 22, 2020, Elkon delivered to Wheeler the Pivot Entry Form, which recounted the same performance deficiencies and set forth the same three performance expectations that Elkon had presented to human resources before Wheeler had made any complaint about Knapp or otherwise engaged in protected activity. Ex. I; Pivot Entry Form attached as Ex. Q.  AWS offered Wheeler two options as set forth in the Pivot: leave AWS and receive a severance payment or remain in the role and commit to meeting the expectations identified in her Pivot.  Ex. A at 112:14-114:12; Ex. Q.  Wheeler chose the second option.  Improve Plan-Manager Assessment Form attached as Ex. R at 2.

AWS expected Wheeler to produce work product with fewer errors.  *Id.* at 2 (Expectation 1).  But even during the Pivot period, Wheeler prepared offer letters with inaccurate compensation terms, as well as a requisition that contained an incorrect cost center and company name.  *Id.*  AWS expected Wheeler to "present data that is relevant, accurate, and independently generated."  *Id.* at 3 (Expectation 2).  Wheeler failed to present bi-weekly recruiting updates for the Directors whom she supported.  *Id.*  She also prepared a planning document that contained inaccurate data metrics. *Id.* at 4.  Elkon provided comments on the planning document for Wheeler to incorporate, but

---

[1] Knapp testified with respect to the comment: "If I [could] take it back I would. … I chose the wrong language, I'm regretful of it, I learned from it[.]"  Deposition Transcript of Kevin Knapp, attached as Ex. N at 105:13-23.

Wheeler never submitted a revised draft.  *Id.*  AWS expected Wheeler to improve her written communications.  *Id.* at 4 (Expectation 3).  Wheeler delayed in providing deliverables and failed to send and/or copy Elkon on weekly updates for job requisitions.  *Id.*  When Wheeler finally got around to forwarding to Elkon the requisitions, Elkon saw that they omitted key information.  *Id.*

On June 24, 2020, Elkon informed Wheeler that her Pivot was unsuccessful.  Pivot Overview attached as Ex. S.  Wheeler appealed her Pivot result to a panel of three recruiters who were not previously involved in her performance management.  Pivot Appeal attached as Ex. T. Wheeler presented to the panel on July 1, 2020, and the panel upheld the Pivot outcome on July 10, 2020.  *Id.*  On July 14, 2020, AWS terminated Wheeler's employment.  Ex. A at 130:14-16.

## V. <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The movant bears the initial burden of "demonstrate[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to respond to the motion by setting forth particular facts to establish that there is a genuine issue for trial.  *See Mississippi River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted."  *Id.*

## VI. <u>ARGUMENT</u>

### A.   **Wheeler's Race and National Origin Discrimination Claims Fail.**

Wheeler's race and national origin discrimination claims[2] should be dismissed because (1) Wheeler cannot advance a prima facie case of discrimination, and (2) her documented

---

[2] Wheeler, who was born in America, bases both her race and national origin discrimination claims on being Hispanic. Ex. A at 144:9-13.

underperformance over a three-year period constitutes a legitimate, non-discriminatory basis for placing her in Pivot and terminating her employment.[3]

### 1. Wheeler Cannot Establish a Prima Facie Case of Race or National Origin Discrimination.

"Where, as here, there is no direct evidence of discrimination, this Court uses the McDonnell Douglas burden-shifting framework," under which the plaintiff must first establish a prima facie case.[4] *Belton v. GEO Grp., Inc.*, No. 21-30144, 2021 WL 5832953, at *4 (5th Cir. Dec. 8, 2021). A prima facie case of discrimination requires the plaintiff to prove that she was "subjected to an adverse employment action" and "replaced by someone outside the protected class." *Shackelford*, 190 F.3d at 404; *Robinson v. I.R.S.*, 77 F. App'x. 243, 245-46 (5th Cir. 2003) (affirming summary judgment for the employer in a Title VII race discrimination action).

