**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| MELISSA WHEELER, | Civ. Action No. 4:22-cv-00370 |
| Plaintiff, | Judge Andrew Hanen |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT AMAZON WEB SERVICES, INC.'S**
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

## TABLE OF CONTENTS

**Page**

I.  SUMMARY OF THE ARGUMENT ................................................................ 1

II.  ARGUMENT ................................................................................................. 3

    A.  Wheeler Cannot Establish A Prima Facie Case Of Discrimination...................... 3

        1.  Wheeler Was Replaced By An Employee Within Her Protected Class. ................................................................................................ 3

        2.  Wheeler Did Not Suffer An Adverse Action As A Result Of Discrimination. .......................................................................... 4

    B.  Wheeler Cannot Establish A Prima Facie Case Of Retaliation. ......................... 5

        1.  Elkon Decided To Place Wheeler In Pivot *Before* Wheeler Complained. ............................................................................... 5

        2.  Elkon Had No Knowledge Of Wheeler's Complaint Before Terminating Her Employment. .................................................. 6

        3.  Elkon Was The Decisionmaker. .................................................... 8

        4.  Wheeler Cannot Establish Causation Through Temporal Proximity ...................................................................................... 10

    C.  AWS Articulated Legitimate, Non-Discriminatory, And Non-Retaliatory Reasons For Placing Wheeler In Pivot And Terminating Her Employment. ...... 11

        1.  Wheeler's Disagreement With AWS's Assessment Of Her Performance Cannot Raise A Genuine Issue Of Fact. ............................. 11

        2.  Wheeler's Assessment Of Her Performance Is Also Factually Unsupported. ............................................................................. 12

    D.  Wheeler Cannot Carry Her "Ultimate Burden" Of Proving Pretext.................. 15

        1.  Stray Remarks Do Not Prove Intentional Discrimination. ..................... 15

        2.  Wheeler Has Not Satisfied Her Burden Of Proving "But-For" Causation...................................................................................... 18

III.  CONCLUSION ........................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Alfred v. Louisiana Dept. of Corrections*,
   619 Fed. Appx. 324 (5th Cir. 2015)......................................................................18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................................13

*Berry v. Parish*,
   834 Fed.Appx. 843 (5th Cir. 2020)...................................................................10

*Bryant v. Compass Grp. USA Inc.*,
   413 F.3d 471 (5th Cir. 2005) .............................................................................12

*Caldwell v. Cty.*,
   No. H-21-1365, 2022 WL 4117033 (S.D. Tex. Sept. 6, 2022)........................8, 10

*Cervantez v. KMGP Svcs. Co. Inc.*,
   349 Fed. Appx. 4 (5th Cir. 2009) ..........................................................12, 15, 17

*Chandler v. CSC Applied Tech., LLC*,
   No. 01–10–00667–CV, 376 S.W.3d 802 (Tex.App.—Hous. [1st Dist.] July 12, 2012) .........18

*Clark Cty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001)...........................................................................................10

*Drake v. Spring Indep. Sch. Dist.*,
   No. H-18-2912, 2020 WL 13612290 (S.D. Tex. May 4, 2020).............................8

*Evans v. City of Houston*,
   246 F.3d 344 (5th Cir. 2001) .............................................................................10

*Evans v. Tex. Dept. of Transp.*,
   547 F. Supp. 2d 626 (E.D. Tex. 2007)...........................................................11, 12

*Feist v. La., Dept. of Justice, Office of the Atty. Gen.*,
   730 F.3d 450 (5th Cir. 2013) .............................................................................18

*Garcia v. Pro. Contract Servs., Inc.*,
   938 F.3d 236 (5th Cir. 2019) .............................................................................10

*Hamilton v. Dallas County*,
   79 F.4th 494 (5th Cir. 2023) .............................................................................4, 5

*Hervey v. Miss. Dept. of Educ.*,
404 Fed. Appx. 865 (5th Cir. 2010) ...................................................................9

*Hu v. Inteplast Grp. Corp.*,
No. 6:21-cv-00056, 2023 WL 6394394 (S.D. Tex. Sept. 29, 2023) .......................10

*Johnson v. Halstead*,
916 F.3d 410 (5th Cir. 2019). ...........................................................................10

*Kelly v. Costco Wholesale Corp.*,
632 Fed. Appx. 779 (5th Cir. 2015) .........................................................9, 15, 16

*Oldenburg v. University of Texas at Austin*,
860 F. Appx. 922 (5th Cir. 2021) ........................................................................6

*Orr v. Copeland*,
844 F.3d 484 (5th Cir. 2016) ............................................................................17

*Peace v. Harvey*,
207 F. Appx. 366 (5th Cir. 2006) .......................................................................10

*Pineda v. United Parcel Service, Inc.*,
360 F.3d 483 (5th Cir. 2004) ............................................................................20

*Reed v. Neopost USA, Inc.*,
701 F.3d 434 (5th Cir. 2012) ......................................................................16, 17

*Reeves v. Sanderson Plumbing Products, Inc.*,
530 U.S. 133 (2000) .........................................................................................15

*Sandstad v. CB Richard Ellis, Inc.*,
309 F.3d 893 (5th Cir. 2002) ................................................................11, 12, 15

*Sharma v. Amazon Web Services, Inc.*,
No. 3:21-CV-2486-X, 2023 WL 4304758 (N.D. Tex. June 30, 2023) ...................18

*Stewart v. RSC Equip. Rental, Inc.*,
485 Fed. Appx. 649 (5th Cir. 2012) ...................................................................18

