United States District Court
Southern District of Texas
**ENTERED**
July 12, 2024
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MELISSA WHEELER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:22-cv-370** |
| | § | |
| **AMAZON WEB SERVICES,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court is Defendant Amazon Web Services' ("Amazon") Motion for Summary Judgment. (ECF No. 24).[1] Based on a review of the motion, arguments, and relevant law, the Court **RECOMMENDS** Amazon's Motion for Summary Judgment be **GRANTED.**

## I.      Background

Plaintiff Melissa Wheeler ("Wheeler") filed this action on February 3, 2022, asserting claims of race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") (Count One); race discrimination in violation of 42 U.S.C. § 1981 (Count Two); race and national origin discrimination in violation of the Texas Commission on Human Rights Act ("TCHRA") (Count Three); age discrimination in violation of the Age

---

[1] On May 15, 2024, this case was referred to the Undersigned for all purposes pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72.  (ECF No. 35).

Discrimination in Employment Act of 1967 ("ADEA") and TCHRA (Count Four); and retaliation in violation of Title VII, 42 U.S.C. § 1981, the ADEA, and the TCHRA (Count Five).  (ECF No. 1).

Wheeler is a Hispanic and Latina woman who began employment with Amazon as a recruiter on April 11, 2016.  (*Id.* at ¶ 8).  In October 2018, Wheeler's immediate manager became Melissa Eyeington ("Eyeington").  (ECF No. 24 at 9).  In the fall of 2019, Wheeler's immediate manager changed to Patricia Elkon ("Elkon") and her skip-level supervisor was Kevin Knapp ("Knapp").  (ECF No. 1 at ¶¶ 11–14).  Wheeler alleges discriminatory statements were made by Knapp during her employment with Amazon, and that Elkon and other team members agreed with Knapp's discriminatory statements.  (*Id.* at ¶¶ 14–17).

Wheeler asserts racial and national origin discriminatory statements were made when Knapp sent an email "that '[Rafael Visconti ("Visconti")] has the stereotypical Latin fire as I have seen it a number of times over the last couple of years in working with him.'"  (*Id.* at ¶ 14).  Additionally, Wheeler claims "Knapp immediately injected Visconti's Hispanic heritage into the conversation by writing his salutations in Portuguese ('Bom Dia,' 'Obrigado')."  (ECF No. 30 at 31).

Wheeler asserts Knapp made age-related discriminatory statements when he sent messages stating, "[m]y ageing dad is still a practicing physician and my sisters and I are doing everything in our powers to discourage him from continuing to go to hospitals right now and see less critical patients in his offices. They are a stubborn generation." (ECF No. 24-12 at 2). Also, in a deposition, Wheeler points to a Chime message Knapp sent, regarding another employee, stating "Gina, today is your 30th birthday." (ECF No. 24-1 at 37).

Wheeler claims she attempted to discuss the discriminatory statements with Knapp, but he became angry and was unwilling to listen. (ECF No. 1 at ¶ 18). Due to Wheeler's displeasure in Knapp's response, Wheeler contacted her Human Resources representative, Laura MacDonald ("MacDonald") on or around March 23, 2020, to discuss the discriminatory statements.[2] (*Id.* at ¶ 20). Wheeler informed Human Resources of her concern that Knapp and Elkon would not be able to supervise her without bias. (*Id.* at ¶ 23). Subsequently, Wheeler felt Elkon was intentionally excluding and isolating her, unnecessarily questioning her actions, and causing unjustifiable challenges between her and her team. (*Id.* at ¶¶ 24–25). As such, Wheeler made a report

---

[2] In Wheeler's Complaint, she alleges that she first told MacDonald of the discriminatory remarks on or about March 23, 2020. (*Id.* at ¶ 20). However, the original date of complaints to MacDonald changed to March 20, 2020 in Wheeler's response to Amazon's Motion for Summary Judgment. (ECF No. 30 at 10).

on April 2, 2020, to Ivre Kladnik ("Kladnik")[3] in the legal department regarding her complaints.  (*Id.* at ¶ 26).   On April 8, 2020, Wheeler states Kladnik informed her that she "spoke with pertinent parties and reviewed relevant documentation, and through a thorough investigation found a violation of Amazon policy or standard of conduct."[4]  (*Id.* at ¶ 27).

Amazon states it terminated Wheeler for years of poor performance. (ECF No. 24 at 8).  Amazon has an annual review process called "Forte," in which Amazon claims Wheeler had negative reviews in 2018.  (*Id.* at 9).  In addition to Forte, Amazon has a performance management program called "Focus," which is "a tool that managers use to document performance issues and provide additional coaching to struggling employees." (*Id.*).  In June 2018, Wheeler was placed in Focus due to "'low [sourcing] activity' and [] improperly 'relying on a sourcer to fill her funnel.'"  (*Id.*).  Wheeler was hired as a recruiter and then transferred to a senior recruiter with Amazon.  (*Id.*).  "In that role, Wheeler's duties centered on 'sourcing' candidates for open positions, and then 'closing' them by preparing offer letters and 'seeing the candidates through the

---

[3] Kladnik has been referred to in the pleadings with different spelling variations, including: Kladkik, Klandik, and Kladik.  To be consistent, the Court will refer to her as "Kladnik."

[4] Wheeler filed a formal harassment complaint on March 20, 2020, against Knapp regarding the allegedly discriminatory statements and Kladnik investigated the incident. (ECF No. 30-26 at 1).  Kladnik "determined that the incident did not rise to the level of harassment, and closed the investigation on April 7, 2020."  (*Id.*).  "A written warning was provided to Kevin addressing his lack of judgment in communications with his team."  (*Id.*).

finish line once they got the offer.'" (*Id.*).  A sourcer is someone who recruits and finds candidates for open positions.  (ECF No. 30-2 at 15).  Amazon claims it was improper for Wheeler to rely on a sourcer to fill her funnel because "as a full life cycle recruiter she [wa]s responsible for sourcing her own candidates." (ECF No. 24 at 9).

Amazon asserts Wheeler's performance in Focus did not improve as she was rated "least effective" for two years in a row.  (*Id.* at 11).  On April 13, 2020, and April 16, 2020, Elkon informed Wheeler that she was concerned about Wheeler's performance and on April 22, 2020, Wheeler was placed in Pivot.  (ECF No. 1 at ¶¶ 28–30).  "Pivot is a performance improvement plan in which the employee is presented with written expectations on which they will be measured to demonstrate improved performance."  (ECF No. 30 at 9). However, Wheeler claims she "was not provided access to the tools or training required to meet the new reporting requirements."  (ECF No. 1 at ¶ 31).

On or around June 24, 2020, Elkon informed Wheeler that she failed to improve in accordance with Pivot and was given the choice "to either appeal this decision or take a payout and leave the company."  (*Id.* at ¶ 34).  On or around June 29, 2020, Wheeler decided to appeal the decision.  (*Id.* at ¶ 35). On July 10, 2020, Wheeler presented her complaints to a panel via video call. (*Id.* at ¶ 36).  That same day, she was informed her appeal was unsuccessful

5

and her last day would be July 14, 2020. (*Id.* at ¶¶ 37–38). Wheeler was then terminated on July 14, 2020, due to her failure to improve while on Pivot. (*Id.* at ¶ 38). Wheeler was forty-seven years old at the time of her termination. (*Id.* at ¶ 39).

