**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **MELISSA WHEELER**, | |
| Plaintiff, | |
| | **Civ. Action No. 4:22-cv-00370** |
| v. | |
| | Judge Andrew Hanen |
| **AMAZON WEB SERVICES, INC**., | |
| Defendant. | |

**PLAINTIFF'S OBJECTIONS**
**TO THE MAGISTRATE'S MEMORANDUM AND RECOMMENDATION (DKT. 36)**

*On the brief*:

Lisa Ventress
Federal Bar No. 3471199
Texas SBN 24076751
1322 Space Park Dr. Ste C222
Houston, TX 77058
Telephone: (832) 240-4365
Facsimile: (832) 565-1752
Email:lisa@theventressfirm.com

**ATTORNEY FOR PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF PROCEEDING ................................................................. 1

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ........................ 1

SUMMARY OF THE ARGUMENT ......................................................................... 1

LEGAL STANDARD ............................................................................................... 2

ARGUMENT ........................................................................................................... 2

    I.   RETALIATION ............................................................................................. 2

        A.   The M&R Erred in Finding Wheeler Did Not Establish Causal Connection ........... 2

        B.   The M&R Erred When it Found that Wheeler Did Not Meet Her Burden Under *McDonnell Douglas* ....................................................................... 6

            1.   Falsity of Amazon's Explanation ........................................... 7

            2.   Deviations from Policy .......................................................... 11

                i.   Deviations from Policy Related to Annual Evaluations .......................... 12

                ii.  Length of Focus ................................................. 13

                iii. Length of Pivot .................................................. 14

            3.   Actions Designed to Ensure Wheeler Did Not Pass Pivot ........... 15

            4.   Suspicious Conduct Probative of Retaliatory Intent ...................... 15

            5.   Campaign of Mistreatment ..................................................... 16

            6.   Temporal Proximity ............................................................... 17

         C.   Wheeler Establishes "But For" Causation ..................................... 18

    II.  DISPARATE TREATMENT ......................................................................... 20

CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. University of Hawaii*,
  594 F.2d 202 (1979)........................................................................................... 5

*Aka v. Washington Hospital Center*,
  156 F.3d 1284 (D.C. Cir. 1998)...................................................................... 18

*Anderson v. Liberty Lobby, Inc*.,
  477 U.S. 242 (1986).......................................................................................... 2

*Bostock v. Clayton County*,
  140 S. Ct. 1731 (2020).................................................................................... 20

*Brown v. WalMart Stores East, L.P.*,
  969 F.3d 571 (5th Cir. 2020) ........................................................................... 6

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*,
  482 F.3d 408 (5th Cir. 2007) ......................................................................... 18

*Burton v. Freescale Semiconductor, Inc*.,
  798 F.3d 222 (5th Cir. 2015) ......................................................................... 17

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................... 2

*Clark County Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001).......................................................................................... 4

*Crawford v. Metro. Gov't of Nashville*,
  555 U.S. 271 (2009).......................................................................................... 4

*Cruz v. St. John's Sch.*,
  Civil Action 4:19-CV-04590 (S.D. Tex. Nov. 10, 2021) ................................ 16, 19

*Davis v. Indep. Contract Drilling*, Inc.,
  CIVIL ACTION NO. 4:16-CV-00252 (S.D. Tex. Mar. 14, 2019)......................... 17

*Delaware State College v. Ricks*,
  449 U.S. 250 (1980).......................................................................................... 5

*Dunning v. National Industries, Inc*.,
  720 F.Supp. 924 (M.D. Ala. 1989) ................................................................ 11

*EEOC v. LHC Group, Inc.*,
  773 F.3d 688 (5th Cir. 2014) ......................................................................... 18

*Evans v. City of Hous.*,
  246 F.3d 344 (5th Cir. 2001) ........................................................................... 6

*Fisher v. Vassar College*,
  114 F.3d 1332 (2d Cir. 1995) ........................................................................ 18

*Garcia v. Prof'l Contract Servs*.,
  938 F.3d 236 (5th Cir. 2019) .................................................................... 3, 6

*Gee v. Principi*,

289 F.3d 342 (5th Cir. 2002) .......................................................................... 9, 11

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
 793 F.3d 470 (5th Cir. 2015) ....................................................................... 13

*Honore v. Douglas*,
 833 F.2d 565 (5th Cir. 1987) ......................................................................... 2

*Hughes v. Derwinski*,
 967 F.2d 1168 (7th Cir. 1992) ....................................................................... 4

*Laxton v. Gap Inc*.,
 333 F.3d 572 (5th Cir. 2003) ..................................................................... 8, 18

*Lemonia v. Westlake Mgmt. Servs*.,
 22-30630 (5th Cir. Oct 18, 2023) .................................................................. 4

*Long v. Eastfield College*,
 88 F.3d 300 (5th Cir. 1996) ........................................................................... 2

*McMichael v. Transocean Offshore Deepwater Drilling, Inc*.,
 934 F.3d 447 (5th Cir. 2019) ................................................................... 12, 14

*Medina v. Ramsey Steel Co*.,
 238 F.3d 674 (5th Cir. 2001) ......................................................................... 2

*Miller v. Sam Hous. State Univ*.,
 Civil Action 4:15-cv-2824 (S.D. Tex. Apr. 11, 2024)........................ 8, 14, 16, 19

*Mitchell v. Snow*,
 No. 08-20448 (5th Cir. Jun 17, 2009)............................................................. 4

*O'Neal v. Ferguson Const. Co*.,
 237 F.3d 1248 (10th Cir. 2001) ..................................................................... 4

*Ray v. Tandem Computs., Inc*.,
 63 F.3d 429 (5th Cir. 1995) ........................................................................... 4

*Reeves v. Sanderson Plumbing Prods*., Inc.,
 530 U.S. 133 (2000)............................................................................... 18, 19

*Richmond v. Oneok, Inc*.,
 120 F.3d 205 (10th Cir. 1997) ....................................................................... 4

*Risher v. Aldridge*,
 889 F.2d 592 (5th Cir. 1989) ................................................................... 12, 14

*Rubin v. O'Koren*,
 621 F.2d 114 (5th Cir. 1980) ......................................................................... 5

*Sanders v. Regions Bank*,
 Civil Action 4:22-CV-1523 (S.D. Tex. May. 14, 2024)..................................... 2, 3

