## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| MELISSA WHEELER, | Civ. Action No. 4:22-cv-00370 |
| Plaintiff, | Judge Andrew Hanen |
| v. | |
| AMAZON WEB SERVICES, INC., | |
| Defendant. | |

## DEFENDANT AMAZON WEB SERVICES, INC.'S
## RESPONSE TO PLAINTIFF'S OBJECTIONS TO
## MAGISTRATE JUDGE RICHARD W. BENNETT'S
## <u>MEMORANDUM AND RECOMMENDATION</u>

Dated:  August 9, 2024

Of Counsel

Morgan, Lewis & Bockius LLP
Tyler J. Hill
TX Bar No. 24130505
Federal ID No. 3815851
tyler.j.hill@morganlewis.com
1717 Main Street, Ste. 3200
Dallas, TX 75201
T: 214.466.4160
F: 214.466.4001

Respectfully submitted,

*/s/ Stefanie R. Moll*
Stefanie R. Moll
Attorney-in-charge
TX Bar No. 24002870
Federal ID No. 22861
stefanie.moll@morganlewis.com
1000 Louisiana Street, Suite 4000
Houston, TX 77002
T: 713.890.5000
F: 713.890.5001

ATTORNEYS FOR AMAZON WEB SERVICES, INC.

## TABLE OF CONTENTS

**Page**

I.    SUMMARY OF THE ARGUMENT ............................................................... 1

II.   NATURE AND STAGE OF PROCEEDING .................................................. 3

III.  STATEMENT OF THE ISSUES................................................................... 3

IV.   LEGAL STANDARD.................................................................................... 4

V.    ARGUMENT ................................................................................................. 4

A.    The Court Should Adopt The Magistrate's Recommendation To Dismiss Wheeler's Discrimination Claims For Failure To Establish A Prima Facie Case............................................................................................................ 4

B.    The Court Should Adopt The Magistrate's Recommendation To Dismiss Wheeler's Retaliation Claim For Failure To Establish A Prima Facie Case. ........ 5

1.    Magistrate Bennett Considered The Correct Factors In Ruling That Wheeler Failed To Establish A Causal Connection.................................. 5

a.    Elkon Lacked Knowledge of Wheeler's Protected Activity.......... 7

b.    AWS Began Performance Managing Wheeler Years Before She Complained To Human Resources. ......................................... 9

c.    Unwritten, Phantom Policies Do Not Evidence Causation........... 9

d.    The Fourth-Month Temporal Gap Is Not Suggestive Of Causation................................................................................... 11

C.    Wheeler Fails To Rebut AWS's Legitimate, Non-discriminatory, Non-retaliatory Reason For Taking An Adverse Employment Action....................... 13

1.    Wheeler Cannot Establish Pretext By Disguising Her Disagreement With AWS's Performance Assessment As A Credibility Challenge....... 14

2.    Deviations From Discretionary Performance Management Policies Does Not Establish Pretext. ................................................................... 17

VI.   CONCLUSION.............................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bain v. Ga. Gulf Corp.*,
    462 F. App'x. 431 (5th Cir. 2012) ...................................................................8

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006)........................................................................................18

*Cephus v. Tex. Health and Human Servs. Comm'n*,
    146 F. Supp. 3d 818 (S.D. Tex. 2015) ..........................................................11

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.*,
    179 F.3d 164 (5th Cir. 1999) .........................................................................8

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001)......................................................................................12

*Davis v. Indep. Contract Drilling, Inc.*,
    No. 4:16-cv- 00252, 2019 WL 1200808 (S.D. Tex. Mar. 14, 2019) .....................11

*DeHart v. Baker Hughes Oilfield Ops., Inc.*,
    214 F. App'x. 437 (5th Cir. 2007) .................................................................6

*Drake v. Spring Indep. Sch. Dist.*,
    No. H-18-2912, 2020 WL 13612290 (S.D. Tex. May 4, 2020)....................8

*Evans v. City of Hous.*,
    246 F.3d 344 (5th Cir. 2001) .......................................................................11

*Garcia v. Pro. Cont. Servs., Inc.*,
    938 F.3d 236 (5th Cir. 2019) .......................................................................11

*January v. City of Huntsville*,
    74 F.4th 646 (5th Cir. 2023) ........................................................................19

*Johnson v. Dubroc*,
    No. 92-3452, 1993 WL 346904 (5th Cir. 1993) ..........................................16

*Laxton v. Gap Inc.*,
    333 F.3d 572 (5th Cir. 2003) ..................................................................15, 16

*Manning v. Chevron Chem. Co., LLC*,
    332 F.3d 874 (5th Cir. 2003) ...................................................................6, 8

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*,
   934 F.3d 447 (5th Cir. 2019) ........................................................................17

*Miller v. Sam Houston State Univ.*,
   No. 4:15-cv-2824, 2024 WL 1587470 (S.D. Tex. Apr. 11, 2024) ...........................16

*Monsivais v. Arbitron, Inc.*,
   44 F. Supp. 3d 702 (S.D. Tex. 2014) ................................................................7

*Myers v. Crestone Int'l., LLC*,
   121 F. App'x. 25 (5th Cir. 2005) ...................................................................11

*Ovalle v. United Rentals N. Am., Inc.*,
   No. 21-11076, 2022 WL 4009181 (5th Cir. 2022) ...............................................15

*Park v. Direct Energy GP, L.L.C.*,
   832 F. App'x. 288 (5th Cir. 2020) .................................................................18