First, regarding the prima facie element of an adverse employment action, Wheeler testified at her deposition that she was *neither* placed in Pivot *nor* terminated due to discrimination:

> Q:    And you believe that the only reason you were put in the Pivot is because of the complaints you made about Mr. Knapp?
> A:    That is correct.
>
> ****
>
> Q.    Why do you believe you were terminated?
> A.    I believe it was due to retaliation.
> Q.    Do you believe you were terminated for any reason other than retaliation?
> Q.    Absolutely not.

Ex. A at 170:4-7, 131:19-23.

---

[3] Wheeler's discrimination claim under the TCHRA is also time-barred and must be dismissed. "Texas law requires that a claimant seeking to file suit for employment discrimination must first file a complaint with the TWC within 180 days of the unlawful employment practice." *Barr v. Stripes L.L.C.*, No. 21-20278, 2022 WL 1044695, at *4 (5th Cir. Apr. 7, 2022) (citing Tex. Lab. Code § 21.202(a)). Wheeler's employment ended on July 14, 2020, 180 days from which is January 10, 2021. Wheeler did not allege race discrimination in her charge of discrimination dated October 23, 2020. Wheeler's Charge of Discrimination attached as Ex. U. While she raises race discrimination in her amended charge of discrimination, Wheeler did not file the amended charge until March 17, 2021; i.e., outside of the 180 day-period. Wheeler's Amended Charge of Discrimination attached as Ex. V.

[4] Claims brought under the TCHRA, Title VII, and Section 1981 are "functionally identical" and are evaluated under the same burden shifting analysis. *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404, n.2 (5th Cir. 1999).

By her own admission, Wheeler did not suffer an adverse employment action as a result of the discrimination she alleges. She, therefore, cannot satisfy her burden of proving a prima facie case of race or national origin discrimination. *See Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997) (dismissing on summary judgment race and national origin discrimination claims because the plaintiff failed to establish an adverse employment action). Although the Fifth Circuit recently disposed of the so-called "ultimate employment decision-standard" for disparate treatment claims under Title VII, a plaintiff must still show "discrimination in hiring, firing, compensation, or the 'terms, conditions, or privileges' of her employment." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 497 (5th Cir. 2023). Wheeler's admission that she did not suffer *any* adverse action in connection with the alleged discrimination renders her claim ripe for dismissal.

Second, Wheeler fails to establish a prima facie case of race or national origin discrimination because she was not replaced by a person outside of her protected class. Wheeler is Hispanic as is Laura Wilks, Wheeler's replacement. Wilks's Employee Information Form attached as Ex. W at. 2. Wheeler herself admits both in her Complaint and in her amended discovery responses that Wilks "replaced [her] in her position." Dkt. 1 at ¶ 38; Plaintiff's Amended Initial Disclosures attached as Ex. X, p. 2.[5]

Accordingly, Wheeler's race and national origin discrimination claims fail as a threshold matter for two distinct reasons: she suffered no adverse employment action as a result of the alleged discrimination, and she was replaced by someone within her protected class. Both of these grounds

---

[5] Wheeler cannot salvage her discrimination claims by alleging she was treated less favorably than similarly situated employees outside her protected class. To be similarly situated, the comparator must be employed under "nearly identical" circumstances as the plaintiff, which requires that the comparator, among other things, has a similar disciplinary history as the plaintiff and engaged in the same misconduct. *See Belton*, 2021 WL 5832953, at *5 (rejecting plaintiff's putative comparator because they "did not face nearly identical circumstances," and affirming dismissal of race discrimination claims). Wheeler has not identified any employee outside of her protected class who was placed in Focus for three consecutive years, received back-to-back Least Effective ratings, failed to accomplish the expectations articulated in the Pivot, and failed her Pivot appeal, yet was not terminated. In fact, neither in her Complaint nor in discovery did Wheeler even offer an employee whom she contends is a comparator.

are sufficient to dismiss Wheeler's race and national origin discrimination claims for failure to prove a prima facie case.