*Strong v. Univ. Healthcare Sys., L.L.C.*,
482 F.3d 802 (5th Cir. 2007) ......................................................................11, 19

*Swanson v. General Services Admin.*,
110 F.3d 1180 (5th Cir. 1997) ..........................................................................18

*Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*,
541 Fed. Appx. 443 (5th Cir. 2013) ..................................................................7, 8

*Waggoner v. City of Garland, Tex.*,
   987 F.2d 1160 (5th Cir. 1993) ................................................................................16

# I. SUMMARY OF THE ARGUMENT

Despite filing a Memorandum of Law in Opposition to AWS's Motion for Summary Judgment ("Opposition") that is ten pages over the allowable length, Melissa Wheeler fails to overcome the reasons justifying summary judgment in favor of AWS or raise a genuine issue of material fact.  Even post-Opposition, Wheeler cannot (1) state a prima facie case of discrimination, as she was replaced by an employee within her protected class, and further, did not suffer an adverse employment action as a result of any alleged discrimination; or (2) establish the causal link required to state a prima facie case of retaliation because, among other reasons, her manager and the decision maker, Patricia Elkon, lacked knowledge of Wheeler's protected activity, and made the decision to place Wheeler on a performance improvement plan (Pivot) before Wheeler even engaged in protected activity.  Wheeler's case fares no better when the burden shifts because AWS articulated a legitimate, non-retaliatory, and non-discriminatory reason for terminating her employment for which there is no evidence of pretext.

On Opposition, Wheeler all but drops her discrimination claims, failing to even address them until page 22 of the Opposition.  Regardless of when or if Wheeler substantively argues these claims, they fail as a matter of law.  Wheeler does not dispute that AWS replaced her with a Latina employee or otherwise establish that non-Hispanic employees were treated more favorably under nearly identical circumstances.  Wheeler, therefore, cannot state a prima facie case of race and national origin discrimination.  Wheeler's race and national origin discrimination claims, along with her age discrimination claim, also cannot survive summary judgment because Wheeler admits that she did not suffer an adverse employment action as a result of any discrimination.

Wheeler also fails to manufacture a causal link to support her retaliation claim.  There is no causal link between Wheeler's placement in Pivot and her protected activity because Elkon

placed Wheeler in Pivot eleven days before Wheeler complained to human resources about her "skip level" supervisor, Kevin Knapp.  Likewise, there is no causal link between the termination of Wheeler's employment and Wheeler's complaint to human resources about Knapp because the only competent summary judgment evidence establishes that Elkon had no knowledge of Wheeler's complaint before making the termination decision.  Moreover, there was a four-month gap between her complaint and the termination, which this Court, the Fifth Circuit, and the U.S. Supreme Court have each held does not suffice to establish causation through temporal proximity.  The absence of any causal link mandates dismissal of Wheeler's retaliation claim on prima facie grounds.

Irrespective of Wheeler's failure to advance a prima facie case for any of her claims, they fail because AWS articulated a lawful basis for taking the adverse actions: three years of documented, corroborated poor performance resulting in multiple placements in a performance management program (Focus), back-to-back annual ratings of Least Effective, which is reserved for the lowest performing employees, and ultimately a placement in Pivot, which a neutral panel of three recruiters agreed that Wheeler failed.  Wheeler responds by challenging her managers' assessment of her performance and urging the Court to replace it with her self-assessment of her performance.  This is not the law.  A plaintiff cannot create an issue of fact merely by disputing her employer's assessment of her performance even if the evidence shows that the employer got it wrong.  Wheeler's disagreement with her performance assessment is irrelevant as a matter of law, factually baseless, and cannot preclude summary judgment.

Finally, Wheeler cannot raise a fact issue sufficient to establish pretext or satisfy her ultimate burden of proving either that AWS intentionally discriminated against her because she is Latina or because she was 47 years old, or that but-for her complaint to human resources, she

would not have been terminated after three years of underperformance. Wheeler's attempt to prove pretext and meet her ultimate burden by relying on stray remarks that were not directed at her, were made by her skip level supervisor who was not the decision maker, and were uttered *after* the actual decision maker had already placed Wheeler in the Pivot that led to the eventual termination of her employment, fails as a matter of law.

## II. <u>ARGUMENT</u>

### A. Wheeler Cannot Establish A Prima Facie Case Of Discrimination.

#### 1. Wheeler Was Replaced By An Employee Within Her Protected Class.

It is undisputed that a Latina employee (Laura Wilks) replaced Wheeler. MSJ at 10 (citing AWS Ex.[1] W at 2). Wheeler, therefore, cannot make a prima facie case of race or national origin discrimination under Section 1981, Title VII, or the TCHRA because replacement by an individual outside of the plaintiff's protected class is a prima facie element of these claims. MSJ at 9-10. Boxed-in by the record evidence and the governing law, Wheeler lumps together her race and national origin claims with her age discrimination claim, collectively referring to them as her "disparate treatment claims" despite not having even hinted at this type of alleged discrimination in her Original Complaint, in her Charge of Discrimination, or in her Amended Charge of Discrimination. Opp. 22; AWS Ex. U; AWS Ex. V; Dkt. 1. Wheeler cannot magically alter the applicable prima facie elements of her race and national origin discrimination claims by simply swapping them out for another prima facie case that does not apply to any facts previously pled.