Wheeler claims being placed on Pivot and then terminated was a result of discrimination and retaliation. (*Id.* at ¶ 40). Wheeler and Amazon strongly disagree on whether Wheeler performed her job deficiently, which ultimately led to Wheeler being placed on Pivot and terminated.

## II.   Legal Standard

Rule 56(a) instructs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Talasek v. Nat'l Oilwell Varco, L.P.*, 16 F.4th 164, 168 (5th Cir. 2021) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A material fact is one that "might affect the outcome of the suit under the governing law." *Bazan ex rel. v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis omitted);

6

*see Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021). "An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis omitted). The Court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

The movant is tasked with the initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact. *See Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Celotex Corp.*, 477 U.S. at 323). The movant may also argue that the nonmovant failed to produce evidence in support of at least one element of a cause of action for which he bears the burden of proof. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017).

If the movant satisfies the initial burden, it shifts to the nonmovant who must produce evidence of a genuine factual dispute; he may not merely rest on the allegations in his pleading. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505 (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The Court should not accept "[u]nsubstantiated assertions, improbable inferences, [or] unsupported speculation" as sufficient to carry the nonmovant's burden. *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th

7

Cir. 2003).  However, where there is evidence of a genuine factual dispute, such disputes are resolved in favor of the nonmoving party "when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts."  *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999); *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).  Further, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023), *as revised* (May 19, 2023).

## III.  Discussion

Wheeler alleges five counts against Amazon for: (1) race and national origin discrimination in violation of Title VII; (2) race discrimination in violation of 42 U.S.C. § 1981; (3) race and national origin discrimination in violation of TCHRA; (4) age discrimination in violation of the ADEA and TCHRA; and (5) retaliation in violation of Title VII, 42 U.S.C. § 1981, the ADEA, and the TCHRA.  (ECF No. 1 at ¶¶ 42–71).  Amazon seeks summary judgment arguing that Wheeler cannot state a prima facie case for any of her causes of action, and, even if she could, "there is no material issue of fact disputing [Amazon]'s legitimate, nondiscriminatory, and non-retaliatory basis for terminating Wheeler's employment."  (ECF No. 24 at 8).

8

"Unlawful discrimination may be established through either direct or circumstantial evidence." *Jumbo v. Goodwill Indus. Houston*, No. 4:21-cv-03509, 2023 WL 5417149, at *3 (S.D. Tex. Aug. 7, 2023), *report and recommendation adopted*, No. 4:21-cv-03509, 2023 WL 5401874 (S.D. Tex. Aug. 22, 2023). "'Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) *without any inferences or presumptions*.'" *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38 (5th Cir. 1996) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir.1993) (emphasis in original)).

If a plaintiff relies upon circumstantial evidence of discrimination, the Court "must apply the familiar burden-shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonell Douglas*") to analyze [her] discrimination claims." *Jumbo*, 2023 WL 5417149, at *3 (citing *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). Under this framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* A prima facie claim for discrimination is established by showing that: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action such as termination or demotion; and (4) [s]he was replaced by someone not of the protected class or others similarly situated were more favorably treated." *Pickens v. Shell Tech. Ventures Inc.*,

9

118 F. App'x 842, 845 (5th Cir. 2004).  Amazon "must then produce a legitimate nondiscriminatory reason for the adverse employment action."  *Doohan v. ExxonMobil*, No. 4:21-cv-01467, 2023 WL 3352228, at *6 (S.D. Tex. May 10, 2023), *report and recommendation adopted*, No. 4:21-cv-01467, 2023 WL 3550211 (S.D. Tex. May 18, 2023).  "Once [Amazon] produces a legitimate nondiscriminatory reason, the presumption of discrimination disappears and Wheeler must point to 'evidence that [Amazon]'s reasons were a pretext for unlawful discrimination.'"  *Id.* (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)).

Here, Amazon argues, and Wheeler concedes the *McDonnell Douglas* test applies as she is not relying on Knapp's comments alone as direct evidence to prove discrimination.  (ECF No. 24 at 15; ECF No. 30 at 28, 32).  As such, the Court will apply the burden-shifting test set forth in *McDonnell Douglas*.

## A.    Race and National Origin Discrimination Claims[5]

Amazon argues that Wheeler's claims for race and national origin discrimination fail because "(1) Wheeler cannot advance a prima facie case of

---

[5] Wheeler's race and national origin discrimination claims in violation of Title VII, 42 U.S.C. § 1981, and TCHRA will be analyzed together where appropriate to avoid redundancy because "these three statutory bases are functionally identical."  *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999) (stating "[w]hen used as parallel causes of action, Title VII and section 1981 require the same proof to establish liability" and "the law governing claims under the TCHRA and Title VII is identical."); *see Jumbo*, 2023 WL 5417149, at *3 ("Because § 1981 claims are judged under the same standards as Title VII claims, I am able to evaluate the sufficiency of both claims at the same time.").

discrimination, and (2) her documented underperformance over a three-year period constitutes a legitimate, non-discriminatory basis for [the adverse employment action.]"  (ECF No. 24 at 14–15).  Wheeler's race and national origin discrimination claims are based on her classification as a Hispanic and Latina woman.  (ECF No. 1 at ¶ 8).  Wheeler alleges discriminatory statements were made when "Mr. Knapp stated that '[Visconti] has the stereotypical Latin fire as I have seen it a number of times over the last couple of years in working with him.'"  (*Id.* at ¶ 14).  Additionally, Wheeler claims "Knapp immediately injected Visconti's Hispanic heritage into the conversation by writing his salutations in Portuguese ('Bom Dia,' 'Obrigado')."  (ECF No. 30 at 31).

### 1.    Prima Facie Case of Discrimination

Amazon specifically argues that Wheeler cannot establish a prima facie case of race and national origin discrimination because (1) she did not suffer an adverse employment action as a result of the alleged discrimination, and (2) she was not replaced by a person outside of her protected class.  (ECF No. 24 at 16).

To reiterate, to establish a prima facie claim for race and national origin discrimination, a plaintiff must show that she:

> (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less

favorably than other similarly situated employees outside the
protected group.

*Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Stroy*

*v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)

(quotations omitted)).   Here, Amazon disputes the sufficiency of Wheeler's

allegations regarding the third and fourth elements.  (ECF No. 24 at 15).

With respect to the third element, Amazon argues Wheeler cannot

establish a prima facie case because "Wheeler did not suffer an adverse

employment action as a result of the discrimination she alleges" and cites to

Wheeler's testimony that the adverse employment actions she endured were

due to retaliation rather than discrimination.  (*Id.* at 15–16).  Wheeler counters

that "[t]his argument is not supported by law" and refers to adverse

employment actions, such as being placed on Pivot and termination, in which

she believes the alleged discrimination played a role.  (ECF No. 30 at 29–30).

Wheeler alleges her negative ratings, being placed in Focus and then

Pivot, and ultimately being terminated constitute adverse employment actions

under the third element.  (ECF No. 30 at 8–9, 30).  Amazon does not dispute

that these events are adverse employment actions, but rather argues that

Wheeler has testified that these adverse employment actions resulted due to

retaliation rather than discrimination.  (ECF No. 24 at 16).