*Sherrod v. American Airlines, Inc*.,
 132 F.3d 1112 (5th Cir. 1998) ................................................................... 6, 18

*Simmons v. Camden County Bd. of Educ*.,
 757 F.2d 1187 (11th Cir. 1985) ..................................................................... 2

*St. Mary's Honor Center v. Hicks*,
 509 U.S. 502 (1993).................................................................................... 18

*Stein v. National City Bank*,
    942 F.2d 1062 (6th Cir. 1991) ................................................................ 11

*Thornbrough v. Columbus and Greenville R. Co.*,
    760 F.2d 633 (5th Cir. 1985) ................................................................... 2

*Wallace v. Seton Family of Hosps.*,
    No. 18-50448 (5th Cir. Jun. 13, 2019) ....................................................... 6

*Welsh v. Fort Bend Indep.* Sch. Dist.,
    941 F.3d 818, 823 (5th Cir. 2019) ........................................................... 4

**Statutes**

28 U.S.C. § 636(b)(1) ...................................................................................... 2

**Rules**

Fed. R. Civ. P. 56 ............................................................................................ 2

Fed. R. Civ. P. 72(d) ...................................................................................... 2

## NATURE AND STAGE OF PROCEEDING

Wheeler filed this action on February 3, 2022, alleging retaliation and race, national origin and age discrimination. Dkt. 1. On October 12, 2023, Amazon, filed its motion for summary judgment ("Motion"). Dkt. 24. On November 9, 2023, Wheeler filed her opposition ("Opposition") to Amazon's Motion. Dkt. 30. On November 20, 2023, Amazon's Motion was fully briefed. Dkt. 32. On May 15, 2024, the Court transferred this matter to the Magistrate Court to, *inter alia,* issue a Memorandum and Recommendation ("M&R") on Amazon's Motion. Dkt. 35. On July 12, 2024, the M&R recommending dismissal of Wheeler's claims. Dkt. 36. Pursuant to 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), Wheeler now objects to the M&R's recommendations.

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

Whether summary judgment is proper as to Wheeler's retaliation claim?
Whether summary judgment is proper as to Wheeler's disparate treatment claims?

## SUMMARY OF THE ARGUMENT

Wheeler established a causal link at the *prima facie* stage. Evidence shows the decision makers who were responsible for the adverse actions at issue were aware of Wheeler's protected activity, that the time between Wheeler's protected activity and the adverse actions at issue was within a timeframe that establishes causal connection, and that evidence underlying Amazon's assertion that Wheeler's performance history and its adherence to its policy not only failed to legitimize the adverse actions, but actually strengthen the causal nexus. Further, Wheeler's evidence raised genuine disputes of material fact about whether Amazon's non-retaliatory explanation was pretext for retaliation *and* that but-for her protected activity, Amazon would not have subjected her to the adverse actions at issue. However, the M&R recommended that Wheeler's claim should not reach a jury. It erred. It failed to consider material evidence, did not give Wheeler the rights she is afforded at summary judgment, misinterpreted and misapplied the law in several instances, and usurped the role of the jury by making credibility determinations and weighing evidence. For the reasons Wheeler set forth in her Opposition, and which are

discussed further herein, Wheeler respectfully requests that the Court sustain her objections to the M&R and permit her retaliation claim to reach a jury.

Wheeler further objects to the M&R's recommendation as to her disparate treatment claims because it failed to properly consider Plaintiff's evidence and the applicable causation standards.

## LEGAL STANDARD

A district court reviews *de novo* any portion of a magistrate judge's recommendation on a dispositive pretrial matter. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he court must indulge every reasonable inference from the underlying facts in favor of the party opposing the motion." *Thornbrough v. Columbus and Greenville R. Co*., 760 F.2d 633, 640 (5th Cir. 1985). The court may not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250-51 (1986)).

## ARGUMENT

### I.    RETALIATION

#### A.    The M&R Erred in Finding Wheeler Did Not Establish Causal Connection

To establish a *prima facie* case of retaliation, Wheeler must demonstrate that she engaged in (1) a protected activity, (2) a materially adverse action occurred, and (3) a causal link between the two. *Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996). Amazon only moved on the causal link element. Dkt. 24 at 17. "The 'causal link' element is satisfied when evidence shows the adverse action and protected activity are not 'wholly unrelated.'" *Sanders v. Regions Bank*, Civil Action 4:22-CV-1523, 15 (S.D. Tex. May. 14, 2024) (J. Hanen) (citing *Medina v. Ramsey Steel Co*., 238 F.3d 674, 684 (5th Cir. 2001)). The burden to show causal link at the *prima facie* stage is "much less stringent" than the burden to show ultimate causation. *Long,* 88 F.3d at 305

n.4. However, Amazon sought to have Wheeler effectively prove but-for causation at the *prima facie* stage. Dkt 30 at 14. It argued, not only must Wheeler prove that relevant decision makers were aware of her protected activity and that there was close temporal proximity, but also rebut Amazon's assertions that Wheeler's performance history and its adherence to policy legitimized the adverse actions. *See* Dkt. 24 at 17-20. Amazon's argument—at the *prima facie* stage— was more robust than it was at the pretext stage where it only asserted Wheeler's performance was at issue. *See id.* at 20. That is, under Amazon's standard, it was more onerous for Plaintiff to prove *prima facie* causation than ultimate causation. The 5th Circuit has made clear that the but-for standard is only applicable at the pretext stage. *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 241 (5th Cir. 2019). Nevertheless, the M&R adopted Amazon's heightened *prima facie* standard. *See* Dkt. 36 at 38-47.