*Price v. Fed. Express Corp.*,
   283 F.3d 715 (5th Cir. 2002) .......................................................................19

*Richardson v. Oldham*,
   12 F.3d 1373 (5th Cir. 1994) .......................................................................15

*Robertson v. Academy Ltd.*,
   No. H-18-2323, 2020 WL 880873 (S.D. Tex. Feb. 21, 2020) ....................................7

*Salazar v. Lubbock Cnty. Hosp. Dist.*,
   982 F.3d 386 (5th Cir. 2020) ...................................................................17, 18

*Sanders v. Regions Bank*,
   No. 4:22-CV-1523, 2024 WL 2159961 (S.D. Tex. May 2024) .................................11, 12

*Sandstad v. CB Richard Ellis, Inc.*,
   309 F.3d 893 (5th Cir. 2002) .......................................................................16

*Siddiqui v. AutoZone West, Inc.*,
   731 F. Supp. 2d 639 (N.D. Tex. 2010) ..............................................................11

*Sport Supp. Grp., Inc. v. Columbia Cas. Co.*,
   335 F.3d 453 (5th Cir. 2003) .......................................................................15

*Stein v. Nat'l City Bank*,
   942 F.2d 1062 (6th Cir. 1991) ......................................................................10

*Stewart v. Miss. Transp. Comm'n*,
   586 F. 3d 321 (5th Cir. 2009) ........................................................................6

*Strong v. Univ. Healthcare Sys., LLC,*
    482 F.3d 802 (5th Cir. 2007) .......................................................11

*Tawil v. Cook Children's Healthcare Sys.,*
    582 S.W.3d 669 (Tex. App.—Fort Worth 2019) ....................................19

*Turner v. Baylor Richardson Med. Ctr.,*
    476 F.3d 337 (5th Cir. 2007) .......................................................18

*Upshaw v. Dallas Heart Grp.,*
    961 F. Supp. 997 (N.D. Tex. 1997) .................................................18

*Wallace v. Seton Family of Hosps.,*
    777 F. App'x. 83 (5th Cir. 2019) ...................................................11

**Statutes**

42 U.S.C. § 1981 ...............................................................3, 11, 18

**Rules**

Fed. R. Civ. P. 72(b)(3)........................................................4

### I.      SUMMARY OF THE ARGUMENT

In a 48-page opinion, Magistrate Judge Richard W. Bennett exhaustively analyzed Melissa Wheeler's discrimination and retaliation claims and determined that they fail under the prima facie and pretext stages of the *McDonnell-Douglas* framework and recommended complete summary judgment in favor of Amazon Web Services ("AWS") as a result.  *See* Memorandum and Recommendation, Dkt. 36 ("M&R").  Wheeler's objections to the M&R ("Objections") provide no basis to deviate from it with respect to either claim.  Simply put, Wheeler does not raise a genuine issue of material fact disputing that AWS lawfully terminated her employment solely because of her documented, corroborated poor performance that spanned three years and resulted in three separate placements in a performance management program ("Focus"), back-to-back annual ratings of Least Effective, which is reserved for the lowest performing AWS employees, and ultimately a placement in a performance improvement plan ("Pivot"), which a neutral panel of three recruiters agreed that Wheeler failed.

As set forth in its summary judgment briefs (Dkts. 24, 32), three separate managers observed that Wheeler was underperforming in her role as a recruiter for AWS.  When her performance deficiencies persisted after multiple placements in Focus, Wheeler's manager, Patricia Elkon, moved Wheeler to Pivot, the final performance improvement tool.  It is undisputed that Elkon decided to place Wheeler in Pivot on March 19, 2020, before Wheeler complained to human resources about an email from her skip-level manager, Kevin Knapp, using the phrase "stereotypical Latin fire."  Three days later, Wheeler reported Knapp again for referring to his own father as part of a "stubborn generation."  Human resources immediately investigated Wheeler's complaints and paused the Pivot during the investigation.  At the conclusion of the investigation, AWS disciplined Knapp for his "Latin fire" remark, and thereafter resumed Wheeler's Pivot.  Two

months later, Elkon determined that Wheeler failed the Pivot and terminated Wheeler's employment on July 14, 2020.

The Court should adopt the M&R on both sets of claims. First, Wheeler all but abandons her race, national origin, and age discrimination claims. The four sentences that Wheeler devotes to her disparate treatment claims in the last paragraph of her Objections fail to overcome Magistrate Bennett's finding that Wheeler cannot state a prima facie case of discrimination.

Second, Wheeler fails to establish a prima facie case of retaliation. Elkon placed Wheeler in Pivot before Wheeler engaged in protected activity, and Elkon—as the sole decisionmaker—lacked knowledge of Wheeler's complaint to human resources. Further, AWS began performance managing Wheeler years before she complained to human resources, and it followed its policies and procedures during the three years that it performance managed Wheeler. Each of these factors supports Magistrate Bennett's conclusion that Wheeler failed to establish a causal link, dooming her retaliation claim at the prima facie stage.