## 2. AWS Terminated Wheeler's Employment for Legitimate, Non-Discriminatory Reasons.

Even *assuming arguendo* that Wheeler could establish a prima facie case of race or national origin discrimination, her claims nevertheless fail because AWS terminated her employment for a legitimate, non-discriminatory reason: her poor job performance. Wheeler's performance issues were identified by three separate managers over a three-year period, as she was placed in Focus in 2018, 2019, and 2020. Ex. E. Despite the feedback in her Forte reviews and coaching in Focus, Wheeler never improved, and she received back-to-back Least Effective ratings – a rating reserved for a very small group of the lowest performing employees at AWS. Ex. G; Ex. H at ¶ 5. Wheeler was then placed on a performance improvement plan, Pivot, during which she continued to underperform. Ex. H at ¶¶ 9, 14; Ex. R. She failed to source the requisite number of candidates, delayed in processing offer letters, and drafted candidate offer letters that contained inaccurate information; she, thus, underperformed in both aspects of her job – sourcing and closing. *Id*. Because she exhibited the same performance deficiencies while in Pivot that were identified in her Forte evaluations and her Focus entries, it became clear that Wheeler could not or would not improve. Exs. C, E, F. Elkon terminated her employment as a result. Ex. H at ¶ 14.

Unsatisfactory performance is a legitimate, non-discriminatory reason for taking an adverse action. *See Assariathu v. Lone Star Health Mgmt Assocs, L.P.*, 516 F. App'x. 315, 319 (5th Cir. 2013) (affirming summary judgment, stating that "poor job performance is a legitimate, non-discriminatory reason for termination"); *Henson v. Texas Southmost Coll. Dist.*, No. 1:18-CV-174, 2020 WL 488991, at *7 (S.D. Tex. Jan. 30, 2020) (granting summary judgment where the evidence established a "series of concerns regarding [plaintiff's] job performance"); *Garza v. Ganz*

*Inc.*, No. H-04-3192, 2006 WL 8447665, at *12 (S.D. Tex. Sept. 19, 2006) (recommending summary judgment because "[p]oor performance qualifies as a legitimate, nondiscriminatory reason for termination"). Accordingly, the undisputed facts evidencing Wheeler's underperformance satisfy AWS's burden under the second prong of the *McDonnell-Douglas* test.[6]

### 3.    Wheeler Has Not Adduced Any Evidence of Pretext.

After the employer satisfies its burden of production, "the onus shifts back to the plaintiff to prove either that the [employer]'s articulated reason is merely a pretext for discrimination (the pretext alternative), or that the [employer]'s reason, while true, is only one of the reasons for its decision[,] and another 'motivating factor' is the plaintiff's protected characteristic (the mixed-motives alternative)." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013). To make either showing, the plaintiff must produce "substantial evidence" demonstrating that "discrimination lay at the heart of the employer's decision." *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 736-737 (S.D. Tex. 2014) (granting summary judgment dismissing race and age discrimination claim); *Robinson*, 77 F. App'x. at 245. Indeed, "the plaintiff bears the burden of proving intentional discrimination." *Cunningham v. Hous. Auth. of City of Opelousas*, 764 F.2d 1097, 1099 (5th Cir. 1985) (finding that plaintiff's failure to meet her burden of demonstrating intentional discrimination was not clearly erroneous).

Knapp's "Latin Fire" email neither establishes pretext nor assists Wheeler in satisfying her burden of proving intentional discrimination. Knapp's comment, though unfortunate, is nothing

---

[6] Any disagreement by Wheeler with AWS's assessment of her performance is irrelevant because "[m]erely disputing [her employer's] assessment of h[er] performance will not create an issue of fact." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (affirming a dismissal of an age discrimination claim because the plaintiff failed to show that his employer's nondiscriminatory explanation for terminating him was pretextual). The issue on summary judgment "is whether [the employer's] reason, **even if incorrect**, was the real reason for [the] termination." *Id.* (emphasis added). "In sum, a dispute in the evidence concerning [Wheeler's] job performance does not provide a sufficient basis for a reasonable factfinder to infer that [AWS's] proffered justification is unworthy of credence." *Little v. Republic Refining Co.*, Ltd., 924 F.2d 93, 97 (5th Cir. 1991) (evidence insufficient to establish that employer's proffered reasons were pretexts for discharging employee).