Even if Wheeler had pled disparate treatment in her Complaint, she fails to explain how she satisfies a prima facie case for disparate treatment either. And indeed, she does not. There is no similarly situated employee to whom Wheeler compares herself or who had a "nearly identical"

---

[1] "AWS Ex. __" refers to the exhibits that AWS submitted in support of its MSJ (Dkt. 24) and this Reply Brief. "Wheeler Ex. __" refers to the exhibits Wheeler submitted in support of her Opposition (Dkt. 30).

disciplinary history yet was treated more favorably.  MSJ at 10, n. 5.  To put a finer point on it, Wheeler offers no comparator, likely because none exists, who was placed in Focus for three consecutive years, received two Least Effective ratings, failed to accomplish the expectations set forth in a Pivot, and lost her Pivot appeal, yet was allowed to continue working at AWS.  *Id.*

### 2. Wheeler Did Not Suffer An Adverse Action As A Result Of Discrimination.

Race, national origin, and age discrimination claims require a showing that the plaintiff suffered an adverse employment action because of the alleged discrimination.  MSJ at 9-10, 15. Wheeler did not, and her prima facie case of discrimination fails for this reason as well.  MSJ at 9-10, 15.  Wheeler unequivocally testified that the two adverse employment actions that she suffered – being placed in Pivot and getting terminated – occurred solely as a result of the alleged retaliation.  AWS Ex. A at 170:4-7, 131:19-23.

Confusingly, Wheeler argues that the requirement of an adverse action is "not supported by law," but yet she identifies "suffer[ing] [an] adverse action ***because*** of [the plaintiff's] membership in the protected class" as a prima facie element of discrimination in her own Opposition.  Opp. 22-23 (emphasis added).  Wheeler then alleges that AWS failed to examine her about whether "she felt discrimination played a role in the Pivot, her termination, or any other adverse action at issue."  Opp. 23.  AWS examined Wheeler on this precise subject, however, and had no reason to probe further given Wheeler's firm testimony that retaliation was the sole cause of the adverse actions she suffered.  AWS Ex. A at 131:19-23, 170:4-13 (agreeing that the only reason she was put in Pivot was because of her complaints about Knapp and testifying that she was "absolutely not" terminated for any reason other than retaliation).

Wheeler then claims that she suffered adverse actions sufficient to support her prima facie case under the new standard articulated in *Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023).

Opp. 24.[2]  As addressed in the MSJ, although *Hamilton* disposed of the "ultimate employment decision-standard," the plaintiff must still show "discrimination in hiring, firing, compensation, or the 'terms, conditions, or privileges' of her employment," none of which Wheeler – by her own admission – experienced as a result of discrimination.  MSJ at 10 (citing *Hamilton*, 79 F.4th at 497).  Simply put, nothing happened to Wheeler because Knapp said another Latino employee exhibited "Latin Fire" or because Knapp said his own elderly father was part of a "stubborn generation" during the height of a global pandemic.  Even post-*Hamilton*, the law requires more.

**B.      Wheeler Cannot Establish A Prima Facie Case Of Retaliation.**

Wheeler cannot establish a causal link between her protected activity and the adverse actions she experienced because Elkon, the decision maker, lacked knowledge of Wheeler's complaint.  AWS Ex. B at 128:1-4, 160:12-22; AWS Ex. H at ¶¶ 14-15.  First, there is no causal link between the protected activity and the Pivot because Elkon decided to place Wheeler in Pivot **before** Wheeler complained to human resources.  AWS Exs. I, K.  Second, there is no causal link between the protected activity and the termination because Elkon never learned any details about Wheeler's complaints until the time this lawsuit was filed.  AWS Ex. B at 160:12-22.

Even if Elkon did have knowledge of Wheeler's complaints about Knapp, which she did not, Wheeler nevertheless fails to set forth a causal link between the adverse employment actions she suffered and her protected activity.

**1.      Elkon Decided To Place Wheeler In Pivot _Before_ Wheeler Complained.**

Elkon resolved on March 9, 2020, to place Wheeler in Pivot, which was well before Wheeler contacted human resources to complain about Knapp on March 20, 2020.  *See* AWS Exs.

---

[2] Although Wheeler indicates that she meets some lesser adverse employment action standard, she nevertheless references her placement in Pivot and the termination of her employment as the relevant actions.  Opp. 24.

I, K.  This was the same Pivot plan that Wheeler failed and that ultimately led to the termination of her employment following her appeal.  Wheeler concedes these facts.  Opp. 4 at ¶ 30; 9.

Wheeler offers a "timeline" that she boldly declares "leaves no doubt that her protected activity and the adverse actions are linked."  Opp. 8-9.  That timeline, however, critically omits the key fact that Elkon's decision to place Wheeler in Pivot predated Wheeler's complaints by eleven days.  AWS Exs. I, K.   In *Oldenburg v. University of Texas at Austin*, 860 F. Appx. 922, (5th Cir. 2021), the Fifth Circuit held that a plaintiff's "timeline" failed to show a causal connection because the employer's decision to take the adverse action was finalized before the plaintiff observed conduct which she claimed she was retaliated against for having later reported.  *Id.*, 923-26.   Accordingly, the Fifth Circuit affirmed summary judgment dismissing the plaintiff's retaliation claim because she "had not yet had any opportunity to witness or oppose what she believed to be [] discrimination."  *Id.*, 926.  Likewise, here, Wheeler did not have "any opportunity to witness or oppose" Knapp's email to Rafael Visconti since it was sent *after* Elkon had already determined to place Wheeler in Pivot.  This undisputed sequence of events forecloses Wheeler from establishing a causal link.  MSJ at 17-18 (collecting cases dismissing retaliation claims for failure to prove a causal link where the decisionmaker lacked knowledge of the protected activity).