12

Historically, "[o]nly 'ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating' satisfy the adverse employment action element of discrimination claims." *Gholson v. Marathon Petroleum Corp.*, No. 1:15-cv-207, 2017 WL 11717901, at *3 (W.D. Tex. Nov. 20, 2017) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). However, the Fifth Circuit recently held that limiting adverse employment actions to "ultimate employment actions" is not an all-encompassing reading of the statute because it does not account for the language that makes it unlawful for an employer to "'otherwise to discriminate against' an employee 'with respect to [her] terms, conditions, or privileges of employment.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 500–01 (5th Cir. 2023) (quoting 42 U.S.C. § 2000e-2(a)(1)). "[I]t has been clear that a Title VII plaintiff may recover damages even for 'discrimination in the 'terms, conditions, or privileges of employment' that 'did not involve a discharge,' 'loss of pay,' or other 'concrete effect on [his or her] employment status.'" *Id.* at 501 (quoting *Landgraf v. USI Film Prod.*, 511 U.S. 244, 254 (1994)). "Thus, to plead an adverse employment action, a plaintiff need only allege facts plausibly showing discrimination in hiring, firing, compensation, or in the 'terms, conditions, or privileges' of his or her employment. *Id.* at 502–03. To emphasize, in order "to adequately plead an adverse employment action, plaintiffs need only show they were

13

discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the terms, conditions, or privileges of employment." *Smith v. McDonough*, No. 22-cv-01383, 2023 WL 5918322, at *5 (W.D. Tex. Sept. 8, 2023) (quoting *Hamilton*, 79 F.4th at 506) (quotations omitted)).

Still, Wheeler must show that the adverse employment action resulted from the discrimination. *See id.* Here, Amazon has met its initial burden of informing the Court of the basis for the motion and pointing to relevant excerpts in evidence that demonstrate the absence of genuine issues of material fact, namely Wheeler's deposition testimony that being placed on Pivot and being terminated resulted solely from retaliation. (ECF No. 24-1 at 35, 45).

Because Amazon met its initial burden, the burden shifts to Wheeler to produce evidence of a genuine factual dispute. *See Coastal Agric. Supply, Inc.*, 759 F.3d at 505. Wheeler fails to meet this burden. Wheeler claims Defendant's argument that she could not have been discriminated against because she testified she was ultimately terminated due to retaliation, fails, as there is no subjective belief element to a disparate treatment claim. (ECF No. 30 at 29). Wheeler claims even if there was such element, she "testified repeatedly that she believed Defendant discriminated against her on the basis

14

of her race, age, and national origin," and that Amazon failed to directly ask Wheeler whether she felt discrimination played a role in the Pivot or her termination. (*Id.*). Wheeler also argues that a "reasonable juror could easily conclude that Knapp's stereotyping and disparaging comments about Hispanics at large, inform his specific decision-making with respect to [Wheeler], and that Knapp deliberately did not remove [Wheeler] from the email chain to ensure she would be subjected to his remarks." (*Id.* at 31). To support this conclusory statement, Wheeler cites allegedly discriminatory email statements Knapp made about Wheeler's coworker, Visconti. (*Id.*) However, none of the evidence Wheeler cites to negates her testimony that the adverse employment actions resulted from retaliation. Further, "subjective belief that [s]he was the subject of discrimination is insufficient to defeat summary judgment." *Sagaral v. Wal-Mart Stores Tex. LP*, 516 F. Supp. 2d 782, 797 (citing *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (refusing to rely on the plaintiff's subjective belief that his supervisor discriminated against him based on race)).

While Wheeler believes she was discriminated against on the basis of race and national origin, she has failed to produce evidence that she faced adverse employment actions *as a result of* the discrimination. As noted by

Amazon, Wheeler testified that her placement on Pivot[6] and termination[7] resulted *only* from retaliation.  (ECF No. 24-1 at 35, 45).  Thus, there is no genuine issue of material fact as to the third element of Wheeler's race and national origin discrimination claims because she faced adverse employment actions that resulted from retaliation rather than discrimination.  *See e.g., Evans v. City of Houston*, 246 F.3d 344, 351 (5th Cir. 2001) (affirming summary judgment for defendant where only summary judgment evidence advanced by the plaintiff went solely to her claim of retaliation and there was no evidence plaintiff was demoted due to racial or age discrimination).  Accordingly, the court finds Wheeler's race and national origin discrimination claims fail.

Wheeler also fails to satisfy the fourth element of her race and national origin discrimination claims.  Amazon argues Wheeler cannot establish a prima facie case because she cannot establish that she was replaced by a person outside of her protected class or that she was treated less favorably than similarly situated employees outside of her protected class.  (ECF No. 24 at 16 n.5).  Wheeler argues that "[a]lthough [Amazon]'s replacement identifies as

---

[6] "Q. And you believe that the only reason you were put in the Pivot is because of the complaints you made about Mr. Knapp? A. That is correct. Q. The only reason you were put in the Pivot was in retaliation for complaining about Mr. Knapp, correct? A. Yeah."  (ECF No. 24-1 at 45).

[7] "Q. Why do you believe you were terminated? A. I believe it was due to retaliation. Q. Do you believe you were terminated for any reason other than retaliation? A. Absolutely not."  (*Id.* at 35).

16

Hispanic/Latino, this does not change the ultimate question of whether Defendant discriminated against [her] on the basis of her race/national origin" by seemingly arguing that Wheeler was treated less favorably than other similarly situated Caucasian employees.  (ECF No. 30 at 34).  The crux of Wheeler's rebuttal is that "[a] reasonable jury could find that Defendant discriminated against Plaintiff based on her evidence of Knapp's racist and ageist comments, Elkon's endorsement of the same, Knapp's and Elkon's history of mistreatment of other older Hispanic employees and their more favorable treatment of younger Caucasian employees."  (*Id.* at 34).

Because Wheeler concedes her replacement, Laura Wilks, "identifies as Hispanic/Latino," Wheeler cannot establish that she was replaced by someone outside her protected group.  (*Id.*).  Accordingly, the Court turns to whether Wheeler has sufficiently pleaded that she was treated less favorably than other similarly situated employees outside the protected group.

Amazon argues Wheeler cannot establish that she was treated less favorably than other similarly situated employees outside the protected group because she has not identified another similarly situated employee under "nearly identical" circumstances, which requires a similar disciplinary history. (ECF No. 24 at 16 n.5).  Specifically, Amazon claims "Wheeler has not identified any employee outside of her protected class who was placed in Focus

for three consecutive years, received back-to-back Least Effective ratings, failed to accomplish the expectations articulated in the Pivot, and failed her Pivot appeal, yet was not terminated." (*Id.*). Further, Amazon states that Wheeler has also simply failed to identify an employee "whom she contends is a comparator." (*Id.*).

Wheeler claims that "evidence shows Elkon treated [Wheeler] worse than her colleagues outside of her protected class," that Wheeler's "performance was as good, or better than her similarly situation [sic] team members," and that "Elkon's history of mistreatment of other older Hispanic employees and their more favorable treatment of younger Caucasian employees" supports her claim that Wheeler was treated less favorably than similarly situated employees outside of her protected class. (ECF No. 30 at 33–34). Further, Wheeler alleges Amazon's argument that Wheeler "is not similarly situated to her younger Caucasian colleagues" because they did not endure the same disciplinary history fails. (*Id.* at 34 n.14).