The M&R correctly found that Elkon was aware of Wheeler's protected activity prior to her termination, *id.* at 39-43, and that temporal proximity was less than 4 months. *Id.* at 3, 6. Without more, this should have established a causal link at the *prima facie* stage. In *Sanders,* this Court recently held a causal link was established when an "entire chain of events," including an internal complaint, an EEOC charge, and an eventual termination "occurred within a five-month span" and it was unclear whether the relevant decision maker "was entirely unaware" of the plaintiff's internal complaint while the investigation that led to the termination was ongoing. *Sanders,* 4:22-CV-1523 at 114-15. The M&R erred when it required Wheeler to additionally rebut Amazon's performance and policy arguments to meet the causal link element.[1]

The M&R erred in other consequential ways. First, the M&R disregarded its own finding concerning Elkon's awareness of Wheeler's protected activity and concluded: "Wheeler fails to provide facts establishing a causal link, as temporal proximity alone is insufficient." Dkt. 36 at

---

[1] To be sure, Wheeler did rebut Amazon's assertions of performance and policy at summary judgment. Dkt. 30 at 14-22. Here, for the sake of economy and because Wheeler believes it is more applicable substantively, Wheeler discusses issues related to performance and policy in the context of pretext. *Infra* Sec. B. She incorporates those arguments herein.

47.[2] But Wheeler did not rely on temporal proximity alone. Dkt. 30 at 8-15. She only noted that even using the longest possible time between her protected activity and the termination—the timeline the M&R chose to use— temporal proximity was still under four months, which the 5th Circuit has held is sufficient without more to establish causal connection. *Id.* at 8. *See infra* at 5-6.

Second, the M&R failed to consider most of Wheeler's evidence of protected activity and adverse actions. In her Opposition, Wheeler provided the following timeline of relevant events:

March 20, 2020: Wheeler complained to Knapp and human resources about Knapp's "stereotypical Latin fire" remarks. Dkt. 30-39 (000744); Dkt. 30-30 (000440-43).

March 23, 2020: Wheeler complained to human resources concerning Knapp's ageist comments. Dkt. 30-31 (000451).

March 24, 2020: Amazon initially placed Wheeler in Pivot. Dkt. 30-12 (000269).[3]

April 13, 2020: Wheeler complained to Elkon that she believed Elkon's critical view of her performance was retaliation for reporting Knapp's comment. Dkt. 30-43 ¶19.[4]

April 16, 2020: Wheeler complained to Palumbo concerning Elkon's retaliation. Dkt. 30-2 (164-67), Dkt. 30-43 ¶ 21.

April 22, 2020: Amazon again placed Wheeler in Pivot. Dkt. 30-9 (000245-47).[5]

---

[2] Quoting *Clark Cty. Sch. Dist. v. Breeden*, the M&R stated: "As the Supreme Court of the United States has held, a period as small as three months is not—by itself— enough to prove the casual link." M&R at 47 (quoting 532 U.S. 268, 273–74 (2001)). This is not *Breeden's* holding. The *Breeden* Court held 20 months was too long when the plaintiff relied on temporal proximity alone. *Id.* at 273–74. The Court *noted* that some courts, including the 10th Circuit and the 7th Circuit, have found that three months without other evidence is too long to establish causal connection. *Id.* (citing *O'Neal v. Ferguson Const. Co*., 237 F.3d 1248, 1252 (10th Cir. 2001); *Richmond v. Oneok, Inc*., 120 F.3d 205, 208 (10th Cir. 1997); *Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992)). In *Crawford v. Metro. Gov't of Nashville*, the Supreme Court explained that the *Breeden* Court was "noting that some cases 'accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case." 555 U.S. 271, 283 (2009). If anything, *Breeden* supports the Fifth Circuit's precedent that a temporal proximity of four months without more is sufficient to establish *prima facie* casual connection, as the *Breeden* Court cited approvingly the wisdom of the circuit courts who set parameters of what temporal proximity establishes causality. *See Breeden*, 532 U.S. at 273–74.

[3] *Lemonia v. Westlake Mgmt. Servs*., 22-30630 at 15 (5th Cir. Oct 18, 2023) (holding performance improvement plan that results in termination is a materially adverse action) (citing *Ray v. Tandem Computs., Inc*., 63 F.3d 429, 435-36 (5th Cir. 1995); *Welsh v. Fort Bend Indep.* Sch. Dist., 941 F.3d 818, 823, 826 (5th Cir. 2019)).

[4] *See Mitchell v. Snow*, No. 08-20448 at 4 (5th Cir. Jun 17, 2009) (a negative performance review that results in lost "'step increase'" constitutes a materially adverse employment action).

[5] *See supra* Note 2.

April 22, 2020: Wheeler protested to Elkon re being placed in retaliatory Pivot. Dkt. 30-43 ¶22.

April 27, 2020: Wheeler complained to Laura McDonald concerning Elkon's retaliation. Dkt. 30-24 (000339-40); Dkt. 30-43 ¶24.

May 14, 2020: Elkon met with Wheeler and McFarland to "discuss questions [Wheeler] had on the Pivot." Wheeler requested an update from McFarland on the investigation into her complaints. McFarland's response was: "Oh yeah, we're moving forward with your pivot." Dkt. 30-43 ¶ 25.

June 22, 2020: Amazon failed Wheeler's Pivot. Dkt. 30-37 (000720-32).[6]

On or around the same date: Wheeler protested to Elkon that Amazon failed her Pivot in retaliation for her complaints. Dkt. 30-43 ¶27.

July 13, 2020: Wheeler complained to Jeff Bezos about discrimination and retaliation. Dkt. 30-25.

July 14, 2020: Amazon made Wheeler's termination effective.[7]

The M&R only considered Wheeler's protected activity on March 23, 2020 and her termination on July 14, 2020. Dkt. 36 at 3, 6. The M&R effectively ignored the balance of Wheeler's evidence, *id.* at 38-43, and used the longest temporal proximity nearly possible (as Amazon encouraged). *Id.* at 47. Wheeler was entitled to have her evidence viewed in the light most favorable to her. The *sine qua non* of this right is that Wheeler's evidence must, at minimum, be viewed. The M&R deprived Wheeler of this right. Had the M&R considered Wheeler's evidence, temporal proximity is, at times, measured in the magnitude of days and weeks.