Third, Wheeler's retaliation and discrimination claims both fail at step one of the burden shifting framework, but even if the Court were to proceed further with the analysis, the claims would fare no better. Wheeler merely repackages the same pretext arguments that she asserted on summary judgment, each of which challenge AWS's assessment of her performance. In the hopes of sidestepping the settled principle that attacking an employer's business judgment cannot raise a genuine issue of material fact, Wheeler reframes her arguments as a challenge to AWS's "credibility," not its business judgment, and asks the Court to indulge in a credibility assessment on summary judgment. But it is equally settled that courts cannot engage in credibility assessments on summary judgment. Likewise futile is Wheeler's repeated claim that AWS deviated from phantom performance policies. That argument fails not only because Wheeler does not identify

any specific policies that AWS supposedly deviated from, but more fundamentally, Fifth Circuit case law holds that minor deviations from discretionary discipline policies are insufficient to create pretext.  Wheeler asserts no competent summary judgment evidence that AWS's articulated and legitimate reason for terminating her employment was a pretext for unlawful discrimination or retaliation.

Unable to state a prima facie case of either discrimination or retaliation or dispute as pretextual AWS's proffered reason for terminating her employment, Wheeler's Objections fail to defeat summary judgment.

## II.      NATURE AND STAGE OF PROCEEDING

Wheeler commenced this lawsuit against AWS on February 3, 2022, alleging claims of race, national origin, and age discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), the Texas Commission on Human Rights Act ("TCHRA"), and the Age Discrimination in Employment Act of 1967 ("ADEA").  Dkt. 1.  On October 12, 2023, AWS filed a Motion for Summary Judgment.  Dkt. 24.  On July 12, 2024, Magistrate Bennett recommended that the Court grant AWS's Motion for Summary Judgment in its entirety.  Dkt. 36.  Wheeler filed objections on July 26, 2024.  Dkt. 40.

## III.      STATEMENT OF THE ISSUES

1.    Whether the Magistrate properly found that Wheeler failed to establish a prima facie case of discrimination.

2.    Whether the Magistrate properly found that Wheeler failed to establish a prima facie case of retaliation.

3.    Whether the Magistrate properly found that Wheeler failed to raise a genuine issue of material fact with respect to AWS's termination decision—namely, whether Wheeler's performance deficiencies documented over a three-year time period were merely a pretext for discrimination and retaliation.

## IV.    LEGAL STANDARD

When a party objects to a Magistrate Judge's ruling on dispositive matters, the district court reviews "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

## V.    ARGUMENT

### A.    The Court Should Adopt The Magistrate's Recommendation To Dismiss Wheeler's Discrimination Claims For Failure To Establish A Prima Facie Case.

Wheeler's race and national origin discrimination claims are based on Knapp's remark that "[Rafael Visconti] has the stereotypical Latin fire." Her age discrimination claim is based on Knapp's comment that his own father is part of a "stubborn generation," as well as his alleged statement to an employee that "today is your 30th birthday" (when it was her birthday). M&R at 2-3. Magistrate Bennett, agreeing with AWS, properly concluded that these comments "fall within the parameters of stray remarks and provide no evidence of discrimination." M&R at 34, n.9. Wheeler has no response.

Magistrate Bennett devotes 29 pages of the M&R to explaining how and why Wheeler's discrimination claims fail under the *McDonnell-Douglas* burden shifting test. *See* M&R at 10-38. Wheeler responds with a single paragraph, buried at the tail end of her brief. *See* Obj. at 20. In her one-paragraph "objection," Wheeler summarizes Magistrate Bennett's findings and alleges, in a conclusory fashion, that he erred, but offers no argument, record citations, or legal authority supporting her objection. *Id*.

Wheeler does not refute Magistrate Bennett's findings either that she fails to state a prima facie case of discrimination or that AWS's articulated and legitimate reasons for terminating her employment were a pretext for unlawful discrimination. Summary judgement is appropriate as a threshold matter on Wheeler's discrimination claims because she fails to state a prima facie case

of discrimination for two independent reasons: (i) she admits under oath that neither her placement in Pivot nor her termination were due to discrimination, and thus she did not suffer an adverse employment action (*see* M&R at 12-16, 36); and (ii) AWS replaced Wheeler with an employee within her protected class (Latina) and Wheeler did not identify any comparator employee from outside of her protected group who was treated better than she was (M&R at 17-20). Wheeler also fails to object to the Magistrate's finding that AWS's articulated reason for terminating her employment were not a pretext for discrimination. *See id.* at 22.

Likely acknowledging defeat, Wheeler does not address, let alone substantively dispute, any of the bases underlying Magistrate Bennett's disparate treatment / discrimination ruling. By paying only lip service to her discrimination claims, Wheeler has effectively abandoned them. Absent any meaningful objection, and for the unrebutted reasons set forth in AWS's summary judgment briefs and adopted by Magistrate Bennett, the Court should dismiss Wheeler's discrimination claims.

**B.    The Court Should Adopt The Magistrate's Recommendation To Dismiss Wheeler's Retaliation Claim For Failure To Establish A Prima Facie Case.**

Wheeler contends that AWS terminated her employment—not due to her three years of underperformance—but rather because she complained to human resources about Knapp *after* Elkon decided to place her in Pivot. On these undisputed facts, Magistrate Bennett ruled that Wheeler: (1) failed to establish a causal link necessary to advance a prima facie case of retaliation; and (2) failed to establish that Amazon's reason for terminating her employment was pretextual. M&R at 47, 38. Wheeler offers no factual or legal bases for rejecting Magistrate Bennett's rulings.

**1.    Magistrate Bennett Considered The Correct Factors In Ruling That Wheeler Failed To Establish A Causal Connection.**

To establish a prima facie case of retaliation, Wheeler must demonstrate, among other things, a causal connection between her protected activity and the adverse employment action.