more than a stray remark.  It is settled law that "mere stray remarks, with nothing more, are insufficient to establish a claim of [] discrimination."  *See Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) (affirming summary judgment for the employer on a discrimination claim); *Eaglin v. Texas Children's Hosp.*, 801 F. App'x. 250, 256 (5th Cir. 2020) (dismissing on summary judgment a race discrimination claim where the "evidence constitute[]d only 'stray remarks'" that "standing alone, [was] insufficient to defeat summary judgment").

Moreover, Wheeler admits that Knapp's comment was not directed at her, was not intentional, and was *not* made because Visconti is Hispanic.  Ex. A at 147:11-15, 147:4-10; 3/23/20 Email from Wheeler, attached as Ex. Y (Wheeler reporting Knapp to human resources and writing, "Assuming good intention, I don't believe it is intentional discrimination, but unconscious bias."). Wheeler also admits that neither Knapp nor anyone else at AWS ever made any comments to her or about her race or national origin.  Ex. A at 147:23-148:2, 150:4-10; 161:7-17.  In fact, Wheeler's manager, Serrato – who placed Wheeler in Focus for the first time – is also Hispanic, and so too is McFarland, the human resources business partner involved in the Pivot process.  Exs. D, J.

Nor do the allegations that Wheeler directs at Elkon create a material issue of fact.  Wheeler testified that Elkon racially discriminated against her by attempting to embarrass her in front of peers.  Ex. A at 158:8-25.  But Elkon did not even know that Wheeler is Hispanic.  Ex. B at 163:10-12.  Further, Wheeler's allegations are based solely on Wheeler's subjective belief:

> Q:  . . . It's just your subjective belief that she hated -- that Patricia Elkon hated your work because you [are] Hispanic, correct?
> A:  I'm telling you that's how I feel.
> Q:  Right.  Do you have anything other than that feeling, any proof, any evidence of that?
> A:  I don't think that you need proof for discrimination; but, no, I don't have anything other than how I'm feeling.

Ex. A at 159:21-160:4.  It is well settled that a plaintiff's subjective belief that she was discriminated against is insufficient to raise a genuine issue as to pretext.  *Molnar v. Ebasco*

*Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993) (reversing a jury verdict because the evidence

failed to establish that the employee was discriminated against); *Malouse v. Winter*, 338 F. App'x

356, 359 (5th Cir. 2009) (affirming summary judgment upon ruling that a plaintiff's "subjective

belief … is insufficient" to demonstrate pretext or discriminatory intent).  Wheeler's subjective

beliefs are of no consequence because they cannot establish pretext as a matter of law.

    Finally, and perhaps most importantly, Elkon never considered Wheeler's race, national

origin, or any other protected characteristic when making the employment decisions about which

Wheeler complains.  Ex. H at ¶ 17.  And Wheeler admits that she has no proof that Knapp was

involved in deciding her Pivot, which resulted in her termination:

> Q:    What evidence do you have to support your belief that Kevin Knapp had
> a hand in deciding that the Pivot was unsuccessful?
> A:    It was his role along with her skip level to guide her and every part of her
> management.
> Q:    Do you -- were you privy to any conversations between . . . Mr. Knapp
> and Ms. Elkon about whether your Pivot was going to be successful?
> A:    No.  And just to clarify, you said do I believe.
> Q:    Okay.
> A:    So I'm not saying that I have proof.  I'm saying I believe.
> Q:    Okay.  Do you have anything other than your subjective belief to support
> the statement that Kevin Knapp was involved in the Pivot decision?
> A:    Just the fact that I believe that that is true.  I don't have any information to
> that otherwise.
> Q:    Other than you simply believe that it is true, you don't have any proof or
> evidence, right?
> A:    That's right.

Ex. A at 124:9-125:6.