### 2.    Elkon Had No Knowledge Of Wheeler's Complaint Before Terminating Her Employment.

The competent summary judgment evidence in this case is that Elkon lacked knowledge of Wheeler's complaint prior to making the termination decision, and nothing in the Opposition overcomes that evidence.  Elkon executed a declaration confirming: "At no point prior to the termination of Ms. Wheeler's employment with AWS was I aware of any complaint of discrimination or retaliation made by Ms. Wheeler to Human Resources or Employee Relations."  AWS Ex. H, ¶ 15.  Wheeler's assertion that Elkon offered this representation "for the first time in

a declaration in support of Defendant's Motion" is false.  Opp. 12.  Elkon testified identically at her deposition – i.e., that she was unaware of Wheeler's complaint until "after [Wheeler] had already left Amazon," and added: "I didn't know . . . any details of it [the complaints about Knapp] until I read information related to this case."  AWS Ex. B at 160:12-22.  Elkon's declaration is squarely aligned with her deposition testimony, which Wheeler cannot dispute with the unsupported allegations in her Opposition.

Nevertheless, Wheeler claims that Elkon was an "Involved Part[y]" in the investigation into her complaint and thus had knowledge of it.  Opp. 12.  Although Laura Macdonald listed Elkon as an "Involved Person" in the investigation report (AWS Ex. O, pp. 1, 5-6), Elkon testified that she did not "participate in an internal investigation" into "Wheeler's HR complaints regarding Kevin Knapp," and Wheeler offers no contrary evidence.  AWS Ex. B at 171:4-8.  Further, Elkon repeatedly testified that she has never had any discussions with Macdonald about Wheeler (*id.* at 167:6-8, 168:19-21), and Wheeler has not adduced any evidence disputing that fact, either.

Presumably because the record evidence fails to support her desired conclusion, Wheeler attempts through her own self-serving declaration to impute to Elkon knowledge of the investigation.  Opp. 13-14 (citing Wheeler Ex. PP).  Wheeler's declaration is deployed to fill gaps between her arguments and the record evidence.  The declaration is littered with specific references to purported dates of alleged verbal exchanges with AWS employees from more than three years ago, and even quotes – none of which are reflected in the record.  Wheeler Ex. PP at ¶¶ 17-21, 25-26.

It is settled law that "a party's uncorroborated self-serving testimony cannot prevent summary judgment." *Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, 541 Fed. Appx. 443, 447-48 (5th Cir. 2013) (plaintiff's "self-serving" deposition testimony and affidavit "failed

to create a triable issue of fact"); *Caldwell v. Cty.*, No. H-21-1365, 2022 WL 4117033, at *6-7 (S.D. Tex. Sept. 6, 2022) (granting summary judgment for employer because plaintiff's "self-serving testimony" in his declaration could not satisfy his burden of proving pretext); *Drake v. Spring Indep. Sch. Dist.*, No. H-18-2912, 2020 WL 13612290, at *8 (S.D. Tex. May 4, 2020) ("[employee's] declaration is not enough to defeat summary judgment because a self-serving, conclusory declaration, on its own, cannot create a genuine issue of material fact").  Nor can Wheeler's self-serving declaration create issues of fact to salvage her case, particularly since the "documentary evidence supports the opposite scenario."  *See Vinewood Capital*, 541 Fed. Appx. at 447; AWS Ex. B at 160:12-22 (Elkon testifying that she lacked knowledge of Wheeler's complaint).

### 3.     Elkon Was The Decisionmaker.

Elkon "was solely the person responsible for drafting [the Pivot]" and "was the decision-maker" with respect to the termination.  AWS Ex. B at 127:17-128:5; AWS Ex. H at ¶¶ 9, 14.  As in any large organization, Elkon partnered with others to "spot check" her decision and ensure "that it was justified and there was evidence," but nonetheless made the decision.  *Id.*  Consistent with that, Knapp testified that he did not help draft the Pivot, which Elkon prepared, (AWS Ex. N at 50:14-15), did not approve Wheeler's Pivot because Elkon "had authority and decision-making on producing and submitting the Pivot," (*id.* at 48:9-15), did not "have the autonomy and the oversight" over Wheeler's Pivot process, but rather the "leaders that report to [Knapp]" did (*id.* at 88:2-4), and did not communicate with Wheeler during the Pivot process (*id.* at 88:5-8).  Indeed, Knapp confirmed that he was "not directly involved" in Wheeler's Pivot and was only "indirectly" involved, meaning that he received "just notification on timeline/next steps."  *Id.* at 46:16-47:8.

Nor was Knapp "directly involved in the decision to terminate Ms. Wheeler." AWS Ex. N at 57:1-3. His "indirect involvement" was limited to "[j]ust [being] informed of decision-making throughout the process," and he never "question[ed] the ultimate decision to terminate Ms. Wheeler's employment," which – as he confirmed – was made by Elkon. *Id.* at 57:4-25.