A plaintiff must show she was treated less favorably than similarly situated employees outside of her protected class "under nearly identical circumstances." *Belton v. GEO Grp., Inc.*, No. 21-30144, 2021 WL 5832953, at *5 (5th Cir. Dec. 8, 2021). Courts use factors to determine whether employees are similarly situated, including whether they share supervisors, work in the

same division, and have the same work responsibilities.  *Morris v. Town of Indep.*, 827 F.3d 396, 401 (5th Cir. 2016).

Here, Wheeler asserts she was treated less favorably than "her younger Caucasian colleagues."  (*Id.* at 34 n.14).  Wheeler has identified no employees similarly situated but rather compares herself to the younger Caucasian demographic at her workplace.  Because Wheeler does not point to a specific employee, the Court is unable to apply the factors to determine whether Wheeler is similarly situated to any of the "younger Caucasian colleagues."  *See Leashore v. MCI Worldcom,* 211 F. App'x 268, 268 (5th Cir. 2006) (holding that plaintiff failed to identify any similarly situated employees who were treated more favorably by alleging "that MCI unlawfully discriminated against him by terminating him for making mistakes while not terminating similarly situated Caucasian employees who made similar mistakes"); *see also Foster v. Ferrellgas, Inc.*, 834 F. App'x 88, 91 (5th Cir. 2020) ("Although Foster shared a job title and a supervisor with the white employees she identified as being in similarly situated positions, she provided virtually no evidence concerning their relevant qualifications, nor did she establish that they performed comparable work.").  Wheeler does not offer *any* evidence that a similarly situated employee outside of her protected class was treated more favorably.  Rather, she simply offers evidence of Knapp and Elkon exuding allegedly

19

discriminatory behavior to other employees within her protected class, such as an email Knapp sent regarding Visconti.

Wheeler fails to allege that either (1) she was replaced by someone outside her protected group, or that (2) she was treated less favorably than other similarly situated employees outside the protected group. As such, Wheeler's race and national origin discrimination claims fail under the third and fourth elements and the Court recommends Amazon's Motion for Summary Judgment be granted with respect to Wheeler's race and national origin discrimination claims.

### 2.   Legitimate, Non-Discriminatory Basis

Amazon argues that even if Wheeler could establish a prima facie case, it is nevertheless entitled to summary judgment on her race and national origin discrimination claims because it has articulated a legitimate, nondiscriminatory reason for her termination, namely, "her poor job performance." (ECF No. 24 at 17).

"The Fifth Circuit has recognized poor job performance as a legitimate, non-discriminatory reason for termination of employment." *Singleton v. Young Men's Christian Ass'n (YMCA) of Greater Houston*, No. 17-cv-2903, 2019 WL 2617097, at *6 (S.D. Tex. June 26, 2019), *aff'd sub nom. Singleton v. Young Men's Christian Ass'n of Greater Houston*, 788 F. App'x 292 (5th Cir. 2019)

20

(citing *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (recognizing as legitimate, non-discriminatory reasons for termination evidence demonstrating poor job performance, difficulties working with others, and inadequate leadership skills)). "Poor work performance can be a legitimate, non-discriminatory explanation when coupled with specific examples." *Green v. Tri-Con, Inc.*, No. 1:21-cv-00481, 2023 WL 9185691, at *5 (E.D. Tex. Oct. 17, 2023), *report and recommendation adopted*, No. 1:21-cv-00481, 2024 WL 95350 (E.D. Tex. Jan. 9, 2024); *see Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231 (5th Cir. 2015) (holding that poor work performance was a legitimate, non-discriminatory reason for employee's termination where employee received numerous poor performance reviews); *see also Feist v. La., Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 455 (5th Cir. 2013) (holding that employer's proffered reason of substandard work was a legitimate, non-discriminatory reason because employer provided specific examples of such work).

In summary, the evidence that Amazon sets forth to show Wheeler's alleged poor job performance over a three-year period (2018–2020), includes "that she was placed in Focus on three occasions, received Least Effective ratings in 2019 and 2020, and was put in Pivot, which her manager[, Elkon,] determined that she failed." (ECF No. 32 at 16). Performance deficiencies

were identified by Amazon, such as "low activity, reliance on a sourcer to fill her own funnel, and generally not being where she needs to be in the sourced pipeline despite the two-month ramp up period on the team." (*Id.* at 17–18). Eyeington also noted performance deficiencies where "Wheeler "need[ed] to improve her communication" and "collaborate with the sourcers proactively to create a plan of action." (*Id.* at 18). Further, Amazon asserts "Elkon reasonably believed that Wheeler underperformed and terminated Wheeler based on that belief." (*Id.* at 17).

"Courts do not assess an employer's credibility or the truthfulness of its reason at this stage of the *McDonell Douglas* inquiry, as the employer's burden is one of production, not persuasion."[8] *Green*, 2023 WL 9185691, at *6. Here, Amazon has produced specific examples of Wheeler's poor work performance. Thus, Amazon has met its burden of production by articulating a legitimate, non-discriminatory reason for terminating Wheeler's employment, and the burden shifts back to Wheeler to show pretext.

### 3.   Pretext

Because Amazon has proffered legitimate, non-discriminatory reasons for Wheeler's adverse employment actions, Wheeler must produce "substantial

---

[8] Because Amazon's burden is of production and not persuasion, the Court will not address Wheeler's claims of inconsistencies and misleading evidence on behalf of Amazon at this step. (*See* ECF No. 30 at 21–25).

evidence" showing that Amazon's reason is a pretext for discrimination. *See id.* "'Evidence is substantial if it is of such quality and weight that reasonable and fair-minded [triers of fact] in the exercise of impartial judgment might reach different conclusions.'" *Id.* (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir. 2003)). "'The plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision.'" *Id.* (quoting *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456–57 (5th Cir. 2019)). "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jones v. Wells Fargo Bank, N.A.*, No. 17-cv-8712, 2019 WL 4601602, at *6 (E.D. La. Sept. 23, 2019) (quoting *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015) (quotations omitted)).

First, Wheeler disputes the accuracy of Amazon's description of her alleged poor performance and alleges that Amazon "attempts to distract and mislead." (ECF No. 30 at 21–25). However, this argument is unavailing. *See Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 647 (E.D. Tex. 2007), *aff'd*, 273 F. App'x 391 (5th Cir. 2008) ("[A]n employee cannot survive summary judgment merely because she disagrees with the employer's assessment of her performance; the issue is whether the employer's perception of her

23

performance, accurate or not, was the real reason for her termination."); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[The summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." (emphasis in original)).

Next, Wheeler claims there is pretext evidence that raises a conflict of material fact because (1) Amazon deviated from its normal policies, (2) Amazon took actions to ensure Wheeler could not pass Pivot, (3) there are inconsistent, false, or shifting explanations regarding Wheeler's work performance, (4) suspicious statements bear directly on Amazon's retaliatory intent, (5) there was a prolonged a campaign of day-to-day mistreatment, and (6) temporal proximity. (ECF No. 30 at 25–28).

### a.    Derivation From Normal Policies

"A plaintiff can [] show pretext by showing a departure from standard procedure.  But mere deviations from policy, or a disagreement about how to apply company policy, do not show pretext." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 459 (5th Cir. 2019).  "Plaintiffs [] must connect a departure from or misapplication of procedure to a discriminatory motive—an employer's 'disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a

24

nondiscriminatory explanation for an action is pretextual.'" *Id.* at 460 (quoting *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989)).