Finally, in the 5th Circuit, temporal proximity alone is sufficient to establish *prima facie*

---

[6] *Id.*

[7] Wheeler asserts that her functional termination date is when Elkon failed her Pivot, June 22, 2020, which even if using Wheeler's earliest protected activity, March 20, 2020, puts temporal proximity just over three months. When an employee is placed in Pivot, they are given two options: resign or improve. Dkt. 30-9. If an employee chooses to improve, in order to avoid termination, they must pass an Improve plan according to performance expectations set by the employee's manager. *See id.* If the employee does not pass the Improve plan, they may appeal the manager's assessment; however, if the appeal is unsuccessful, the consequence of not passing the Improve plan remains: Amazon terminates employment. *Id.* Elkon failed Wheeler's Pivot on June 22, 2020. This is when her termination accrued. The only way for Wheeler to avoid termination was to have Elkon's decision overturned on appeal. But administrative grievance processes do not toll an accrual date. *Rubin v. O'Koren*, 621 F.2d 114, 116 (5th Cir. 1980). "[E]ntertaining a grievance . . . does not suggest that the earlier decision was in any respect tentative." *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980) ("[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of those acts became most painful.") (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (1979)). The effect of Elkon's failure of Wheeler's Pivot on June 22, 2020 was merely delayed by the appellate review process.

causal connection. *See, e.g., Garcia v. Pro. Cont. Servs*., Inc., 938 F.3d 236, 243 (5th Cir. 2019) ("The Fifth Circuit says that up to four months could cause there to be an inference of proximity of causation from proximity in time.") *Evans v. City of Hous.,* 246 F.3d 344, 354 (5th Cir. 2001) ("We note that a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes.") (citations and internal quotations omitted); *Wallace v. Seton Family of Hosps*., No. 18-50448, 14-15 (5th Cir. Jun. 13, 2019) ("We have cited with approval a district court case noting that four months was sufficiently close in time to satisfy the causal connection element of a plaintiff's *prima facie* case for summary judgment purposes."). Here, the longest possible temporal proximity is within this timeframe.

There are too many errors in M&R's proposal concerning *prima facie* causation for the Court to adopt the M&R's recommendation. Wheeler requests the Court sustain her objections.

### B. The M&R Erred When it Found that Wheeler Did Not Meet Her Burden Under *McDonnell Douglas*

"If the defendant advances a legitimate reason for the adverse employment action, then the plaintiff must adduce sufficient evidence that would permit a reasonable trier of fact to find that the proffered reason is a pretext for retaliation." *Sherrod v. American Airlines, Inc*., 132 F.3d 1112, 1122 (5th Cir. 1998). "Pretext can be proven by any evidence that casts doubt on the credence of the employer's proffered justification for the adverse employment action." *Brown v. WalMart Stores East, L.P*.,969 F.3d 571, 578 (5th Cir. 2020).

Here, Amazon asserted that it terminated Wheeler due to her subpar performance. Dkt. 24 at 11-14. Wheeler provided substantial evidence showing that Amazon's explanation was pretextual, including (1) evidence bearing on the falsity of Amazon's explanation; (2) deviations from policies and procedures, (3) conduct designed to ensure Wheeler would not pass Pivot; (4) suspicious statements and conduct probative of retaliatory intent, (5) mistreatment probative of retaliatory animus, and (6) temporal proximity. Dkt. 30 at 15-22.

The M&R rejected all of Wheeler's evidence. First, the M&R concluded that Wheeler's evidence bearing on the falsity of Amazon's explanation was "unavailing" and that Amazon did not make false statement concerning Wheeler's performance, or if it did, they were immaterial, contextualized by other evidence, and/or not connected to discriminatory motive. *See* M&R at 24, 27-30. Second, the M&R qualified Amazon's failure to follow policy and procedure as slight deviations and concluded that Wheeler did not connect the policy departures to a discriminatory motive. *Id.* at 24-25, 44-46. Third, the M&R concluded that Elkon's determination to fail Wheeler's Pivot was justified and that she failed to connect Elkon's conduct to discriminatory motive. *Id.* at 26. Fourth, the M&R declined to consider evidence probative of retaliatory intent (*i.e.*, suspicious conduct and day-to-day mistreatment) because it cabined its pretext analysis in the disparate treatment context. *Id.* at 31-33. Finally, the Court declined to consider temporal proximity because it determined Wheeler had no other pretext evidence. *Id.* at 33-34.

The M&R erred by substituting its judgment for that of the jury, misapplying the law, and depriving Wheeler of her basic rights at summary judgment that her evidence is to be believed and that she is afforded all reasonable inferences therefrom. Moreover, Wheeler objects to the M&R because it did not consider her pretext evidence as to her retaliation claim. While the M&R analyzed pretext as to disparate treatment, several portions of its analysis are inapplicable to retaliation. Dkt. 36 at 22-33. However, because other aspects of the M&R's disparate treatment pretext analysis are applicable to Wheeler's retaliation claim, Wheeler specifically objects to those portions without conceding that M&R conducted an appropriate review of her retaliation evidence.

### 1.    Falsity of Amazon's Explanation

Wheeler adduced evidence showing Amazon made several false, inconsistent, and shifting explanations concerning her performance, which undergirded its explanation for the adverse actions at issue. Dkt. 30 at 15-19 (Sec. I(B)(1), 20-21 (Sec. I(B)(2)(iii)). However, the M&R

concluded Amazon did not make false statements. M&R at 23-24, 27-30. The M&R appears to characterize Wheeler's evidence as mere second guessing of Amazon's business judgment. *See, e.g.,* M&R at 43. But Wheeler did not submit this evidence to question or negate Amazon's business judgment. She submitted it to challenge Amazon's credibility—to show her performance was not the real reason for the adverse actions. In *Laxton,* the court held:

> Were Laxton to assert that Gap should not have terminated her for the cumulative effect of her violations, she would be second-guessing its business judgment. But that is not Laxton's argument. Instead, she brings evidence that Gap did not terminate her for that reason. This argument does not impermissibly challenge Gap's business judgment. It permissibly challenges Gap's credibility.

*Laxton v. Gap Inc*., 333 F.3d 572, 585 (5th Cir. 2003); *see also Miller v. Sam Hous. State Univ.,* Civil Action 4:15-cv-2824, 21 (S.D. Tex. Apr. 11, 2024) (J. Hanen) (holding it was probative of pretext when defendant's tenure letter stated plaintiff's relationship with students was problematic but omitted reference to the mentorship awards for which students nominated plaintiff).

For instance, Amazon claims it engaged in the adverse actions against Wheeler, in part, because she was placed in Focus for three consecutive years. Dkt. 24 at 3-5. But Wheeler's 2018 Focus was because she transferred to a new team, not because of performance deficiencies. As Wheeler's supervisor at the time, Crystal Serrato, explained:

> [L]eadership ran an experiment . . . Everyone who transferred, no matter how complex the roles they were working on were put into the plan. . . . I know the "dev list" has a negative connotation . . . You are doing fabulous and proved my theory[.]