5

*Stewart v. Miss. Transp. Comm'n*, 586 F. 3d 321, 333 (5th Cir. 2009). Wheeler cannot make this showing because: (a) Elkon, the sole decisionmaker, had no knowledge of Wheeler's complaint to human resources until *after* she terminated Wheeler's employment; (b) Amazon began performance managing Wheeler *before* she engaged in protected activity; (c) Amazon followed its policies in performance managing Wheeler; and (d) the four-month temporal gap between Wheeler's protected activity and the termination of her employment is not suggestive of retaliation. *See* MSJ (Dkt. 24) at 17-20. Magistrate Bennett considered each of these factors at the prima facie stage to conclude that Wheeler's retaliation claim fails on causation grounds. Wheeler argues that, in so doing, Magistrate Bennett improperly applied a "heightened prima facie standard" that effectively required a finding of "but-for causation." Obj. at 3. Wheeler is wrong.

AWS did not seek application of a "prima facie standard" requiring "but-for causation" in its Motion for Summary Judgment, nor did Magistrate Bennett apply one. Each of the four factors that Magistrate Bennett considered is a factor that courts consider at the prima facie stage. In *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003), the Fifth Circuit endorsed factor (a), ruling that "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *See id.*, 883-84 (granting summary judgment because the decisionmaker lacked knowledge of the protected activity). The Fifth Circuit has further held that determination of the existence of a causal link requires consideration of (b) "the employee's past disciplinary record," (c) "whether the employer followed its typical policy and procedures in terminating the employee," and (d) "the temporal proximity between the employee's conduct and termination." *DeHart v. Baker Hughes Oilfield Ops., Inc.*, 214 F. App'x. 437, 442-44 (5th Cir. 2007) (the plaintiff "failed to establish a causal link" and thus "failed to demonstrate a prima facie case of retaliation"). Consistent with the Fifth

Circuit, this Court has considered at the prima facie stage each of the four factors that Magistrate Bennett reviewed.  *See Robertson v. Academy Ltd.*, No. H-18-2323, 2020 WL 880873, at *4 (S.D. Tex. Feb. 21, 2020) ("Establishing a causal connection in the employment context 'requires some showing that the decisionmaker … was aware of the activity'"); *Monsivais v. Arbitron, Inc.*, 44 F. Supp. 3d 702, 716 (S.D. Tex. 2014) (granting summary judgment for employer upon identifying factors (b)-(d) as "three factors to consider in determining whether a causal link had been shown for a *prima facie* case").

Wheeler's assertion that Magistrate Bennett erred by applying the wrong standard is demonstrably wrong.  Consideration of the relevant factors demonstrates that Wheeler cannot establish a causal link and thus fails to state a prima facie case of retaliation.

### a.    Elkon Lacked Knowledge of Wheeler's Protected Activity.

It is undisputed that Elkon made the Pivot decision on March 9, 2020, and completed the Pivot Entry Form by March 19, 2020—all before Wheeler contacted human resources to complain about Knapp on March 20, 2020.  *See* AWS Exs. I (Dkt. 24-9), K (Dkt. 24-11).  Wheeler does not object to Magistrate Bennett's holding that Elkon lacked knowledge of Wheeler's protected activity prior to deciding to place Wheeler in Pivot.  *See* M&R at 41.

Magistrate Bennett contended, however, that there is "some evidence Elkon had knowledge" of Wheeler's complaint prior to the termination.  *See id.* at 42.  He based this finding on an April 8, 2020 email from Ivre Kladnik, an Employee Relations representative, stating that Amazon does not tolerate retaliatory behavior and the identification of Elkon as an "Involved Person" in the investigation report.  *Id*.  Kladnik's April 8, 2020 email, however, does not mention Elkon, and the summary judgment evidence establishes that Elkon did not participate in the investigation of Wheeler's complaints about Knapp.  *See* Dkt. 30-18; Elkon Dep. (Dkt. 30-4), at 171:4-8 ("Q. Did you participate in an internal investigation following Ms. Wheeler's HR

complaints regarding Kevin Knapp? [Objection] A. No.").  Indeed, Elkon executed a declaration confirming: "At no point prior to the termination of Ms. Wheeler's employment with AWS was I aware of any complaint of discrimination or retaliation made by Ms. Wheeler to Human Resources or Employee Relations."  AWS Ex. H (Dkt. 24-8) at ¶ 15.  Elkon testified identically during her deposition.  AWS Ex. B (Dkt. 24-2) at 160:12-22.  *See Bain v. Ga. Gulf Corp.*, 462 F. App'x. 431, 433–34 (5th Cir. 2012) (per curiam) (crediting the sole decisionmaker's testimony that he had no knowledge of the plaintiff's protected activity to affirm dismissal of a retaliation claim on causation grounds).

Magistrate Bennett, nevertheless, cited to Wheeler's declaration in which she claims to have verbally informed Elkon of her complaint to human resources.  There is no documentary or testimonial evidence corroborating this supposed conversation, and an "[employee's] declaration is not enough to defeat summary judgment because a self-serving, conclusory declaration, on its own, cannot create a genuine issue of material fact."  *Drake v. Spring Indep. Sch. Dist.*, No. H-18-2912, 2020 WL 13612290, at *8 (S.D. Tex. May 4, 2020).  Wheeler's declaration cannot create a fact issue disputing that Elkon was unaware of Wheeler's complaint prior to her termination.