    In conclusion, neither a non-decisionmaker's isolated comment about *another* employee,

nor Wheeler's subjective belief that Elkon discriminated against her, establishes pretext.

Wheeler's race and national origin discrimination claims cannot survive this Motion.

**B.**     **Wheeler's Age Discrimination Claims Fail.**

**1.**     **Wheeler Cannot Prove A Prima Facie Case of Age Discrimination.**

A prima facie case of age discrimination brought under the ADEA and TCHRA likewise requires a showing, *inter alia*, that the plaintiff was subjected to an adverse employment action. *Agoh*, 992 F. Supp. 2d at 740-41; *id.* at 748 (dismissing an age discrimination claim on summary judgment because plaintiff failed to make a prima facie case); *Foster v. United Rentals (North Amer.), Inc.*, 2:16–cv–114, 2018 WL 1474186, at *4 (S.D. Tex. Mar. 9, 2018).  Wheeler admits that she was not terminated due to any alleged discrimination.  Ex. A at 170:8-13; 131:19-23.  Her age discrimination claims, therefore, fail under both the ADEA and the TCHRA because Wheeler cannot advance a prima facie case.  *Supra* § VI, A, 1.

Even if Wheeler could adduce a prima facie case of age discrimination, those claims still fail because AWS has articulated a legitimate, non-discriminatory reason for terminating Wheeler's employment that bears no relation to her age: three years of chronically deficient performance.  *Supra* § VI, A, 2-3.  The burden shifts to Wheeler to prove pretext.

**2.**     **Knapp's "Stubborn Generation" Comment Is A Stray Remark.**

Under the ADEA, Wheeler must show that her age was the "but for" cause of the challenged adverse employment action.  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 (5th Cir. 2012); *id.* at 441 (affirming summary judgment on age discrimination claims where the record evidence was insufficient to create a triable issue of fact under the "but for" standard).[7]  Wheeler cannot prove pretext under this standard.  She bases her age discrimination claims on, without more: the Chime message in which Knapp said his father was part of a "stubborn generation," and

---

[7] Under the TCHRA, pretext can be shown through a mixed-motive theory.  *See id.* at 440.

Wheeler's allegation that Knapp announced a younger employee's birthday by saying, without more, "today is [Gina's] 30th birthday."  Ex. A at 65:4-14, 137:19-139:9.

Neither of these comments were directed at, or referred in any way to, Wheeler.  With respect to the Chime message, Knapp was referring to his own father when he typed "stubborn generation," (*id.* at 134:15-18), and the "birthday comment" was made because it in fact was Gina's birthday.  Wheeler admits that Knapp never said a single word to her about her age.  *Id.* at 136:20-25.  Rendering Wheeler's claims even more specious, Knapp was 40, and therefore a member of the protected class, when he sent the Chime message (while Wheeler was 47).  Ex. N at 13:2-3; Ex. A at 135:8-10.   Further, Wheeler does not attribute either of the comments, or any age-related comment, to Elkon who was the sole decisionmaker.  Ex. A at 128:1-4.

"In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *E.E.O.C. v. Texas Instruments Inc*., 100 F.3d 1173, 1181 (5th Cir. 1996).  Plainly, neither *Knapp's* statement that his own father is part of a "stubborn generation" nor his reference to an employee's 30th birthday could possibly lead a reasonable juror to conclude that *Elkon* terminated Wheeler because of her age.  And she did not.  Ex. H at ¶ 17.

Again, Knapp's comment, if anything, is merely an unactionable stray remark.  *See supra* § VI, A, 4.  Indeed, courts have held that even calling an employee "old," "old fart," and "old son of a bitch" – none of which Wheeler was ever called – does not create a fact issue preventing dismissal of age discrimination claims on summary judgment.  *See Harrison v. Formosa Plastics Corp. Texas*, 776 F. Supp. 2d 433 (S.D. Tex. 2011) (granting summary judgment on an age discrimination claim brought by a 59 year old employee whom co-workers called "old man," "old

fart," and "old son of a bitch"); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995) (finding remarks to the plaintiff that she was "getting old" and "losing her memory" not probative of age discrimination).  Nor do Knapp's two stray remarks – neither of which are even discriminatory on their face – protect Wheeler's age discrimination claims from dismissal. Wheeler does not allege that anyone other than Knapp discriminated against her based on her age, and she admits that no one at AWS ever commented on her age.  Ex. A at 141:17-24, 142:9-13. Wheeler's age discrimination claims under the ADEA and the TCHRA cannot survive this Motion.