In an attempt to manufacture a causal connection where none exists, Wheeler argues that Elkon was not the *sole* decisionmaker. Opp. 10. Despite the competent summary judgment evidence, she contends that other AWS employees were involved in Wheeler's Pivot and termination, including Knapp and human resources representatives Haissel McFarland and James Miles. *Id.* at 10-11. This fails to raise a genuine issue of material fact. First, that Elkon partnered with human resources and kept her supervisor informed of Wheeler's progress, does not transform these individuals into decision makers themselves. *See Kelly v. Costco Wholesale Corp.*, 632 Fed. Appx. 779, 781-84 (5th Cir. 2015) (holding that a plaintiff failed to demonstrate that a manager had "influence or leverage" over a vice president who made the decision to terminate the plaintiff's employment, although the manager was involved in the investigation that led to the plaintiff's termination, because the manager did not provide the vice president with a recommendation to fire the plaintiff); *see also, Hervey v. Miss. Dept. of Educ.*, 404 Fed. Appx. 865, 872-73 (5th Cir. 2010) (affirming summary judgment for the employer and holding that mere involvement by co-workers in the events leading up to the plaintiff's termination did not render them decision makers).[3]

Second, Wheeler's assertion that Knapp played a role in deciding the outcome of the Pivot, which led to the termination of Wheeler's employment, is based strictly on her subjective belief. AWS Ex. A at 124:9-125:6 (Wheeler testifying that she has no "proof or evidence" that Knapp was involved in the Pivot decision, but rather "[j]ust . . . believe[s] that [] is true"). In fact, Wheeler

---

[3] Elkon testified that McFarland was not part of the decision-making process. AWS Ex. B at 122:6-20.

testified that she does not know who made the decision to terminate her employment.  *Id*. at

131:10-12.  Wheeler's subjective belief is insufficient "to create a genuine issue of material fact

as to the existence of the third element of a prima facie retaliation case: a causal link."  MSJ at 13-

14; *Peace v. Harvey*, 207 F. Appx 366, 369 (5th Cir. 2006); *id.* (affirming summary judgment on

a retaliation claim).

    Neither human resources' facilitation of Wheeler's Pivot nor Elkon notifying Knapp about

it raises a genuine issue of a material fact disputing that Elkon was the decisionmaker, and Wheeler

offers no contrary summary judgment evidence.

### 4.      Wheeler Cannot Establish Causation Through Temporal Proximity.

Wheeler asserts that the four-month gap between her complaint and termination is

"sufficient, without more, to establish a causal link."  Opp. 8.   To the contrary, "the Supreme

Court has since approvingly cited a case that held **three months was insufficient to show**

**causation**." *Garcia v. Pro. Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (citing *Clark*

*Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)) (emphasis added).   In *Caldwell*, the

plaintiff did not meet his burden of demonstrating a prima facie case of retaliation where the

protected activity predated the adverse action by "just over three months."  *Caldwell*, 2022 WL

4117033, at *7; *see also* MSJ at 20 (collecting Fifth Circuit cases holding that three months is

insufficient to show causation).  Given that three months is not enough, the four-month gap here

necessarily fails to establish causation.[4]

---

[4] To be sure, the cases cited in the Opposition concerned significantly shorter temporal gaps than at issue here.  Opp. 8-10 (citing *Hu v. Inteplast Grp. Corp.*, No. 6:21-cv-00056, 2023 WL 6394394, at *10 (S.D. Tex. Sept. 29, 2023) (six weeks); (citing *Garcia*, 938 F.3d at 243 (two-and-one-half-months) (citing *Berry v. Parish*, 834 Fed.Appx. 843, 847 (5th Cir. 2020) ("less than two months"); (citing *Evans v. City of Houston*, 246 F.3d 344, 347, 356 (5th Cir. 2001) (five days)).  Further, *Johnson v. Halstead*, 916 F.3d 410, was decided on a Rule 12(c) motion for judgment on the pleadings, which is governed by a "plausibility" standard that merely required that "the plaintiff [] ple[a]d sufficient facts to defeat a motion to dismiss," which the court expressly distinguished from the summary judgment standard applicable here.  *Id.*, 421, n.4 (5th Cir. 2019).

"Employers are sometimes forced to remove employees who are performing poorly" and "[p]recedent does not prevent a[n] [employer] from removing such an employee simply because the employee engaged in a protected work activity months prior." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (poor performance constituted a legitimate basis for discharge).  Temporal proximity cannot protect Wheeler's retaliation claims from dismissal.

**C.**     **AWS Articulated Legitimate, Non-Discriminatory, And Non-Retaliatory Reasons For Placing Wheeler In Pivot And Terminating Her Employment.**

Wheeler does not dispute that performance is a lawful basis for taking an adverse employment action.  Nor does she dispute that she was placed in Focus on three occasions, received Least Effective ratings in 2019 and 2020, and was put in Pivot, which her manager determined that she failed.  Rather, what Wheeler disputes is whether her employer *should have* taken these performance management measures.  Wheeler spills considerable ink arguing that her succession of managers all got it wrong for all those years because, in her opinion, she performed her job "excellently."  Opp. 14.  She misses the point.

**1.**     **Wheeler's Disagreement With AWS's Assessment Of Her Performance Cannot Raise A Genuine Issue Of Fact.**

Wheeler's ex-post, unilateral assessment of her own performance fails because "[m]erely disputing [her employer's] assessment of h[er] performance will not create an issue of fact." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (affirming a dismissal of an age discrimination claim).  "[A]n employee cannot survive summary judgment merely because she disagrees with the employer's assessment of her performance." *Evans v. Tex. Dept. of Transp.*, 547 F. Supp. 2d 626, 647 (E.D. Tex. 2007).  Indeed, "[e]mployment discrimination laws are not intended to be a vehicle for judicial second-guessing of business decisions, nor to transform the

courts into personnel managers.'" *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (quotations omitted) (entering judgment on retaliation claim for the employer).