Here, Wheeler argues Amazon deviated from the policy on three occasions. (ECF No. 30 at 25–26). First, Wheeler claims Amazon gave her four days to complete Focus, while an employee is typically allotted thirty to sixty days to complete it. (*Id.* at 25). Second, she states Amazon gave her thirty days to complete Pivot, while an employee is typically allotted forty-five to sixty days to complete it. (*Id.*). Third, she alleges Amazon allowed Elkon to evaluate her 2020 performance "just months" into the year, while yearly evaluations typically occur at the end of the year. (*Id.* at 25–26).

While Wheeler points to deviations from standard policy, she fails to connect these departures from or misapplications of procedure to a discriminatory motive. (*See id.*). By failing to connect deviations from policy to the alleged discriminatory statements, Wheeler fails to establish a pretext by means of showing a departure from standard procedure. *See McMichael*, 934 F.3d at 460 ("[A]n employer's disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual." (quotations omitted)).

### b.      Failure of Pivot

To support Wheeler's argument that Amazon took actions to ensure she could not pass Pivot, she cites a June 23, 2020, email from Elkon to Knapp, Miles, and McFarland, in which Elkon states:

> Based on our conversation yesterday and after connecting with the C.A., I updated the content to align more closely with the details/measurements of expectation #1. While Melissa did meet the measurements, there were intrinsic errors in the offer process itself. We called this out and as a result, still deem her performance as unsuccessful in this area. James and I are scheduled to connect with Melissa tomorrow afternoon to share the Pivot outcome. We will keep you posted after our meeting and will document the conversation in the Pivot tool.

(ECF No. 30-10 at 1–2).  Wheeler argues the email is an "egregious example of dishonesty" because "Elkon explained that the group changed the expectation, so that it would look like [Wheeler] failed instead."  (ECF No. 30 at 26). However, the email states a reason for deeming her performance unsuccessful: "there were intrinsic errors in the offer process itself."  (ECF No. 30-10 at 1–2).  Even so, the issue again is that Wheeler does not connect this action to a discriminatory motive or discriminatory animus.  *See Smith v. Hewlett-Packard Co.*, 512 F. Supp. 2d 587, 595 (N.D. Tex. 2007) ("An employer is entitled to be unreasonable so long as it does not act with discriminatory animus." (quotations omitted)).  As such, Wheeler fails to establish a pretext by means of showing Amazon took actions to ensure she could not pass Pivot.

26

### c.   Inconsistent, False, or Shifting Explanations

Wheeler points to four occasions where she claims Amazon made false or misleading assertions, including alleging: (1) "Eyeington gave [Wheeler] a least effective rating in 2019 when it was actually Elkon"; (2) "Elkon met with [Wheeler] weekly during her Focus when the Focus only lasted four days"; (3) "[Wheeler] failed the Pivot when Elkon admitted [Wheeler] met Expectation 1, but Elkon altered the expectations after the evaluation period was over"; and (4) "[Wheeler] had a history of negative performance, in part due to her 2018 Focus, which actually had nothing to do with [Wheeler]'s performance."   (ECF No. 30 at 26–27).

"Pretext may be shown by any evidence which demonstrate's [sic] the employer's proffered reason is false." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 n.11 (5th Cir. 2007).  "An employer's explanation is false or unworthy of credence if it is not the real reason for the employment action."  *Id.* at 412.

> The *Reeves* Court went on to state that there may be rare instances in which a showing of pretext is insufficient to sustain a jury's finding on discrimination, such as when: (1) the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there is abundant uncontroverted evidence that no discrimination occurred.

*Id.* at 415–16 ("Dr. Pepper offers no other nondiscriminatory reason for the employment decision nor does the record present uncontroverted evidence that

27

no discrimination occurred. Accordingly, on this record, a jury could conclude that Dr. Pepper's proffered reason for failing to promote Burrell is false and that intentional discrimination was the real motive.").

Here, unlike *Burrell*, there is evidence in the record that Wheeler performed deficiently on multiple occasions.  Although Wheeler points to evidence that "Eyeington gave [Wheeler] a least effective rating in 2019 when it was actually Elkon," this does not change the fact that Wheeler received a least effective rating, regardless of whether Eyeington or Elkon issued the rating.  *See Anderson*, 477 U.S. at 247–48 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.").

Second, Wheeler's claim that Amazon falsely asserted that Elkon met with [Wheeler] weekly during her Focus when the Focus only lasted four days is not enough to establish pretext.   However, Amazon cites deposition testimony where Elkon was asked "[o]nce you put Ms. Wheeler into a focus, what support, as a manager, did you provide to her to help her get out of that focus?" and Elkon replied "[w]e met weekly to discuss the areas that were outlined as needing improvement."  (ECF No. 24-2 at 30).  Further, Elkon testified that she met with her once a week for at least four weeks.  (*Id.*).  As

28

such, Amazon is not making false statements or misleading the Court because it has attached exhibits supporting their assertions.

Third, Wheeler alleges Amazon makes misleading assertions in claiming "[she] failed the Pivot when Elkon admitted [Wheeler] met Expectation 1, but Elkon altered the expectations after the evaluation period was over." (ECF No. 30 at 26–27). However, the Court has already addressed this issue and Wheeler's argument fails for two reasons: (1) Elkon states a reason for deeming her performance unsuccessful: "there were intrinsic errors in the offer process itself"; and (2) Wheeler does not connect this action to discriminatory motive or discriminatory animus. (ECF No. 30-10 at 1–2).

Fourth, Wheeler argues Amazon incorrectly alleges that "[Wheeler] had a history of negative performance, in part due to her 2018 Focus, which actually had nothing to do with [Wheeler]'s performance." (ECF No. 30 at 26–27). However, Amazon supports its stance that Wheeler has a history of negative performance, which can be shown in part by being placed in Focus in 2018, by alleging:

> In Wheeler's 2018 Focus, however, Serrato identifies a number of performance issues, none of which related to Wheeler's transfer to [Crystal] Serrato's team – including, low activity, reliance on a sourcer to fill her own funnel, and generally not being where she needs to be in the sourced pipeline despite the two-month ramp up period on the team. Further, [Crystal] Serrato only removed Wheeler from Focus after "ongoing coaching ha[d] shown improved

> results," demonstrating that there were performance issues which
> led [Crystal] Serrato to place Wheeler in Focus in the first place.

(ECF No. 32 at 17–18).  To be clear, the evidence shows that Cystal Serrato

("Serrato"), team leader, wrote a progress update on June 8, 2018, in which she

expressed concerns about Wheeler's low activity and reliance on a sourcer.

(ECF No. 24-5 at 3).  However, Serrato submitted an additional progress

update on July 2, 2018, in which Serrato stated that Wheeler is "now fully

productive" and "continues to improve." (*Id.*).  The issue here is that Wheeler

seems to only rely upon the July 2, 2018, progress note, without acknowledging

the June 8, 2018, progress note where Serrato expressed concerns with

Wheeler's job performance.  As such, Wheeler's claim that Amazon made "false

or misleading" assertions regarding her "history of negative performance, in

part due to her 2018 Focus" is not accurate.  (ECF No. 30 at 26–27).  The

evidence shows there was a negative progress note regarding Wheeler during

her completion of the 2018 Focus, and thus, Amazon did not mislead or make

a false allegation.  (ECF No. 24-5 at 3).