Dkt. 30-23 (000332).[8] Amazon disputes this evidence, asserting that Serrato's progress notes show she placed Wheeler in Focus because of her performance, not the transfer. Dkt. 32 at 17–18. But the evidence Amazon cites <u>does not</u> support this conclusion. Dkt. 24-5. At best, there is a material dispute of fact about why Wheeler was in Focus in 2018. *See* Dkt. 36 at 29-30. Wheeler's evidence is to be believed. She is entitled to all reasonable inferences drawn therefrom. It is reasonable to

---

[8] The M&R seemingly failed to consider this evidence.

infer that Plaintiff's 2018 Focus was not due to performance deficiencies in light of Serrato's explanation that the Focus was an "experiment" for "everyone who transferred." Dkt. 30-23.

Similarly, Amazon justified the adverse actions, in part, because Wheeler received back-to-back "least effective" annual ratings from two separate supervisors. Dkt. 24 at 4-5. Amazon claimed Wheeler's supervisor for the majority of 2019, Eyeington, gave Wheeler a least effective rating for 2019 and then Elkon also gave Wheeler a least effective rating for 2020. *Id.* But Amazon's business record show that Elkon not only gave both ratings, but that she actually downgraded Eyeington's recommendation that Wheeler be rated "highly valued." Dkt. 30-35. The M&R concluded, "this does not change the fact that Wheeler received a least effective rating, regardless of whether Eyeington or Elkon issued the rating." Dkt. 36 at 28. The M&R appears to reason that Wheeler is merely questioning what rating she should have received. *See id.* This misses the mark. Whether it was Eyeington or Elkon who issued the 2019 rating is not immaterial, as the M&R suggests. *See id.* If Eyeington issued the 2019 rating, one of the primary justifications for Amazon's performance explanation—consecutive least effective ratings from different supervisors—remains intact. If, however, it was Elkon (it was), then it raises significant questions about the veracity of Amazon's justification for the adverse actions in the first instance. *See Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) (holding plaintiff established pretext with evidence that, *inter alia,* a relevant decision makers omitted the fact that he was involved in a key meeting and falsely claimed other decision makers were not involved in material decision when they were). Moreover, evidence shows that Elkon deviated from Amazon's policy when she conducted Wheeler's 2020 annual rating just months into the year, which further complicates Amazon's explanation. *See infra* Sec. B(2)(i). Wheeler's evidence reasonably shows that Elkon stacked the deck against Wheeler by giving her two "least effective" annual ratings within months of each other. That Amazon later claimed Eyeington performed the 2019 rating when it was actually Elkon

and then characterized the 2019 and 2020 ratings as consecutive years when it was closer to consecutive months is probative of pretext. A jury should weigh this evidence.

Further, Amazon justified its decision to place Wheeler in Pivot and ultimately terminate her employment because she did not improve after meeting with Elkon weekly during Focus. Dkt. 24 at 4-5. But Amazon's business records show the Focus only lasted four days. Dkt. 30-6. Therefore, Elkon could not have met with Wheeler weekly, and one of the primary bases of Amazon's explanation is called into question. The M&R determined Elkon did not make a false statement because she testified that she met with Wheeler weekly for four consecutive weeks during Wheeler's Focus. Dkt. 36 at 28. A false fact memorialized in deposition testimony is still false, and it is Plaintiff's evidence that is to be believed at summary judgment, not Elkon's testimony. It is not only reasonable to infer that Elkon did not actually meet with Wheeler weekly; it was also quite literally impossible for her to do so. Moreover, Amazon failed to produce any evidence (besides Elkon's testimony) showing that the weekly meetings ever took place. *See Burton*, 798 F.3d at 240 (lack of contemporaneous documentation coupled with other evidence showing the import of such absence of documentation points to pretext).

Wheeler provides additional evidence that bears on the unreliability of Amazon's explanation. For instance, Amazon asserted that Elkon was the sole decision maker and that she was not aware of Wheeler's complaints. *See, e.g.,* MSJ at i, 2, 13, 16-18. But the evidence shows this is not a reasonably close question. Substantial evidence shows that other decisionmakers who were aware of Wheeler's protected activity were directly involved in the adverse actions at issue. Dkt. 30 at 10-14 (collecting evidence showing Knapp, Miles, and McFarland were involved). It is reasonable to infer that Amazon's assertion that Elkon acted in a vacuum was to create a buffer between Knapp, McFarland, and Miles and the adverse actions at issue because uncontroverted evidence shows each of them were either the subject of Wheeler's complaints or intimately aware

10

of the same. *Id. See Gee,* 289 F.3d at 348.

Amazon will likely argue this evidence does not change its explanation about Wheeler's performance and/or that she is just questioning its business judgment. Such arguments would miss the mark. Amazon's business judgment is not at issue. Its credibility is. It is reasonable to question, if the adverse actions were legitimately because of Wheeler's performance, why did Amazon give false, inconsistent, and shifting explanations to justify its decision making? Wheeler is entitled to a fact finder to determine whether Amazon's falsities were designed to hide a retaliatory motive.

### 2.   Deviations from Policy

Wheeler's evidence shows that Amazon failed to adhere to company policies when it (1) ignored Wheeler's supervisor's recommendation to rate Wheeler for HV for 2019, Dkt. 30-28; (2) conducted Wheeler's 2020 rating just months into the year; *see* Dkt. 30-35, Dkt. 24 at 5; (3) allowed Wheeler 4 days in Focus when 30-60 day is the standard time, Dkt. 30-6; and (4) allowed Wheeler 30 days in Pivot when 45-60 days is the standard time. Dkt. 30-4 (116:15-117:1). However, the M&R found that this evidence was not probative of pretext because Wheeler did not provide written policies, the deviations were inconsequential, and Wheeler did not connect the deviations to discriminatory intent. Dkt. 36 at 24-25, 44-46. The M&R erred in several respects.