In any event, knowledge by a decisionmaker of protected activity is *necessary*, but not *sufficient*, to establish causation.  *See Manning*, 332 F.3d at  883 (5th Cir. 2003) ("in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity"); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.,* 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").  The absence of knowledge by the decisionmaker precludes a finding of causation, but the presence of it does not establish causation.

Indeed, even upon finding that there is "some evidence Elkon had knowledge," Magistrate Bennett correctly determined that Wheeler failed to establish a causal link because the balance of the relevant factors militates against any finding of causation.  M&R at 38-47.

### b.   AWS Began Performance Managing Wheeler Years Before She Complained To Human Resources.

Wheeler does not dispute Magistrate Bennett's finding that "this factor does not support the causal link element."  M&R at 43.  Nor could she.  AWS began performance managing Wheeler as early as 2018 when it placed her in Focus, and thereafter placed her Focus again in 2019 and in 2020, while assigning her Least Effective ratings, all *before* she complained to human resources. *See* MSJ (Dkt. 24) at 3-5.  Wheeler's disciplinary history militates against a finding of causation.

### c.   Unwritten, Phantom Policies Do Not Evidence Causation.

Magistrate Bennett concluded that "this factor does not support the causal link element" because "Wheeler fails to provide evidence of a written policy supporting her allegations that Amazon deviated from standard policy and procedures[.]"  M&R at 46.  Wheeler does not object to this finding made at the prima facie stage, but rather alleges policy deviations solely with respect to pretext (which are addressed *infra* § V, A, 2, b).  *See* Obj. at 11.  Regardless of whether the Court considers Wheeler's pretext arguments at the prima facie stage, her claims of policy deviations support neither a finding of a causal link nor pretext.

Wheeler claims that AWS failed to follow its performance management policies, but she does not specify a single policy that required what she claims AWS failed to provide during its three-years of performance managing her.  As Magistrate Bennett observed,  Wheeler fails to "cite company policy requiring Amazon to adopt the supervisor's recommendation;" "cite company policy that states a yearly rating must only be conducted at the end of the year;" identify a specific policy requiring an employee to remain in Focus for a certain number of days; and "fails to cite a

specific written policy showing an employee must be given forty-five to sixty days to complete Pivot." *See* M&R at 45.

Aware of these deficiencies in her argument, Wheeler attaches to her Objections a one-page excerpt from Amazon's "Owner's Manual and Guide to Employment" ("Owner's Manual"). *See* Dkt. 40-1.  The Owner's Manual, which is not relied upon at the summary judgment stage, does not state that a manager must adopt another manager's proposed mid-year rating, that employees must be provided a certain amount of time in Focus or Pivot, or that annual ratings must be assigned at a specific point in time during the review process.  *See id.*  To the contrary, the Owner's Manual confirms that "Amazon reserves the right in all circumstances to apply any level of corrective action as appropriate[.]"  *See id.* at 2.

Equally unavailing is Wheeler's reliance on a Sixth Circuit case providing that "whether a policy is written or unwritten has minimal probative value on the issue of pretext."  Obj. at 11 (citing *Stein v. Nat'l City Bank*, 942 F.2d 1062 (6th Cir. 1991)).  *Stein* addressed "pretext," not whether compliance with an unwritten policy is relevant to evaluating the prima facie element of causation.  *See Stein*, 942 F.2d at 1065.  Further, in *Stein*, it was the company that sought to invoke an unwritten policy as a basis for termination.  *Id.*, 1064.  AWS makes no such argument; rather, it is Wheeler who invokes unwritten, unidentified "policies" that she claims her former employer failed to follow.  Undeterred, Wheeler argues that "unwritten policies" "can be easily turned into tools of discrimination," ignoring the irony that she is seeking to use unwritten policies as a tool for manufacturing causation.  Obj. at 11.  Tellingly, Wheeler cites no Fifth Circuit authority for the proposition that unwritten policies can establish a failure to follow internal procedures in

support of prima facie case of retaliation,[1] and offers no basis for rejecting Magistrate Bennett's finding that this factor does not support a causal link.  M&R at 46.

### d.    The Fourth-Month Temporal Gap Is Not Suggestive Of Causation.

The fourth factor courts consider in determining a causal connection is temporal proximity. Approximately four months (that is, 16 weeks and 4 days) passed between Wheeler's complaint to human resources (on March 20, 2020) and the termination of her employment (on July 14, 2020), which Magistrate Bennett ruled is insufficient to support a causal link at the prima facie stage.  *See* M&R at 47.  Wheeler objects, arguing that a four-month temporal gap is sufficient.  For temporal proximity to provide the causal connection required for a prima facie case, it must be "very close."  *See Sanders v. Regions Bank*, No. 4:22-CV-1523, 2024 WL 2159961, at *7 (S.D. Tex. May 2024) (Hanen, J.).  Four months is not very close.  *See Myers v. Crestone Int'l., LLC*, 121 F. App'x. 25, 28 (5th Cir. 2005) (three-month lapse did not create a causal link); *Cephus v. Tex. Health and Human Servs. Comm'n*, 146 F. Supp. 3d 818, 835 (S.D. Tex. 2015) (same); *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 807 (5th Cir. 2007) (three and one-half months insufficient to show causation).