## C.    Wheeler's Retaliation Claims Fail.

Retaliation claims under Title VII, Section 1981, the ADEA, and the TCHRA are subject to the same burden-shifting framework, under which the plaintiff must set forth a prima facie case of retaliation.  *Owens v. Excel Mgmt. Servs., Inc.*, No. 3:02-CV-0835, 2004 WL 358153, at *10– 11 (N.D. Tex. Feb. 13, 2004) (entering summary judgment for defendants on retaliation claims brought under Title VII, Section 1981, the ADEA, and the TCHRA).  To prove retaliation, Wheeler must demonstrate a causal connection between her protected activity and an adverse employment action.  *Stewart v. Mississippi Transp. Comm'n*, 586 F. 3d 321, 333 (5th Cir. 2009).  She cannot. Elkon had no knowledge of Wheeler's complaint to human resources and Wheeler's lengthy record of poor performance long predated that complaint.  Ex. H at ¶ 15.  Regardless, Wheeler's years of underperformance constitute a legitimate, non-retaliatory basis for terminating her employment.

### 1.    There Is No Causal Link to Support Wheeler's Retaliation Claims.

#### a.    Elkon Was the Sole Decisionmaker and She Lacked Any Knowledge Of Wheeler's Protected Activity.

"Establishing a causal connection in the employment context requires some showing that the decisionmaker—the individual who actually made the decision or caused the decision to be made—was aware of the activity" "at the time the adverse employment decision was made."

*Robertson v. Academy Ltd*., No. H-18-2323, 2020 WL 880873, at *4 (S.D. Tex. Feb. 21, 2020)(citation omitted); *Reinbolt v. Sutherland Mortg. Servs., Inc*., No. H-18-2104, 2019 WL 13273200, at *3 (S.D. Tex. Oct. 17, 2019).   Elkon was the sole decisionmaker, and she had no knowledge of Wheeler's complaints to human resources until *after* she placed Wheeler in Pivot and *after* she terminated Wheeler's employment.   Ex. B at 128:1-4, 160:12-22; Ex. H at ¶¶ 14-15.

These indisputable facts foreclose Wheeler from carrying her burden to establish a prima facie case for retaliation.  *See Manning v. Chevron Chem. Co., LLC*, 332 F. 3d 874, 884 (5th Cir. 2003) (granting summary where the decisionmakers were unaware of the employee's protected activity); *Reinbolt*, 2019 WL 13273200, at *3 (granting summary judgment on a retaliation claim where there was no evidence that the decisionmakers knew of the plaintiff's protected activity); *Robertson*, 2020 WL 880873, at *4 (dismissing a retaliation claim on summary judgment for failure to prove a causal link because the decisionmaker was unaware of protected activity).

Indeed, while Wheeler claims that "April 22 is when Patricia suddenly had an issue with me. … suddenly … putting me on a Pivot," (Ex. A at 168:9-18), she is incorrect because Elkon confirmed the Pivot decision on March 9, 2020, and completed the Pivot Entry Form by March 19, 2020 – all before Wheeler contacted human resources on March 20, 2020.   Exs. I, K. "Employers need not suspend previously planned [employment actions] upon discovering that a Title VII suit … has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence of causality."  *Cephus v. Texas Health and Human Services Comm'n*, 146 F. Supp. 3d 818, 832 (S.D. Tex. 2015)(citation omitted).