Rather, the issue on summary judgment "is whether [the employer's] reason, **even if incorrect**, was the real reason for [the] termination." *Sandstad*, 309 F.3d at 899 (emphasis added); *see also Evans*, 547 F. Supp. 2d at 647 ("[T]he issue is whether the employer's perception of her performance, **accurate or not**, was the real reason for her termination.") (emphasis added). "A fired employee's actual innocence of h[er] employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted on it in good faith." *Cervantez v. KMGP Svcs. Co. Inc.*, 349 Fed. Appx. 4, 10 (5th Cir. 2009).

### 2.     Wheeler's Assessment Of Her Performance Is Also Factually Unsupported.

While Wheeler may dispute AWS's assessment of her performance, Elkon reasonably believed that Wheeler underperformed and terminated Wheeler based on that belief. To be sure, Elkon testified that Wheeler was the worst performing employee on her team. AWS Ex. B at 141:6-10. The summary judgment record is replete with facts supporting Elkon's good faith belief that Wheeler's performance was deficient, not the least of which include complaints about Wheeler from her peers and customers. *Id.* at 141:6-21; MSJ at 4-5, 7-8; AWS Ex. Q; AWS Ex. R at 2-4.

Ignoring the settled law holding that disputing an employer's assessment of performance does not raise a genuine issue of fact, Wheeler launches into a defense of her performance, focusing on former supervisors. She points to an email from Crystal Serrato, the supervisor two before Elkon, regarding Wheeler's placement in Focus in 2018, and argues that Serrato put everyone who transferred to her "into the plan." Opp. 4, 16-17. In Wheeler's 2018 Focus, however, Serrato identifies a number of performance issues, none of which related to Wheeler's transfer to Serrato's team – including, low activity, reliance on a sourcer to fill her own funnel, and generally not being

where she needs to be in the sourced pipeline despite the two-month ramp up period on the team. AWS Ex. E, p. 2.  Further, Serrato only removed Wheeler from Focus after "ongoing coaching ha[d] shown improved results," demonstrating that there were performance issues which led Serrato to place Wheeler in Focus in the first place.  *Id*.

Wheeler next challenges her Least Effective rating for 2019 because Melissa Eyeington, the supervisor before Elkon, at one point suggested a rating of "HV" and because Wheeler believes that Elkon (not Eyeington) assigned her this Least Effective rating.[5]  Opp. 18.  Wheeler, however, cannot dispute *that* she received a Least Effective rating not once, but twice, which more than establishes her poor performance.  Whether a different rating was proposed earlier in the year before the final rating was due[6] or whether Elkon or Eyeington assigned Wheeler's first Least Effective rating are both beside the point.  Wheeler fails to raise a genuine issue of material fact because there is no evidence that either manager improperly assigned her the rating.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]").

Moreover, within the same email in which Eyeington proposed a mid-year rating of "HV," she provided comments on Wheeler's performance, none of which were positive and nearly all of which were negative, including that Wheeler "need[ed] to improve her communication" and "collaborate with the sourcers proactively to create a plan of action" – issues that Eyeington directly addressed with Wheeler but were never improved and further contributed to her Least

---

[5] Wheeler does not know who assigned her the two Least Effective ratings and never knew these ratings existed until the day of her deposition.  AWS A at 51:24-52:18.  Elkon testified that she did not assign Wheeler her 2019 Least Effective rating.  AWS Ex. B 77:6-17; 130:15-16.
[6] OV ratings reflect an employee's performance for the entire year, not just half of it, and are assigned in January or February.  AWS Ex. N at 27:11-13.

Effective rating in 2019.  Wheeler Ex. AA, p. 2-3.  Eyeington and Elkon met before Eyeington transitioned her team and discussed the team members' performance.  AWS Ex. B at 165:7-24. Eyeington called out Wheeler's performance struggles during this meeting, identifying the areas in which she was coaching Wheeler, and Elkon noticed these same performance "trends" when she began supervising Wheeler.  *Id*. at 165:7 – 166:15.

Finally, Wheeler questions Elkon's determination that she failed the Pivot.  Opp. 20.  She points to a June 23, 2020 email from Elkon in which Elkon informed human resources that, after speaking with the Career Ambassador, she "updated the content to align more closely with the details/measurements of expectation #1" of the Pivot, and added that "[w]hile Melissa did meet the measurements, **there were intrinsic errors in the offer process itself**" and, "as a result, [we] still deem her performance as unsuccessful in this area."  Wheeler Ex. J, p. 1 (emphasis added). Wheeler claims this represents an "egregious example of dishonesty," but the bolded text explains why Wheeler failed Expectation 1 notwithstanding satisfaction of other measurements.  Wheeler was expected to produce work product with fewer errors, which she failed to do, as "there were intrinsic errors in the offer process itself."  AWS Ex. I; Wheeler Ex. J.

Undeterred, Wheeler proclaims that "each of the 'intrinsic errors' … occurred on the first day of the Pivot, May 22, 2020" and drops a footnote claiming that "[n]o evidence shows the 'intrinsic errors' occurred after the Pivot took effect on May 22."  Opp. 20, n.10.  This allegation is demonstrably false.  In assessing Wheeler's performance under the Pivot Improve Plan, Elkon documented, with respect to Expectation 1, that "[l]imited attention to detail occurred during an offer presented on 5/22 (continuing 5/25)," that another offer Wheeler prepared the following week was also incorrect because it "exceeded the Year 3 range, requiring exception approval," that a "separate error was made simultaneously where the offer was extended to the candidate prior to

14

submitting in NHOC to lock-in the details," and even more "[e]rrors were uncovered on req details on 6/16."  AWS Ex. R, p. 1, 3.