   As such, Wheeler fails to establish a pretext by means of showing

Amazon made inconsistent, false, or shifting explanations.  *See Jones*, 2019

WL 4601602, at *6 ("To prove pretext, the plaintiff must demonstrate '*both*

that the reason was false, *and* that discrimination was the real reason.'"

(citation omitted)).

### d. Suspicious Statements of Retaliatory Intent

First, Wheeler asserts that "[a]ny evidence that tends to show a 'retaliate[ory] [sic] motive more likely motivated [an] employer's decision' is probative of pretext." (ECF No. 30 at 25) (quoting *Berry v. Par.*, 834 F. App'x 843, 848 (5th Cir. 2020)). However, Wheeler fails to accurately quote the law from *Berry*, which states that a "plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Berry*, 834 F. App'x at 848 (quoting *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)). The motive in question is discriminatory motive, not retaliatory motive. *See id.*

Second, Wheeler alleges that "retaliatory intent can also be inferred from its decision not to put any safeguards in place to ensure [Wheeler] would be protected from retaliation." (ECF No. 30 at 27). However, Wheeler fails to provide authority stating retaliatory intent can establish pretext for a discrimination claim. At this juncture, the Court is addressing Wheeler's race and national origin discrimination claim, in which Wheeler must show discriminatory motive, not retaliatory motive. As such, Wheeler fails to

establish a pretext by means of showing Amazon made suspicious statements of retaliatory intent.

> ### e.  Prolonged Campaign of Day-to-Day Mistreatment

Wheeler argues the "adverse actions [she] experienced cannot be divorced from the evidence that shows that Elkon and Knapp were systemically treating Plaintiff worse than they treated their other subordinates who did not report discrimination."  (ECF No. 30 at 28). Specifically, Wheeler alleges "Elkon was rude, dismissive, and curt with [Wheeler].  She excessively scrutinized her work, often trying to hold her accountable for items over which [Wheeler] had no control or authority.  Elkon would cut [Wheeler] short during group meetings and made efforts to ostracize her among the team." (*Id.*).  Further, she states that "Knapp was rude to [her] and often cut [her] off during meetings." (*Id.*).

Wheeler fails to show this day-to-day mistreatment was a pretext for discrimination.  For example, Wheeler complains Knapp was rude to her and cut her off during meetings.  (*Id.*).  However, when reviewing the deposition Wheeler uses to support this notion, after Wheeler testifies that Knapp was dismissive, she states he also interrupted other women, both Caucasian and Hispanic women.  (ECF No. 30-2 at 40).  Additionally, the deposition Wheeler uses to support her allegation that Elkon mistreated her is based on her belief

that Wheeler "felt like it was" discrimination based on race and national origin and that "it's hard for me (Wheeler) to say these things. I don't know. That's just how I feel." (*Id.* at 41).

Here, Wheeler claims Knapp was dismissive of all women regardless of race or national origin. (*Id.* at 40). Further, her allegation that Elkon mistreated her based on race and national origin is not supported by any evidence other than her subjective belief. (*Id.* at 41). As such, Wheeler fails to establish a pretext by means of showing Amazon engaged in a prolonged campaign of day-to-day mistreatment. *See Jones*, 2019 WL 4601602, at *9 ("She likewise fails to identify evidence indicating that discrimination was the real reason her employment was terminated" and "[s]he fails to identify evidence in the record indicating that Wells Fargo's proffered non-discriminatory explanation is false."); *see also Tapley v. Simplifile, LC*, No. 3:19-cv-00227, 2021 WL 364054, at *6 (N.D. Tex. Feb. 3, 2021) ("Tapley's personal, subjective belief that he suffered discrimination simply is not sufficient to raise a reasonable inference of pretext.")

### f.   **Temporal Proximity**

Wheeler acknowledges that "[w]hile temporal proximity alone is not enough to prove a pretext, it is a relevant pretext consideration." (ECF No. 30 at 28). Because temporal proximity alone is not enough to establish pretext

and Wheeler has failed to establish another means for pretext, the Court need not address temporal proximity.

In sum, Wheeler's race and national origin discrimination claims fail for a multitude of reasons.  Wheeler fails to establish a prima facie case, Amazon has provided legitimate, nondiscriminatory reasons for the adverse employment actions, and Wheeler fails to establish a pretext.[9]  As such the Court recommends Amazon's Motion for Summary Judgment be granted with respect to Wheeler's race and national origin discrimination claims.

## B.   Age Discrimination in Violation of the ADEA and TCHRA

Amazon argues Wheeler's claim for age discrimination fails as (1) Wheeler cannot advance a prima facie case of discrimination because she admits she was not terminated as a result of discrimination, and (2) her documented underperformance over a three-year period constitutes a legitimate, non-discriminatory basis for the adverse employment actions. (ECF No. 24 at 21).  Wheeler's age discrimination claim is based on her

---

[9] Here, Wheeler fails to establish pretext and the Court notes that the comments at issue fall within the parameters of stray remarks and provide no evidence of discrimination. *See Lassetter v. Strategic Materials, Inc.*, 192 F. Supp. 2d 698, 705 (N.D. Tex. 2002), *aff'd*, 72 F. App'x 106 (5th Cir. 2003).  "In a decision that binds us, this court already has interpreted *Reeves* not to overrule our stray remarks jurisprudence, at least where the plaintiff has failed to produce substantial evidence of pretext." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 405 (5th Cir. 2001); *see Rubinstein v. Adm'rs of Tulane Ed. Fund*, 218 F.3d 392, 400–01 (5th Cir. 2000) (applying the stray remarks doctrine where the plaintiff had failed to establish that each of the defendant's articulated justifications was pretext).

classification as a forty-seven-year-old woman at the time of her termination, which falls under the protected class of over the age of forty.  (ECF No. 1 at ¶ 39).  Wheeler alleges the discriminatory statement occurred when "Mr. Knapp sent an internal team messaging board communication called a 'chime communication' to a number of other employees stating that 'all older people are stubborn because they just don't get COVID.'"  (*Id.* at ¶ 17).  To add context, Knapp stated, "[m]y ageing dad is still a practicing physician and my sisters and I are doing everything in our powers to discourage him from continuing to go to hospitals right now and see less critical patients in his offices. They are a stubborn generation."  (ECF No. 24-12 at 2).  Also, in a deposition, Wheeler testified that Knapp sent a Chime stating "Gina, today is your 30th birthday." (ECF No. 24-1 at 37).

### 1.    Prima Facie Case of Discrimination

"The ADEA and the TCHRA both prohibit an employer from discharging an employee on account of that employee's age."[10]  *Goudeau v. Nat'l Oilwell Varco*, LP, 793 F.3d 470, 474 (5th Cir. 2015).  To establish a prima facie case

---

[10] "The analytical framework for [Wheeler's] ADEA claim applies equally to h[er] TCHRA claim, except when otherwise noted." *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex.1999) ("The [TCHRA] purports to correlate state law with federal law in the area of discrimination in employment . . . Thus, in light of the Legislature's express purpose, we look to analogous federal precedent for guidance when interpreting the Texas Act." (citations and quotation marks omitted)).  "Texas courts apply the familiar *McDonnell Douglas* burden-shifting framework to age-discrimination claims under the TCHRA." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012).

of age discrimination under the ADEA, a plaintiff must show that: "(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was within the protected class at the time of discharge; and (4) [s]he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of h[er] age." *Abila v. Amec Foster Wheeler USA Corp.*, 216 F. Supp. 3d 778, 784 (S.D. Tex. 2016) (quoting *Goudeau*, 793 F.3d at 474 (quotations omitted)).