First, "whether a policy is written or unwritten has minimal probative value on the issue of pretext." *Stein v. National City Bank*, 942 F.2d 1062, 1065 (6th Cir. 1991); *see also Dunning v. National Industries, Inc.*, 720 F.Supp. 924, 931 (M.D. Ala. 1989) ("[T]his court cannot overlook that unwritten policies, as opposed to written policies, can be easily turned into tools of discrimination."). Second, the M&R's characterization of Amazon's failure to follow policy as inconsequential is not only wrong, but also it improperly weighs evidence. *See* Dkt. 36 at 44-46. Finally, the M&R's conclusion that Wheeler did not "connect" Amazon's policy deviations to discriminatory intent is not applicable to whether Wheeler connected the deviation to retaliatory

11

intent, which she did. *See* Dkt. 36 at 24-25. Moreover, even if the M&R analyzed Plaintiff's retaliation evidence, the cases it cites are inapposite to Wheeler's facts. In *McMichael,* the court found that the plaintiff failed to provide any evidence to doubt the defendant's explanation that the policy deviation at issue was anything more than an accident—"a simple scrivener's error." *McMichael v. Transocean Offshore Deepwater Drilling, Inc*., 934 F.3d 447, 459 (5th Cir. 2019). In *Risher,* the court found that it was unclear whether there was even a policy that required consideration of written appraisals, and even if there were, the decision maker did not consider written appraisals for any candidates, male and female alike, because he determined the appraisals were an ineffective hiring metric. *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989). In those cases, unlike here, the defendants provided explanations for the policy deviations and the deviations either had no bearing on the adverse actions or were equally applied to everyone.

*i.    Deviations from Policy Related to Annual Evaluations*

Amazon policy states: "Formal performance evaluations are typically conducted on an annual basis. Ex. A (000066); *accord* Dkt. 30-3 (27:9-19). Evaluations are typically performed by an employee's supervisor. *See* Dkt. 30-35 (000629); Dkt. 30-38. Wheeler's direct manager throughout the majority of 2019 was Mellissa Eyeington. Dkt. 30-2 (39:18-40:25, 41:17-42:16. 25). In or around late-2019, Eyeington recommended to Elkon and Knapp that Wheeler be rated "highly valued." Dkt. 30-28 (000410-11). Elkon took over as Wheeler's supervisor in late 2019. *Id.* 42:7-24. 24. In early 2020, Elkon disregarded Eyeington's recommendation that Wheeler be rated "highly value" and assigned her a "least effective" rating instead. Dkt. 30-35 (000629); Dkt. 30-38. Sooner thereafter, in or around April 2020, Elkon performed Wheeler's 2020 annual evaluation, again assigning her a least effective rating. *Id.* While Amazon policy provides authority for "Amazon or individual sites or departments [to] establish more frequent performance review periods[,]" it <u>does not</u> provide that authority to individual managers. Ex. A (000066). Elkon's

evaluation of Wheeler mere months into 2020 is a substantial departure from Amazon's policy, which provides that evaluations are typically conducted on an annual basis. *Id.* Amazon cites to these back-to-back least effective ratings (2019 and 2020) as part of the justification to subject Wheeler to the adverse actions at issue—a justification that is only realized by Elkon's deviation for Amazon's policy.

### ii. Length of Focus

The M&R rejected Wheeler's argument that Amazon's decision to only allow Wheeler four days in Focus is not probative of pretext because Wheeler did not connect this deviation of policy to disparate treatment[9] and because Wheeler did not provide evidence of a "specific written rule requiring an employee be placed in Focus for thirty to sixty days." Dkt. 36 at 25, 45. As discussed above, whether a policy is memorialized in writing is of little consequence when evaluating pretext. *Stein*, 942 F.2d at 1065. Further, as the M&R acknowledged, Elkon testified that "typically, [Focus is] anywhere from thirty to sixty days" but that it "depend[s] on what the improvement components are and . . . what a reasonable time frame is to expect that improvement." *Id.* at 45. Given Elkon justified her decision to place Wheeler in Pivot after supposedly meeting with her weekly during Focus, it naturally follows that Elkon determined the appropriate "improvement conditions" and the "reasonable time frame to expect that improvement" were that Elkon and Wheeler should (1) meet during Focus on a (2) weekly basis. *See id.* The evidence shows this did not happen. Dkt. 30-6. Therefore, Wheeler should have, but did not, receive the improvement components and reasonable time that Amazon claims legitimized its decision to put Wheeler in Pivot. *See, e.g., Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015) ("[T]he very purpose of the warnings—presumably to warn so that an employee may take corrective steps to avoid losing his job—is undermined and thus may give rise to an inference of

---

[9] The M&R did not explain how this determination is applicable to retaliation.

pretext."). The length of Wheeler's Focus cannot be teased apart from the adverse actions at issue, as Amazon points to Wheeler's failure to improve in Focus after attending weekly meetings with Elkon as the basis for its decision to negatively evaluate (and deny her pay raise), place Wheeler in Pivot, and by extension, to ultimately terminate her.  Dkt. 24 at 5; Dkt. 30-4 (107:5-11).

### iii.    Length of Pivot

Similarly, the M&R dismisses Wheeler's evidence that Elkon's decided to provide Wheeler just 30 days in Pivot when it is standard to provide 45-60 days, characterizing it as a mere deviation that is unconnected to discriminatory intent.[10] Dkt. 36 at 25, 45-46. Taking the second issue first: The length of time that Elkon provided Wheeler in Pivot is inextricably related to the ultimate issue of retaliation, as Elkon's failure of Wheeler's Pivot led directly to Wheeler's termination. Further, Wheeler not only showed that Elkon deviated from Amazon's standard policy/procedure, but also that Elkon progressively shortened the time she allowed Wheeler to complete Pivot. While Wheeler was provided approximately 45 days in the versions of Pivot that did not take effect, the final, effective version reduced the allotted time by over thirty percent to just 30 days. *Compare* Dkt. 30-9 (000245-47) (45 days) *with* Dkt. 30-37 (000720-32) (30 days). Amazon does not explain why it shortened the time. It is reasonable to infer that it did so because Wheeler continued to report discrimination and retaliation. *See Miller,*  4:15-cv-2824 at 16 (holding the plaintiff "provided sufficient evidence that SHSU's proffered explanation for her tenure denial—her collegiality—was pretextual" when the defendant referred to plaintiff's "many snafus" with colleagues in the year leading up to the adverse action because "it is possible that her protected activity was included in the Committee's analysis").