Wheeler offers no authority to the contrary.  The cases she cites involved temporal gaps that are significantly shorter than the four-month gap at issue here.  *See* Obj. at 6 (citing *Garcia v. Pro. Cont. Servs., Inc*., 938 F.3d 236, 243 (5th Cir. 2019) (two and-one-half-months), *Evans v. City of Hous*., 246 F.3d 344, 354 (5th Cir. 2001) (five days), *Wallace v. Seton Family of Hosps*., 777 F. App'x. 83, 84, 91 (5th Cir. 2019) (two months)); *id.* at 17 (citing *Davis v. Indep. Contract Drilling, Inc.*, No. 4:16-cv- 00252, 2019 WL 1200808, at *3, 10 (S.D. Tex. Mar. 14, 2019) (Hanen,

---

[1] Nor could she.  *See Siddiqui v. AutoZone West, Inc*., 731 F. Supp. 2d 639, 652 (N.D. Tex. 2010) (rejecting a plaintiff's argument that his former employer deviated from its "unwritten practice and policy" when it terminated his employment "for doing what the unwritten policy in fact permitted," and granting summary judgment on Title VII claims).

J.) (less than three weeks).  Wheeler also cites the Court's decision in *Sanders*, but the temporal

gap there was as short as six days—specifically, in addition to an internal complaint, the plaintiff

filed an EEOC charge on May 28, 2021, and was terminated on June 3, 2021 (and even so, the

Court ultimately granted summary judgment for the employer upon finding no pretext).  *Sanders*,

2024 WL 2159961, at *2, 8.  Wheeler offers no basis for rejecting Magistrate Bennett's

recommendation, in which he correctly observed: "As the Supreme Court of the United States has

held, a period as small as three months is not—by itself—enough to prove the causal link."  *See*

M&R at 47 (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)).

Perhaps aware as much, Wheeler tries to hedge her bets by arguing that the temporal gap

is shorter than four months because, according to Wheeler, she engaged in protected activity after

complaining to human resources on March 20, 2020.  *See* Obj. at 5.  Wheeler lists a series of events

post-March 20, 2020 and claims that Magistrate Bennett "ignored the balance of [her] evidence."

*Id.*  But it is Wheeler who ignores her own deposition testimony.  Wheeler testified that her sole

protected activity was her complaint to human resources in March 2020:

> A.  I'm talking about Exhibit 14 [3/23/20 email from Wheeler to HR (Dkt. 24-25)],
> Exhibit 13 [3/20/20 email from Wheeler to HR (Dkt. 24-11)], Exhibit 12 [3/23/20
> Chime message from Knapp stating "stubborn generation (Dkt. 24-12)].
>
> Q.  Okay. And that is the basis, those three exhibits are the basis of your retaliation
> complaint, correct?
>
> A.  That is correct.
>
> ****
>
> Q.  Did you complain about anything else other than those three exhibits [Exhibits
> 12-14] that resulted in Amazon retaliating against you, yes or no?
>
> A.  No.

*See* AWS Exh. A (Dkt. 24-1) at 165:12-17, 166:1-16.  Wheeler cannot shorten the temporal gap by contradicting her deposition testimony.[2]  The temporal gap is four months, and this factor also militates in favor of a no causal connection finding.

Based on review of the relevant factors, Magistrate Bennett ruled that Wheeler failed to establish a causal link.  The case ends here.  Wheeler's retaliation, as well as discrimination (*supra* § V, A), claims should be dismissed at the prima facie stage without the Court even having to consider pretext.

**C.     Wheeler Fails To Rebut AWS's Legitimate, Non-discriminatory, Non-retaliatory Reason For Taking An Adverse Employment Action.**

Wheeler does not object to Magistrate Bennett's ruling that AWS "produced specific examples of Wheeler's poor work performance" and thereby satisfied its burden of production by articulating a legitimate, non-discriminatory, and non-retaliatory reason for terminating her employment.  *See* M&R at 22.  Rather, Wheeler attempts to convince the Court that her three years of documented, corroborated poor performance is some elaborate ruse that AWS is using to cover up its reasons for terminating her employment.  Wheeler asserts in her Objections the same pretext arguments that she briefed on summary judgment, all of which center on her criticisms of AWS's performance management process.  Wheeler disagrees with why she was placed in Focus in 2018 and why she received a Least Effective performance rating in 2019; argues that AWS failed to put safeguards in place to protect her from retaliation and did not provide her enough time in Focus or Pivot in 2020; and questions Elkon's determination that she failed the Pivot.  AWS addressed each of these arguments in its summary judgment reply brief, demonstrating that Wheeler's gripes with

---

[2] Further, Wheeler relies on inapposite evidence.  She cites "Dkt. 30-43" to claim she raised complaints after March 20, 2020 (*see* Obj. at 4-5), but that document is a March 2, 2020 email from Elkon that contains no mention of any complaint of discrimination by Wheeler.  *See* Dkt. 30-43.  Likewise, Wheeler cites "Dkt. 30-25" to claim that she complained to Jeff Bezos in July 2020 (*see* Obj. at 5), however, that document is a May 5, 2020 internal human resources email confirming that Wheeler had *not* raised any subsequent complaints.  *See* Dkt. 30-25.

AWS's assessment of her performance are factually untenable.  *See* MSJ Reply (Dkt. 32) at 12-14, 19.[3]

But even if Wheeler's laundry list of grievances were factually supported, they would remain legally irrelevant because: (a) an employee's disagreement with her employer's performance assessment and challenges to its credibility cannot as a matter of law raise material issues of fact; and (b) a company's deviations from its discretionary disciplinary policies do not evidence pretext, particularly in the absence of proof that the employer applied those policies differently to other employees.