> **b.**   **Wheeler's Disciplinary History Further Precludes a Finding of a Casual Link.**

In addition to whether the decisionmaker lacked knowledge of the protected activity, courts consider "(1) the employee's past disciplinary record, (2) whether the employer followed its

typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination." *DeHart v. Baker Hughes Oilfield Ops., Inc.*, 214 F. App'x. 437, 442 (5th Cir. 2007).  Each of these factors militates in favor of dismissing Wheeler's retaliation claims.

(1)    *Past Disciplinary Record.*   AWS began performance managing Wheeler well before she reported Knapp to human resources on March 20, 2023.  She was placed in Focus as early as 2018 and assigned Least Effective ratings starting in 2019 and again in 2020.  Exs. E, G. Where, as here, the plaintiff's employment issues predated her adverse employment action, courts refuse to find a causal link.  *See DeHart*, 214 F. App'x. 437, 443 (5th Cir. 2007) (finding no causal link where the plaintiff engaged in protected activity a year after she received a negative annual review); *Dailey v. Shintech, Inc.*, 629 F. App'x. 638, 643 (5th Cir. 2015) (finding no causal connection where the plaintiff was disciplined in September 2010, prior to her protected activity in October 2010); *Harris v. Fort Bend ISD*, No. H–09–2984, 2011 WL 1100235, at *11 (S.D. Tex. Mar. 22, 2011) (dismissing a retaliation claim on summary judgment where "[t]he record evidence shows that Harris had a number of justified reprimands before the termination decision").

(2)    *Company Policy.*   AWS's internal policies and procedures call for performance managing an underperforming employee through Focus before placing the employee in Pivot, and the Pivot Entry Form provides that, "[i]f your appeal is unsuccessful, your employment will end[.]" Ex. Q.  That is precisely what occurred here.  Wheeler was performance managed in Focus (no less than three times over a three-year period) before Elkon determined to place her in Pivot; while in Pivot, she was provided four weeks to satisfy the three performance expectations enumerated in her Pivot Entry Form; she was permitted to appeal the Pivot decision; and when the appeals panel upheld the decision, AWS terminated Wheeler's employment.  *Supra* § IV.  Plainly, AWS

"followed its typical policy and procedures in terminating the employee," and thus this factor likewise militates against finding any causal connection. *DeHart*, 214 F. App'x. at 442.

(3) *No Temporal Proximity*. For timing to satisfy the causation prong, "the events must be very close in time." *Oldenburg v. Univ. of Texas at Austin*, 860 F. App'x. 922, 926 (5th Cir. 2021). The events here were not. Nearly four months passed between Wheeler's complaint about Knapp (on March 20, 2020) and the termination of her employment (on July 14, 2020) – a time period which courts do find not suggestive of retaliation. *See Myers v. Crestone Intern., LLC*, 121 F. App'x. 25, 28 (5th Cir. 2005) (three-month lapse did not create causal link); *Cephus*, 146 F. Supp. at 835 (same); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 807 (5th Cir. 2007) (three and one-half months insufficient to show causation). The lapse in time between Wheeler's complaint and her firing further preclude her from advancing a prima facie case of retaliation.

**2.      Wheeler Cannot Rebut AWS's Legitimate, Non-retaliatory Reason for Taking an Adverse Employment Action.**

Even if Wheeler could assert a prima facie case of retaliation, her claims nevertheless fail because AWS has articulated a legitimate, non-retaliatory reason for the complained of adverse employment actions: her deficient performance over a three-year period that resulted in three placements in Focus, two Least Effective ratings, and a failed entry into Pivot. *Supra* § VI, A, 2.

### VII.  <u>CONCLUSION</u>

For these reasons, AWS respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Wheeler's Original Complaint with prejudice.

Respectfully submitted,

Dated:  October 12, 2023           */s/ Stefanie R. Moll*
                                            Stefanie R. Moll

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on the date indicated herein, I caused a copy of AWS's Motion for Summary Judgment, accompanying exhibits, and proposed Order to be served, via the Court's electronic case filing system, upon all counsel of record.


Dated:  October 12, 2023                    */s/          Stefanie Moll*
                                                              Stefanie Moll