Wheeler, it seems, charges AWS with misrepresenting the record evidence when it is she who distorts the facts.  For example, Wheeler claims she "was rated 'highly valued' in 2018," but offers no evidence in support.  Opp. 17.  The undisputed evidence, in fact, confirms that AWS employees are not made aware of their OV ratings and thus Wheeler had no knowledge of her OV rating in any year or who assigned it.  AWS Ex. A at 51:24-52:18; AWS Ex. B at 67:19-68:8.  Wheeler's quibbling over AWS's assessment of her performance is not only immaterial, but also wrong.

**D.      Wheeler Cannot Carry Her "Ultimate Burden" Of Proving Pretext.**

**1.      Stray Remarks Do Not Prove Intentional Discrimination.**

Where, as here, "the defendant meets its burden, the presumption of discrimination created by the prima facie case disappears, and the plaintiff is left with the ultimate burden of proving discrimination."  *Sandstad*, 309 F.3d at 897.  The ultimate burden "remains at all times with the plaintiff" and requires Wheeler to persuade the Court that AWS "intentionally discriminated" against her.  *Cervantez*, 349 Fed. Appx. at 9 (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (affirming summary judgment because the employee failed to raise an issue of fact disputing the employer's reason for terminating his employment).  To do so, Wheeler would have to "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination."  *Id.*

Wheeler relies on stray remarks in an attempt to satisfy her ultimate burden of proving intentional discrimination, but the Fifth Circuit "has consistently found that stray remarks are not enough to demonstrate discriminatory animus[.]"  *Kelly*, 632 Fed. Appx. at 783 (reasons for

termination were not pretext for age discrimination); *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("[A]s we have held on several occasions, a mere 'stray remark' is insufficient to establish age discrimination[.]").  Wheeler, nevertheless, insists that Knapp's "Latin Fire" and "stubborn generation" comments are circumstantial evidence of animus.  Opp. 26. When an isolated comment is proffered as indirect evidence of discrimination, a plaintiff must show "(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker."  *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012).  Knapp's stray remarks satisfy neither element.

First, neither of Knapp's stray remarks evidence "discriminatory animus."  Knapp's "Latin Fire" comment was not about or directed at Wheeler and was not made because Visconti is Hispanic.  AWS Ex. A at 147:1-15.  It is equally undisputed that neither Knapp nor anyone else at AWS ever made comments to Wheeler about her race or national origin.  Ex. A at 147:23-148:2, 150:4-10; 161:7-17.  The stray remarks on which Wheeler premises her age discrimination claims – Knapp's comment that his own father is part of a "stubborn generation," and his announcement of the 30th birthday of a colleague – are equally unavailing.  Neither of these comments were directed at Wheeler and Knapp never said a word to Wheeler about her age.  AWS Ex. A at 136:20-25.  Moreover, Knapp was 40 when he referenced his father's generation and Wheeler was only 47.  "Membership in the same protected class as [plaintiff] bolsters the inference that age discrimination was not the reason for [her] termination."  *Kelly*, 632 Fed. Appx. at 783.

Second, Knapp was the not the decisionmaker over Wheeler's placement in Pivot or her termination.  *Supra* § II, B, 3; *Kelly*, 632 Fed. Appx. at 779.  As in *Kelly*, there is no evidence that

Knapp recommended termination and, in fact, the deposition testimony and other competent summary judgment evidence proves he did not.

Wheeler attempts to raise fact issues in other ineffective ways, including faulting Elkon for "not call[ing] out Knapp," and concluding that Elkon "endorsed" his comments.  Opp. 25-26.  Yet, Wheeler testified that she does not know whether Elkon addressed the comment with Knapp.  AWS Ex. A at 228:14-17.   Elkon testified that she would not have used the words that Knapp used, not because she believed they were discriminatory, but to avoid making a "connection between somebody's approach and where they came from."   AWS Ex. B at 139:23-140:12.  Critically, at the time of the comment, Elkon did not even know that Wheeler is Hispanic.  AWS Ex. B at 163:10-12.  Wheeler's hope that the Court will infer that Elkon endorsed Knapp's comments or is racist is based on idle speculation and should not defeat this Motion.  *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) ("speculation, improbable inferences, [and] unsubstantiated assertions" "will not survive summary judgment").

Wheeler next focuses on Knapp's "other inappropriate workplace conduct, such as sharing images of himself giving the middle finger to the camera" and "off color jokes."  Opp. 27.  But Wheeler does not bother to articulate how either of these alleged claims possibly relate to race, national origin, or age, whether they were about or directed at Wheeler, or when they occurred. "[A] comment is not evidence of discrimination if it is the sole proof of pretext, or if it is not made in temporal proximity to the adverse employment decision."  *Cervantes*, 349 Fed. Appx. at 11. Pictures of "hens" and "middle fingers," unspecified "off color jokes," and stray remarks all fail to satisfy Wheeler's ultimate burden of showing intentional discrimination.  *See Reed*, 701 F.3d at 442 (holding that stray remarks are insufficient to create a fact issue because they were "sporadic,

in large part untethered to specific speakers or times, and attributed to harassers who had no responsibility for, or influence over, [the plaintiff's] termination").