Here, Wheeler does not allege she was replaced by someone outside of the protected class or by someone younger. Thus, Wheeler must allege she was discharged because of her age. *See id.* Amazon argues Wheeler has not met her burden in establishing a prima facie case for age discrimination because she "admits that she was not terminated due to any alleged discrimination." (ECF No. 24 at 21). The Court has already determined that, while Wheeler believes she was discriminated against based on her age, she has failed to produce evidence that she was terminated as a result of the discrimination. As noted by Amazon, Wheeler testified that her termination resulted only from retaliation. (ECF No. 24-1 at 35, 45). As such, the Court agrees with Amazon that Wheeler has failed to establish a prima facie case because she has not shown she was terminated because of her age.

36

### 2.    Legitimate, Non-Discriminatory Basis

Amazon argues that even if Wheeler could establish a prima facie case, it is nevertheless entitled to summary judgment on her age discrimination claim because it has articulated a legitimate, nondiscriminatory reason for her termination, namely, "three years of chronically deficient performance." (ECF No. 24 at 21).

As already stated, "[t]he Fifth Circuit has recognized poor job performance as a legitimate, non-discriminatory reason for termination of employment." *Singleton*, 2019 WL 2617097, at *6.  The Court previously determined that Amazon provided a legitimate, nondiscriminatory reason to terminate Wheeler and because the analysis regarding a legitimate, nondiscriminatory reason under the race and national origin discrimination claims also applies here, the Court will avoid a repetitious analysis.

### 3.    Pretext

Because Amazon has proffered legitimate, non-discriminatory reasons for Wheeler's termination, Wheeler must produce "substantial evidence" showing that Amazon's reason is a pretext for discrimination.  Wheeler utilizes the same argument for her race and national origin discrimination claim with respect to pretext as she does for her age discrimination claim.  Thus, the Court's analysis regarding pretext for the race and national origin

discrimination claims also applies here and the Court finds Wheeler fails to establish pretext under her age discrimination claim.

In sum, Wheeler's age discrimination claims fail for a multitude of reasons. Wheeler fails to establish a prima facie case, Amazon has provided legitimate, nondiscriminatory reasons for the termination, and Wheeler fails to establish a pretext. As such the Court recommends Amazon's Motion for Summary Judgment be granted with respect to Wheeler's age discrimination claim.

## C.    Retaliation

Amazon claims that Wheeler cannot prevail on her retaliation claims because Elkon, as the sole decisionmaker, had no knowledge of Wheeler's complaints to Human Resources until after she placed Wheeler in Pivot and after she was ultimately terminated. (ECF No. 24 at 24). Additionally, Amazon argues that a consideration of "(1) the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal proximity between the employee's conduct and termination" militates in favor of dismissing the retaliation claim. (*Id.* at 24–25). The protected activity here occurred on March 20, 2020, and March 23, 2020, where Wheeler complained of alleged

discriminatory statements to Human Resources.  (ECF No. 24 at 11–13; ECF No. 30 at 10).

"To establish a prima facie retaliation case, a plaintiff must show that '(1) he engaged in protected activity; (2) he suffered an adverse employment decision; and (3) a causal link exists between the protected activity and the adverse employment decision.'" *Goudeau*, 793 F.3d at 478 (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

### 1.    Sole Decisionmaker's Knowledge

"Establishing a causal connection in the employment context 'requires some showing that the decisionmaker—the individual who actually made the decision or caused the decision to be made—was aware of the activity.'" *Robertson v. Acad. Ltd.*, No. 18-cv-2323, 2020 WL 880873, at *4 (S.D. Tex. Feb. 21, 2020) (quoting *E.E.O.C. v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017)). "We have determined that, in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003); *see Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action,

the employer plainly could not have retaliated against the employee based on that conduct.").

Here, Amazon claims Elkon is the sole decisionmaker and that she had no knowledge of Wheeler's complaints to Human Resources until after Wheeler was placed in Pivot and ultimately terminated.  (ECF No. 24 at 24).  Further, Amazon claims Wheeler's allegation that Elkon had an issue with her and subsequently put her on Pivot is "incorrect because Elkon confirmed the Pivot decision on March 9, 2020, and completed the Pivot Entry Form by March 19, 2020 – all before Wheeler contacted human resources on March 20, 2020." (*Id.*).  To counter, Wheeler argues that Elkon is not the sole decisionmaker, Elkon was aware of the protected activity before the adverse actions occurred, and other evidence demonstrates a causal connection.  (ECF No. 30 at 16–20).

The Court will first lay out a timeline of the events that transpired.  On March 6, 2020, Elkon emailed Haissel McFarland ("McFarland"), a Human Resources member, to confirm her decision to place Wheeler in Pivot.  (ECF No. 24 at 11; ECF No. 30 at 10).  On March 19, 2020, Elkon sent Human Resources a completed draft of the Pivot Entry Form.  (ECF No. 24 at 11; ECF No. 30 at 10).  On March 20, 2020, Wheeler engaged in her first protected activity when she forwarded Knapp's emails regarding race and national origin discrimination to MacDonald to discuss.  (ECF No. 24 at 11).  On March 23,

2020, Wheeler engaged in her second protected activity where she sent a screenshot of Knapp's Chime message regarding his father's generation being stubborn. (*Id.*). Wheeler was subsequently terminated on July 14, 2020. (ECF No. 1 at ¶ 38).

Next, the Court will address whether Elkon had knowledge of the protected activity. Viewing the evidence in a light most favorable to Wheeler, the Court finds there is evidence to support Wheeler's argument that Elkon had knowledge of the protected activity before Wheeler was terminated, but not before she decided to place Wheeler on Pivot. For instance, Wheeler points to an April 8, 2020, email from Kladnik to Knapp where he stated "Amazon expects that anyone who participates in an investigation will not engage in any retaliatory behavior – this applies to and has been discussed with all the parties in the investigation." (ECF No. 30-18 at 1). Wheeler also offers evidence that Elkon was listed as "Involved Parties #1" in the investigation. (ECF No. 30-28 at 2). Further, Wheeler cites to her declaration where she declares on "April 13, 2020, Patricia Elkon and I met for our scheduled compensation call . . . [and] I complained to Patrica Elkon that I believe her critical view of my performance was retaliation for reporting Kevin Knapp's comments." (ECF No. 30-42 at 2). Although Amazon offers evidence where Elkon testified that Knapp informed her that a complaint was issued against

him, Elkon claims she did not know what transpired or what the outcome was regarding the complaint until after Wheeler left Amazon.  (ECF No. 24-2 at 42).  Also, Amazon points to Elkon's declaration where she states "[a]t no point prior to the termination of [] Wheeler's employment with [Amazon] was I aware of any complaint of discrimination or retaliation made by Wheeler to Human Resources or Employee Relations."  (ECF No. 24-8 at 4).  Thus, Wheeler has provided at least some evidence Elkon had knowledge.  *See Baldwin v. Holder*, No. CIV.A. H-09-842, 2011 WL 2078614, at *7 (S.D. Tex. May 26, 2011) ("Although the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must produce at least some evidence that the decisionmakers had knowledge of [her] protected activity." (citation omitted)).  This evidence is sufficient to create a question of fact as to whether Elkon had knowledge of Wheeler's protected activity before her termination.