Further, the M&R's characterization of Elkon reducing the time that Wheeler had to complete the Pivot as a "slight" deviation is an inappropriate weighing of evidence at summary judgment.

---

[10] The M&R did not explain how this determination is applicable to retaliation.

Dkt. 36 at 45-46. The M&R's reliance on *McMichael* and *Risher* does not support this result. *Id.*
at 25. As discussed above, the policy deviation at issue in *McMichael* was an accidental error and
in *Fisher* the deviation was necessary and equally applied. *See supra* at 12. Here, in
contrast, Elkon's reduction by over thirty percent caused Wheeler's Pivot to defy Amazon's
policy and deprived Wheeler the 45-60 days that Amazon typically affords. This is not "slight."

Taken together, Amazon's deviation from its normal policies and procedures materially
contributed to the injury Plaintiff suffered. The policy deviations were not inconsequential,
legitimately explained, or unconnected to the adverse actions at issue. A jury should weigh whether
Amazon's failure to follow policy was designed to artificially support its assertion that Plaintiff
was terminated for legitimate performance issues and disguise its true purpose: retaliation.

3.   Actions Designed to Ensure Wheeler Did Not Pass Pivot

On June 23, 2020, Elkon emailed Knapp, Miles, McFarland and admitted Wheeler "did
meet the measurements" for Pivot Expectation 1. Dkt. 30-11 (000262). However, Elkon explained
that the group changed the measurement after the Pivot ended to account for "intrinsic errors." *Id.*
As a result, Wheeler was judged to have failed Expectation 1, even though she met the
predetermined measurements. *Id.* The M&R found that Wheeler did not connect Elkon's conduct
to discriminatory motive or animus[11] and noted that Elkon "state[d] a reason for deeming
[Wheeler's] performance unsuccessful: "there were intrinsic errors in the offer process itself." Dkt.
36 at 26. By waiting until Wheeler completed the Pivot to add the measurement, Elkon deprived
Wheeler of a fair opportunity to meet the required standards and keep her job. *See Goudeau,* 793
F.3d 470 at 477. Wheeler's Pivot is germane to Amazon's decision to terminate her. Elkon's
explanation highlights a genuine dispute of material fact that should be decided by a jury.

4.   Suspicious Conduct Probative of Retaliatory Intent

---

[11] The M&R does not explain how this determination is applicable to retaliation.

Wheeler's evidence shows decision makers who were involved in the adverse actions engaged in suspicious conduct. Laura MacDonald, the HR representative who first received Wheeler's complaint about Knapp's racial remark told the employee relations consultant who was investigating the complaint: "Another aspect of this case . . . is that Melissa received an LE rating this year and for the second year in a row." Dkt. 30-21 (000318-20). Wheeler's complaints about Knapp had nothing to do with Wheeler's performance. Dkt. 30-18 (000285). McDonald's statement shows that Amazon immediately linked Wheeler's protected activity to her performance. *Miller v. Sam Hous. State Univ*.,:15-cv-2824, 16 (S.D. Tex. Apr. 11, 2024) (J. Hanen). Amazon's retaliatory intent may also be inferred from its decisions not to put any safeguards in place to ensure Wheeler would be protected from retaliation. A reasonable juror might inquire why Amazon refused to provide any buffer between Wheeler, Elkon, Knapp, McFarland, and Miles when it reinstituted the Pivot on April 22, 2020. Wheeler raised her concerns to McFarland on April 27, 2020, indicating: "I believe [the Pivot] is retaliation after reporting discrimination" and provided numerous examples of Elkon's measurements that had not been discussed and that were misleading and inaccurate. Dkt. 30-24. Amazon moved forward with the Pivot anyway. *See* Dkt. 30-43 ¶25; *See Cruz v. St. John's Sch.,* Civil Action 4:19-CV-04590, 8 (S.D. Tex. Nov. 10, 2021) (J. Hanen) (holding plaintiff made a requisite showing to establish causation at summary judgment with evidence of complaints of harassment for which defendant did not take corrective action, defendant discouraged further complaints, and did not follow policy to escalate the complaints).

The M&R failed to address this evidence in the context of Wheeler's retaliation claims, instead focusing on Wheelers disparate treatment claims, noting: "Wheeler fails to provide authority stating retaliatory intent can establish pretext for a discrimination claim." Dkt. 36 at 31.

### 5.    Campaign of Mistreatment

Here, again, the M&R's recommendation is inapplicable to Wheeler's retaliation claim

because it is entirely cabined in disparate treatment. *Id.* at 32-33. To be sure, Wheeler asserted in her Opposition: the "adverse actions [she] experienced cannot be divorced from the evidence that shows that Elkon and Knapp were systemically treating Wheeler worse than they treated their other subordinates who did not report discrimination." *Id.* at 32 (citing Dkt. 30 at 28). The M&R concluded that Wheeler raised insufficient evidence to show Knapp and Elkon's mistreatment was based on her race or national origin. *Id.* at 32-33. But whether the mistreatment at issue was rooted in Wheeler's race or national origin are immaterial to whether the mistreatment was motivated by Wheeler's protected activity. Wheeler provided evidence showing Elkon was rude, dismissive, and curt with her. Elkon excessively scrutinized Wheeler's work, often trying to hold her accountable for items over which Wheeler had no control or authority. Elkon would cut Wheeler short during group meetings and made efforts to ostracize her among the team. Dkt. 30-2 (157:3-4, 157:18-25); Similarly, Knapp was rude to and often cut Wheeler off during meetings. *Id.* 154:21-23. This evidence is probative of causation in the retaliation context. *See Klebe v. Univ. of Texas Health Sci. Ctr. at San Antonio*, No. 10-50458 (5th Cir. Nov 17, 2011) ("Dr. Walter's animus toward Klebe after he filed the age discrimination claim" was probative of causal connection).

### 6.   Temporal Proximity

The M&R did not consider temporal proximity because it determined that Wheeler had no other pretext evidence. "Although '[t]iming standing alone is not sufficient absent other evidence of pretext,' the 'combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment.'" *Davis v. Indep. Contract Drilling*, Inc., 4:16-CV-00252, 18-19 (S.D. Tex. Mar. 14, 2019) (J. Hanen) (quoting *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) (quoting *Boyd v. State Farm Ins. Cos*., 158 F.3d 326, 330 (5th Cir. 1998) and *Evans,* 246 F.3d at 356). Wheeler's temporal proximity never exceeds 4 months, and when considering her evidence in its totality, temporal proximity is much closer. This

evidence must be considered together with Wheeler's other pretext evidence.