### 1. Wheeler Cannot Establish Pretext By Disguising Her Disagreement With AWS's Performance Assessment As A Credibility Challenge.

Wheeler does not dispute that performance is a lawful basis for taking an adverse employment action.  Nor does Wheeler dispute that she was placed in Focus on three separate occasions, received the lowest possible rating of Least Effective in 2019 and in 2020, and was put in Pivot, which her manager determined that she failed.  *See* MSJ (Dkt. 24) at 3-5.

Rather, what Wheeler disputes is whether her former employer should have taken these performance management measures.  On summary judgment, Wheeler sought to cast her termination as pretextual by challenging the accuracy of AWS's performance assessment and the wisdom of its decision to terminate her employment.  *See* Dkt. at 19-22.  Magistrate Bennett swiftly dispensed with this argument because "an employee cannot survive summary judgment merely because she disagrees with the employer's assessment of her performance; the issue is whether the

---

[3] The only new performance grievance Wheeler raises in her Objections is that AWS allegedly conducted her 2020 review too early in the year. Wheeler was terminated in July 2020, and her rating could not be assigned at the end of the year.  Wheeler further ignores the Company policy that she attaches to her Objections, which states: "Amazon or individual sites or departments may establish more frequent performance review periods."  *See* Dkt. 40-1 at 2.

employer's perception of her performance, accurate or not, was the real reason for her termination." *See* M&R at 23-24.

In her Objections, Wheeler again challenges the wisdom of AWS's business judgment—claiming that its decisions to assign her Least Effective ratings, place her in Focus and Pivot, and terminate her employment when she did not improve, were all premised on "false, inconsistent, and shifting explanations concerning her performance." Obj. at 7. Only this time, in the hopes of sidestepping Magistrate Bennett's ruling and the line of case law supporting it, Wheeler claims that she "did not submit this evidence to question or negate Amazon's business judgment," but rather "submitted it to challenge Amazon's credibility[.]" *Id.* at 8. According to Wheeler, AWS's "business judgment is not at issue. Its credibility is," and she asks the Court to indulge in a credibility assessment on summary judgment to find pretext. *Id.*

"Credibility determinations have no place in summary judgment proceedings." *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994) (affirming summary judgment for defendant). "The court may not make credibility determinations or weigh the evidence when deciding whether a dispute of material fact exists." *Ovalle v. United Rentals N. Am., Inc.*, No. 21-11076, 2022 WL 4009181, at *2 (5th Cir. 2022) (affirming summary judgment for employer). Indeed, it is settled law that, "[i]n determining whether there is a dispute as to any material fact, [courts] consider all of the evidence in the record, but [] do not make credibility determinations or weigh the evidence." *Sport Supp. Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 456 (5th Cir. 2003) (affirming summary judgment for defendant). Wheeler's request for the Court to violate this bright line rule is unsupportable.

Wheeler cites *Laxton v. Gap Inc.*, 333 F.3d 572, (5th Cir. 2003) although *Laxton* was not decided on summary judgment. In *Laxton*, the court considered a renewed motion for judgment

as a matter of law following the conclusion of a trial, where—unlike on summary judgment—credibility determinations are appropriate. *Id.*, 577.   As such, the excerpt from the *Laxton* opinion regarding credibility assessments that Wheeler block quotes and urges the Court to consider, (Obj. at 8), is wholly inapplicable to AWS's Motion for Summary Judgment.  *See Johnson v. Dubroc*, No. 92-3452, 1993 WL 346904, at *2 (5th Cir. 1993) ("[T]he case presently before us has been dismissed on the basis of summary judgment, not a trial on the merits. As such, the district court was not entitled to weigh the evidence or make credibility choices.").

Further, in *Laxton*, the performance issues justifying the employer's termination decision were proven at trial to be demonstrably false—namely, the plaintiff, a store manager, had not hired a bank robber or been the subject of employee complaints, as the company had falsely asserted. *See Laxton*, 333 F.3d at 580.  Here, Wheeler does not dispute that she was placed in Focus on three occasions, received back-to-back Least Effective ratings, or failed Pivot.  Rather than refute the bases for AWS's termination decision, Wheeler second-guesses the wisdom of those decisions and claims she should not have received those ratings or been placed in those performance improvement programs.  "Merely disputing [her employer's] assessment of h[er] performance will not create an issue of fact."  *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002) (affirming a dismissal of an age discrimination claim).

*Laxton* does not in any way support Wheeler's ask for the Court to engage in improper credibility assessments on summary judgment.  Nor does the sole other case she cites—*Miller v. Sam Houston State Univ.*, No. 4:15-cv-2824, 2024 WL 1587470 (S.D. Tex. Apr. 11, 2024) (Hanen, J.) where the Court made no credibility determinations on summary judgment.  Wheeler's talk of "credibility" is nothing more than a backdoor attempt to do what she cannot—second guess her

former employer's business judgment.  The laundry list of grievances with AWS's performance

management, even if factually legitimate, provides no legal basis for finding pretext.