Nothing in Wheeler's Opposition would enable a reasonable factfinder to conclude that AWS terminated Wheeler's employment because she is Latina and over 40.  Because she has failed her ultimate burden of making that showing, her discrimination claims must be dismissed.

### 2.    Wheeler Has Not Satisfied Her Burden Of Proving "But-For" Causation.

To establish pretext for retaliation, Wheeler would have to show that she "would not have been terminated 'but for' engaging in protected activity."[7]   *Alfred v. Louisiana Dept. of Corrections*, 619 Fed. Appx. 324, 326 (5th Cir. 2015) (affirming summary judgment on a Title VII retaliation claim where the employee failed to show but-for causation).  "Although analytically almost identical to the 'causal link' step in the prima facie case, the burden here is more stringent." *Stewart v. RSC Equip. Rental, Inc.*, 485 Fed. Appx. 649, 651–52 (5th Cir. 2012) (affirming summary judgment for the employer on a retaliatory termination claim).  Wheeler "must offer some evidence from which the jury may infer that retaliation was the real motive."  *Swanson v. General Services Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (reversing a jury verdict finding of retaliation under Title VII).  Specifically, "to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."  *Feist v. La., Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (affirming dismissal of a retaliation claim because the plaintiff failed to show the employer's explanation for his dismissal – poor performance – was pretextual).

---

[7] The but-for causation standard applies to retaliation claims asserted under TCHRA and Section 1981 as well.  *See Chandler v. CSC Applied Tech., LLC*, No. 01–10–00667–CV, 376 S.W.3d 802, 823-24 (Tex.App.—Hous. [1st Dist.] July 12, 2012, no pet.) (applying but-for causation standard and granting summary judgment for employer on TCHRA retaliation claim); *Sharma v. Amazon Web Services, Inc.*, No. 3:21-CV-2486-X, 2023 WL 4304758, at *4 (N.D. Tex. June 30, 2023) (applying the but-for causation standard for a Section 1981 retaliation claim, and granting summary judgment for the employer claim because the plaintiff failed to establish causation).

Wheeler fails even to acknowledge the but-for causation standard.

Wheeler attempts to satisfy her ultimate retaliation burden by arguing that AWS deviated from its policies. She claims that she was "only given thirty (30) days for her Pivot when forty-five to sixty (45-60) days is the standard time." Opp. 19. Yet, Wheeler fails to establish how any slight deviation from the standard length of the Pivot meets the but for causation standard. Similarly, Wheeler's assertion that her 2020 placement in Focus was not of sufficient duration is unsupported by any AWS policy requiring a fixed duration for Focus. The reality is that Elkon moved Wheeler out of Focus in early March 2020 because she decided to place her in Pivot after she failed to improve. AWS Exs. E, I.

Equally baseless is Wheeler's contention that AWS failed "to put any safeguards in place to ensure [she] would be protected from retaliation." Opp. 21. AWS paused Wheeler's Pivot due to her complaint about Knapp, heeded Wheeler's request that the investigators "keep [the complaint] confidential" to the extent possible, maintained strict policies proscribing retaliation, and directly instructed Knapp of his obligations to abide by the anti-retaliation policy. AWS Exs. M, K, P; Wheeler Ex. R.

In a last-ditch effort to conjure pretext, Wheeler, who acknowledges that "temporal proximity alone is not enough to prove a pretext," nonetheless suggests that the four-month lapse here precludes summary judgment. Opp. 22. The Fifth Circuit has rejected that very argument. *Supra* § II, B 4; *Strong*, 482 F.3d at 807 ("[Plaintiff's] conclusion is that 'summary judgment is simply inappropriate in retaliation cases where the adverse employment decision follows closely on the heels of the plaintiff's complaint of discrimination.' Our precedent lends no support whatsoever to [plaintiff's] position. In fact, we have stated just the opposite.").

But-for causation requires a showing that "without [plaintiff's] protected activity, the employer's prohibited conduct would not have occurred when it did." *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 488-89 (5th Cir. 2004) (reversing a jury verdict on a retaliation claim). The evidence does not support but-for causation; to the contrary, the record is rife with evidence supporting AWS's decision to enter Wheeler into Pivot and eventually terminate her employment. *Supra* § II, B.  Because Wheeler fails to satisfy her ultimate burden to establish but-for causation, her retaliation claims must likewise be dismissed.

### III.  CONCLUSION

For these reasons, AWS respectfully requests that the Court grant its Motion for Summary Judgment.

Dated:  November 20, 2023                          Respectfully submitted,

Of Counsel                                        */s/ Stefanie R. Moll*
                                                  Stefanie R. Moll
Morgan, Lewis & Bockius LLP                       Attorney-in-charge
Tyler J. Hill                                     TX Bar No. 24002870
TX Bar No. 24130505                               Federal ID No. 22861
Federal ID No. 3815851                            stefanie.moll@morganlewis.com
tyler.j.hill@morganlewis.com                      1000 Louisiana Street, Suite 4000
1717 Main Street, Ste. 3200                       Houston, TX 77002
Dallas, TX 75201                                  T: 713.890.5000
T: 214.466.4160                                   F: 713.890.5001
F: 214.466.4001

                                                  ATTORNEYS FOR AMAZON WEB SERVICES, INC.

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on the date indicated herein, I caused a copy of AWS's Reply Brief in support of its Motion for Summary Judgment to be served, via the Court's electronic case filing system, upon all counsel of record.

Dated:  November 20, 2023          */s/ Stefanie Moll*
                                              Stefanie Moll