Conversely, with respect to Pivot, Elkon discussed placing Wheeler on Pivot on March 6, 2020, and sent a Pivot Entry Form to Human Resources on March 19, 2020.  (ECF No. 24 at 11; ECF No. 30 at 10).  However, Wheeler did not engage in protected activity until March 20, 2020 and March 23, 2020, which occurred after Elkon decided to place Wheeler on Pivot.  (ECF No. 24 at 11; ECF No. 30 at 10).  Thus, there is no question of fact that Elkon decided to

place Wheeler on Pivot before Wheeler engaged in protected activity and, thus, did not have knowledge of her protected activity at that time.

## 2.    Employee's Past Disciplinary Record

Amazon argues it "began performance managing Wheeler well before she reported Knapp to human resources on March 20, 2023." (ECF No. 24 at 25). For instance, Wheeler "was placed in Focus as early as 2018 and assigned Least Effective ratings starting in 2019 and again in 2020." (*Id.*). Amazon argues that because Wheeler's performance issues predate her adverse employment action, this Court should refuse to find a casual link. (*Id.*). Conversely, Wheeler relies heavily upon evidence where she performed well and received accolades from peers and supervisors to discredit the disciplinary actions. (ECF No. 30 at 20). However, Wheeler has not provided any authority that receiving accolades and positive comments during employment negates disciplinary actions leading up to a termination. The record shows Wheeler had numerous disciplinary actions against her in the two years preceding her termination. As such, this factor does not support the casual link element. *See Harris v. Fort Bend ISD*, No. 4:09-cv-2984, 2011 WL 1100235, at *11 (S.D. Tex. Mar. 22, 2011) ("The record evidence shows that Harris had a number of justified reprimands before the termination decision.")

43

### 3.     Policy and Procedures in Termination

Amazon also argues that it complied with its policy and procedures, where "internal policies and procedures call for performance managing an underperforming employee through Focus before placing the employee in Pivot, and the Pivot Entry Form provides that, "[i]f your appeal is unsuccessful, your employment will end[.]"  (ECF No. 24 at 25) (quoting ECF No. 24-17).  To illustrate, Amazon alleges:

> Wheeler was performance managed in Focus (no less than three times over a three-year period) before Elkon determined to place her in Pivot; while in Pivot, she was provided four weeks to satisfy the three performance expectations enumerated in her Pivot Entry Form; she was permitted to appeal the Pivot decision; and when the appeals panel upheld the decision, [Amazon] terminated Wheeler's employment.

(*Id*.).

Wheeler disagrees and claims Amazon did not follow its typical policy and procedures because Amazon "failed to adhere to company policies when it ignored [Wheeler]'s supervisor's recommendation to rate [Wheeler] as 'HV' for 2019," "conducted a 2020 rating just months into the year," "only allowed [Wheeler] four (4) days in Focus when thirty to sixty (30-60) days is the standard," and "only allowed Plaintiff (30) days in Pivot when forty-five to sixty (45-60) days is the standard."  (ECF No. 30 at 20–21).

Although Wheeler argues Amazon failed to adhere to company policies when it ignored her supervisor's recommendation to rate her as "HV," Wheeler

fails to cite company policy requiring Amazon to adopt the supervisor's recommendation. (*Id.*) (citing ECF No. 30-27 at 1–2). Further, Wheeler fails to cite company policy that states a yearly rating must only be conducted at the end of the year. (*Id.* at 21) (citing ECF No. 30-34 at 1). Also, Wheeler's argument that she was only placed in Focus for four days, which was not standard, is not supported by a specific policy. Rather, Wheeler cites to deposition testimony of Elkon where she states "typically, [Focus is] anywhere from thirty to sixty days" but that it "depend[s] on what the improvement components are and . . . what a reasonable time frame is to expect that improvement." (ECF No. 30-4 at 23). This evidence does not show that there is a specific written rule requiring an employee be placed in Focus from thirty to sixty days, but rather, the Focus timeframe depends on improvement components. (*Id.*). Finally, Wheeler fails to cite a specific written policy showing an employee must be given forty-five to sixty days to complete Pivot. The only evidence Wheeler cites to is a deposition where Elkon testified that, in her experience, the Pivot timeline is forty-five to sixty days, but that she could not recall the specific timeline here. (*Id.* at 30). Even so, a slight deviation from practice is not enough to establish a casual link where the standard policy was followed, namely, placing Wheeler in Focus, then placing Wheeler in Pivot, allowing Wheeler to appeal the Pivot decision, and allowing

45

Case 4:22-cv-00370   Document 36   Filed on 07/12/24 in TXSD   Page 46 of 48

Wheeler to be heard by an appeals panel. *See Monroe v. Corpus Christi Indep. Sch. Dist.*, No. 05-cv-412, 2006 WL 2092436, at *13 (S.D. Tex. July 26, 2006), *aff'd*, 234 F. App'x 213 (5th Cir. 2007).

Wheeler fails to provide evidence of a written policy supporting her allegations that Amazon deviated from standard policy and procedures, but rather that it was mere deviation from practice. *See Darden v. Simplicity Fin. Mktg., Inc.*, No. 4:18-cv-1737, 2019 WL 6119485, at *6 (S.D. Tex. Nov. 18, 2019) ("Plaintiff has failed to identify a specific policy or procedure Defendant violated by demoting her without first offering a written warning and performance improvement plan. There is no evidence that Defendant had a written policy requiring warnings and performance plans prior to demotion, or that doing so was Defendant's usual practice."); *see also Monroe,* 2006 WL 2092436, at *13 ("[E]vidence concerning defendant's slight deviation in its practice to interview candidates in descending order based on candidate's paper screening score does not provide a sufficient basis to show a link between her complaint and defendant's denial to interview [and] though defendant routinely followed the practice of interviewing in descending order, deviations of this practice (not policy) is not indicative of the retaliation that plaintiff alleges."). As such, this factor does not support the casual link element.

4.      **Temporal Proximity**

Amazon cites case law that a three-month gap between engaging in a protected activity and termination is alone insufficient to show causation. (ECF No. 32 at 15); *see Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). Here, there was a four-month period between Wheeler's engagement in a protected activity and her termination. As the Supreme Court of the United States has held, a period as small as three months is not—by itself—enough to prove the casual link. *See Clark Cty. Sch. Dist.*, 532 U.S. at 273–74. As such, Wheeler fails to provide facts establishing a casual link, as temporal proximity alone is insufficient. The Court also notes "'[t]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case.'" *Baldwin*, 2011 WL 2078614, at *7 (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 n.3 (5th Cir. 1997)).

Accordingly, Wheeler's retaliation claim fails, and the Court recommends Amazon's Motion for Summary Judgment be granted with respect to Wheeler's retaliation claim.

## IV.  Conclusion

Based on the foregoing, the Court **RECOMMENDS** Amazon's Motion for Summary Judgment (ECF No. 24) be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

**SIGNED** in Houston, Texas on July 12, 2024.


Richard W. Bennett
United States Magistrate Judge

48