### C.  Wheeler Establishes "But For" Causation

"In the Rule 56 context, a *prima facie* case of discrimination plus a showing that the proffered reason is pretextual is typically enough to survive summary judgment." *EEOC v. LHC Group, Inc.,* 773 F.3d 688, 694 (5th Cir. 2014); *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408, 415 (5th Cir. 2007) ("[T]he trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.") (quoting *Reeves v. Sanderson Plumbing Prods*., Inc., 530 U.S. 133, 147 (2000)); *Laxton v. Gap Inc*., 333 F.3d 572, 585 (5th Cir. 2003) ("Since *Reeves*, however, when a plaintiff makes a sufficient showing of pretext, no further evidence of discriminatory animus is required to withstand a motion for judgment as a matter of law.").

"[T]he ultimate issue of retaliation requires the employee to prove that the adverse employment action would not have occurred 'but-for' the protected activity." *Sherrod*, 132 F.3d at 1122. However, only in "rare instances" will a showing of pretext not establish but-for causation. *Burrell,* 482 F.3d at 415 (citing *Reeves,* 530 U.S. at 148); *Laxton,* 333 F.3d at 585. The *Reeves* Court identified two exceptions when a showing of pretext will not raise an inference of retaliatory intent: (1) "if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or [2] if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves,* 530 U.S. at 148.[12]

---

[12] The *Reeves* Court cited *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1291-92 (D.C. Cir. 1998) and *Fisher v. Vassar College*, 114 F.3d 1332, 1338 (2d Cir. 1995). In *Aka*, the court observed examples where a showing of pretext alone would be insufficient to prove but-for causation, including where the falsity of the employer's explanation was to cover up for illegal conduct other than discrimination, where the plaintiff "shoots himself in the foot," for example, by proving he was fired for whistleblowing not discrimination, or where a plaintiff's evidence is particularly weak, such as in *Hicks* when "40% of the employer's work force were members of the same minority group as the plaintiff (even though the group in question comprised only 10% of

Here, the strength of Wheeler's *prima facie* case is not slight. Her protected activity is clear, numerous, and explicit. The adverse actions are salient and occurred close on the heels of Wheeler's protected activity. The relevant decision makers were aware of Wheeler's protected activity and there are substantial credibility concerns regarding Amazon's explanations of Wheeler's performance and adherence to its policies. Further, Wheeler has submitted substantial pretext evidence, including: evidence of false statements that go to the heart of Amazon's explanations; material deviations from policy; suspicious conduct, such as changing Wheeler's Pivot expectation, statements concerning Wheeler's performance when Amazon investigated Wheeler's discrimination complaints, and disregarding Wheeler's concerns about the retaliatory nature of the Pivot; relevant decision maker's day-to-day mistreatment after Wheeler reported discrimination; and close temporal proximity. Taken together, Wheeler has raised a disputes of material fact concerning whether her protected activity was a but-for cause of the adverse actions.

This is not the "rare" case where the record conclusively reveals an additional non retaliatory reason that explains the adverse actions or where "abundant and uncontroverted independence evidence" shows no retaliation occurred. *Reeves,* 530 U.S. at 148. Taken together, Wheeler's evidence establishes but-for causation. *See Cruz,* 4:19-CV-04590 at 8 (holding causation established when plaintiff's evidence showed his performance was not discussed with him at the performance meeting prior to his termination and he made several complaints of harassment for which the defendant did not take corrective action, discouraged further complaints, and did not follow policy to escalate the complaints); *Miller,* 4:15-cv-2824 at 16.

Even if the Court were to determine Wheeler's performance was a but-for cause of the

---

the relevant labor market[,]" (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 513 (1993) or "[w]here an employer has a strong record of equal opportunity employment." *Aka,* 156 F.3d, at 1291-1292. Similarly, in *Fisher* the court observed "if the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent. " *Fisher,* 114 F.3d at 1338.

adverse actions, her evidence raises material disputes about whether protected activity was *another* but-for cause. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020). ("[A] defendant cannot avoid liability just by citing some other factor that contributed to its challenged employment decision. So long as the plaintiff 's sex was one but-for cause of that decision, that is enough to trigger the law.").

## II.    <u>DISPARATE TREATMENT</u>

For the reasons outlined in Wheeler's Opposition, and discussed further herein, she objects to the M&R's recommendation to dismiss her race, national origin claims. The M&R erred when it (1) found that Wheeler did not establish *prima facie* cases of disparate treatment because she testified in her deposition that she believed retaliation caused her termination and (2) that, taken together, Wheeler's evidence of Knapp's racist and ageist comments, Elkon's endorsement of the same, Knapp's and Elkon's history of mistreatment of other older Hispanic employees, and their more favorable treatment of younger Caucasian employees did not raise an inference of discrimination at the *prima facie* stage. Moreover, for the same reasons discussed  above concerning Wheeler's retaliation claim, substantial evidence calls into question the legitimacy of Amazon's explanation for its treatment of Wheeler, and she establishes but-for causation as to her disparate treatment claims. Finally, the M&R failed to consider that Wheeler's disparate treatment claims can be proven under the less demanding motivating factor standard. *Goudeau,* 793 F.3d at 475; *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438-40 (5th Cir.2012).

## <u>CONCLUSION</u>

For the reasons stated in Wheeler's Opposition, and discussed further herein, she repectfull requests the Court sustain her objections to the M&R and permit her claims to be tried to a jury.

Respectfully submitted,

By: <u>/s/ Lisa Ventress</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date indicated herein, I caused a copy of foregoing to be served via the

CM/ECF system on all counsel of record, including:

Stefanie R. Moll
Attorney-in-charge
TX Bar No. 24002870
Federal ID No. 22861
stefanie.moll@morganlewis.com
1000 Louisiana Street, Suite 4000 Houston, TX 77002
T: 713.890.5000
F: 713.890.5001


Dated: July 26, 2024

By: /s/ Lisa Ventress