### 2. Deviations From Discretionary Performance Management Policies Does Not Establish Pretext.

Equally unavailing is Wheeler's attempt to create pretext by alleging that AWS deviated

from its policies in its performance management of her.  Even *assuming arguendo* that Wheeler

could identify instances when AWS deviated from its policies, it does not matter because, as

Magistrate Bennett observed: "mere deviations from policy, or a disagreement about how to apply

company policy, do not show pretext."  M&R at 24 (quoting *McMichael v. Transocean Offshore

Deepwater Drilling, Inc.*, 934 F.3d 447, 459 (5th Cir. 2019)).   In her Objections, Wheeler

challenges Magistrate Bennett's reliance on *McMichael*, claiming it only concerned an

"accidental" policy deviation.  *McMichael* did not hold that only "accidental" policy deviations

are irrelevant to pretext, as Wheeler suggests.  The court held, without qualification or limitation,

that "[e]ven if a plaintiff can show that an employer consciously disregarded [its procedures] that

showing, on its own, does not conclusively establish that improper discrimination occurred or that

a nondiscriminatory explanation for an action is pretextual."  *Id.*, 460 (citation omitted).

Courts are particularly disinclined to credit at the pretext stage evidence of non-compliance

with a disciplinary policy that is discretionary.  In *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d

386, 389, 391 (5th Cir. 2020), a plaintiff claimed her termination was pretextual because her former

employer did not comply with a policy that provided, in part: "[The levels of discipline] are

recommendations. Management reserves the right to impose the level of discipline deemed

appropriate for specific sets of circumstances."  The court held: "although [the employer] did not

follow its progressive discipline policy, it didn't have to. [The employer's] policy specifically

provides for the use of discretion. … [and its] digression from the terms of its policy is therefore

of little value to our analysis." *Id.*, 391.  Likewise, here, AWS's Owner's Manual affords the same discretion found in *Salazar*: "Amazon reserves the right in all circumstances to apply any level of corrective action as appropriate, up to and including immediate termination of employment, without prior corrective action or notice for conduct in either category or for conduct not described in the Standards of Conduct."  *See* Dkt. 40-1 at 2.

Further, Magistrate Bennett observed that Wheeler "fails to connect these departures from or misapplications of procedure to a discriminatory motive," and thus "fails to establish a pretext by means of showing a departure from standard procedure."  M&R at 25.  Indeed, a "defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees[.]"  *Upshaw v. Dallas Heart Grp.*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997).  Wheeler has not adduced a shred of evidence showing that employees who did not complain to human resources were granted longer placements in Focus and Pivot, assigned their Overall performance ratings later in the year, or otherwise performance managed any differently than Wheeler was.

All Wheeler can muster is her bald allegation at her deposition that Elkon and Knapp were "rude, dismissive, and curt with her."  Obj. at 40.  But Title VII "does not set forth 'a general civility code for the American workplace," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), and Wheeler has not adduced any evidence showing that Elkon or Knapp performance managed differently similarly situated employees who did not complain to human resources.  *See* M&R at 19.  Where, as here, there is no evidence suggesting that the company applied its disciplinary policies differently to other employees, an "alleged failure to follow its policy does not serve to establish pretext."  *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007); *see also Park v. Direct Energy GP, L.L.C.*, 832 F. App'x. 288, 296 (5th Cir.

2020) (dismissing a retaliation claim on summary judgment because the employer's "failure to follow its progressive discipline policy by not giving [the plaintiff] a written warning or putting him on a performance improvement plan doesn't show pretext" since the plaintiff "offered no evidence that [the employer] adhered to its disciplinary policies differently in cases involving [other] employees").

And for good reason. "[F]ailing to strictly follow a progressive disciplinary policy does not establish that the stated reason for termination was pretextual" because the "issue at the pretext stage is not whether the employer made an erroneous decision; it is whether the decision, even if incorrect, was the real reason for the employment determination." *Tawil v. Cook Children's Healthcare Sys.*, 582 S.W.3d 669, 686 (Tex. App.—Fort Worth 2019). There is no evidence that AWS deviated from its disciplinary policies to intentionally discriminate or retaliate against Wheeler.

Wheeler's strained attempts to pick at the fringes of a performance management process that extended three years, during which she was granted ample opportunity to improve but never did, fall woefully short of the "substantial evidence" required to establish that AWS's proffered reason for terminating her employment was a pretext for discrimination or retaliation. *See Price v. Fed. Express. Corp.*, 283 F.3d 715, 720, 722 (5th Cir. 2002) ("the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision," and affirming summary judgment for the employer on a race discrimination claim because the plaintiff failed to adduce "substantial evidence of pretext"); *January v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023) (affirming dismissal of a retaliation claim on summary judgment where the plaintiff failed to adduce substantial evidence of pretext). Absent a causal link necessary to establish a prima facie case, or any showing that AWS's proffered reason

for taking adverse action was pretextual, Wheeler's discrimination and retaliation claims cannot survive summary judgment.

## VI.    <u>CONCLUSION</u>

For these reasons, AWS respectfully requests that the Court adopt Magistrate Bennett's Memorandum and Recommendation and dismiss Wheeler's Original Complaint with prejudice.

Respectfully submitted,

Dated:  August 9, 2024            */s/     Stefanie Moll*
                                   Stefanie Moll

## CERTIFICATE OF SERVICE

I certify that on the date indicated herein, I caused a copy of the foregoing document to be served via the Court's electronic case filing system, upon all counsel of record.

Dated:  August 9, 2024

/s/     *Stefanie Moll*
Stefanie Moll